**RECEIVED**

**MAY 22 2020**

CLERK, U.S. DISTRICT COURT
ST. PAUL, MINNESOTA

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Jeffrey L. Bailey / Marlon E. Carter

                           Plaintiff(s),

vs.                                       Case No.  20-cv-1238 PAM/TNL

First Transit Inc.
Tim Ogren
Patricia Vold
Dean Vinge
Don Johnson
Troy Gustafson
Metropolitan Council
Teamsters Local 120

                          Defendant(s).

DEMAND FOR JURY TRIAL
YES ✔  NO ___

## COMPLAINT

**PARTIES**

1. List your name, address and telephone number. Do the same for any additional plaintiffs.

    A. Plaintiff

    Name                  Jeffrey L Bailey

    Street Address       1418 130th Av

    County, City         St Croix,  New Richmond

    State & Zip Code     WI, 54017

    Telephone Number   (763) 843-5457

1

SCANNED
MAY 2 2 2020
U.S. DISTRICT COURT ST. PAUL

B. Plaintiff

| | |
|---|---|
| Name | Marlon Carter |
| Street Address | 2600 21st Ave N |
| County, City | Hennepin, Minneapolis |
| State & Zip Code | MN, 55411 |
| Telephone Number | (612) 280-1088 |

List all defendants. You should state the full name of the defendant, even if that defendant is a government agency, an organization, a corporation, or an individual. Include the address where each defendant may be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption.

A. Defendant No. 1

| | |
|---|---|
| Name | First Transit Inc. |
| Street Address | 1717 County Road CW |
| County, City | Ramsey, St Paul |
| State & Zip Code | MN, 55434 |

B. Defendant No. 2

| | |
|---|---|
| Name | Tim Ogren |
| Street Address | 1717 County Road CW |
| County, City | Ramsey, St Paul |
| State & Zip Code | MN, 55434 |

c. Defendant No. 3

| | |
|---|---|
| Name | Patricia Vold |
| Street Address | 1717 County Road CW |
| County, City | Ramsey, St Paul |
| State & Zip Code | MN, 55434 |

d. Defendant No. 4

| | |
|---|---|
| Name | Metropolitan Council |
| Street Address | 390 North Robert Street |
| County, City | Ramsey, St, Paul |
| State & Zip Code | MN, 55101 |

e. Defendant No. 5

| | |
|---|---|
| Name | Don Johnson |
| Street Address | 30347 Rydeen Ave |
| County, City | Shafer, MN |
| State & Zip Code | MN, 55074 |

f. Defendant No. 6

| | |
|---|---|
| Name | Troy Gustafson |
| Street Address | 9422 Ulysses |
| County, City | Anoka, Blaine |
| State & Zip Code | MN, 55434 |

g. Defendant No. 7

| | |
|---|---|
| Name | Teamsters Local 120 |
| Street Address | 9422 Ulysses St NE |
| County, City | Anoka, Blaine |
| State & Zip Code | MN, 55434 |

h. Defendant No. 8

| | |
|---|---|
| Name | Dean Vinge |
| Street Address | 3312 Halifax Ave North |
| County, City | Hennepin, Robbinsdale |
| State & Zip Code | MN, 55422 |

**NOTE: IF THERE ARE ADDITIONAL PLAINTIFFS OR DEFENDANTS, PLEASE PROVIDE THEIR NAMES AND ADDRESSES ON A SEPARATE SHEET OF PAPER. Check here if additional sheets of paper are attached: ✔ SEE Additional defendants Please label the attached sheets of paper to correspond to the appropriate numbered paragraph above (e.g., Additional Defendants 2.d., 2.e., etc.)**

4

JURISDICTION

Federal courts are courts of limited jurisdiction. Generally, two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case involving the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state and the amount of damages is more than $75,000 is a diversity of citizenship case.

3. What is the basis for federal court jurisdiction? *(check all that apply)*

  ✔ Federal Question        ☐ Diversity of Citizenship

4. If the basis for jurisdiction is Federal Question, which Federal Constitutional, statutory or treaty right is at issue? List all that apply.

OSHA DOL NTSSA Whistleblowing Act  6 U.S.C. § 1142

TITLE VI OF THE CIVIL RIGHTS ACT OF 1964  42 U.S.C. § 2000D

TITLE VI OF THE CIVIL RIGHTS ACT OF 1964

28 C.F.R. § 42.107(e)

31 U.S. Code § 3729(a )(1)(B)

42 U.S. Code § 1981

Sec. 181.932 MN Statutes

5. If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party? Each Plaintiff must be diverse from each Defendant for diversity jurisdiction.

Plaintiff Name:                State of Citizenship:

Defendant No. 1:               State of Citizenship:

Defendant No. 2:               State of Citizenship:

**Attach additional sheets of paper as necessary and label this information as paragraph 5.**
**Check here if additional sheets of paper are attached.**

6.  What is the basis for venue in the District of Minnesota?  (*check all that apply*)

✔ Defendant(s) reside in Minnesota     ✔ Facts alleged below primarily occurred in Minnesota

✔ Other:  explain

Plaintiffs are exercising their rights under 49 U.S Code § 20109 to kick out an existing case because it has exceeded 210 days § 1982.114 District Court Jurisdiction. NTSSA  Whistleblower ACT

STATEMENT OF THE CLAIM

Describe in the space provided below the basic facts of your claim.  The description of facts should include a specific explanation of how, where, and when each of the defendants named in the caption violated the law, and how you were harmed.  Each paragraph must be numbered separately, beginning with number 7.  Please write each single set of circumstances in a separately numbered paragraph.

6

7. Plaintiffs' Carter & Bailey are two African American Males that were Union Drivers for "Defendant" Metropolitan Council's "Metro Mobility ADA Program". Plaintiff Carter drove from 2007 - 2016 and Plaintiff Bailey drove from 2013 - 2016 providing door-to-door service ensuring that riders/customers/clients get from the entry door at their pickup location to the first entry door at their destination. Metro Mobility, a service of "Defendant" Metropolitan Council located at 390 Robert St N, St Paul MN is public transportation in the Twin Cities metro area for certified riders who are unable to use regular fixed-route bus service due to a disability or health condition. Metro Mobility is a door-to-door service that receives federal funds from the Federal Transportation Authority (FTA) and must comply with the FTA and DOT regulations implementing the transportation-related provisions of the Americans with Disabilities Act (ADA) of 1990 and Section 504 of the Rehabilitation Act of 1973, as amended. The regulations in 49 CFR Parts 27, 37, 38, and 39 set specific requirements transit providers must follow to ensure their services, vehicles, and facilities are accessible to and usable by individuals with disabilities. The DOT regulations were amended as part of DOT's ADA rulemaking to require ADA compliance as a condition of Section 504 compliance. In order to receive Federal funds, FTA grantees must comply with Section 504; in order to comply with DOT's Section 504 regulations, grantees must comply with the DOT ADA regulations. "Defendant" Metropolitan Council breached the FTA's non discrimination clause by discrimiating against Plaintiffs' Carter & Bailey by not investigating Plaintiffs' complaints of discrimination, retaliation and harassment.

8. "Defendant" Metropolitan Council (The Agency) entered into an agreement (Contract 14P109) with "Defendant" First Transit inc (The Contractor) for operation of Metro Mobility Demand ParaTransit Agency. The agreement began on August 26, 2015 and ended on June 30, 2020. "Defendant" First Transit agreed to perform all services under the contract between "Defendants" Metropolitan Council & First Transit in accordance with all applicable divisions of the Americans With Disabilities Act (ADA) and the special transportation service rules. In addition to any applicable provisions of federal, state, local laws and regulations. "Defendant" First Transit receives payment for services according to vehicle revenue hours. The maximum amount to be paid to "Defendant" First Transit was not to exceed $85,945,267. Vehicle revenue hours means the measurement of time (in hours) during which a vehicle is in service for transporting riders/customers/clients. A vehicle revenue hour is calculated from the first customer pickup to

the last customer dropoff excluding all out of service time. Out of service time includes but is not limited to drivers lunches, drivers breaks, slack time greater than 60 minutes, accidents or refueling time. "Defendant" Metropolitan Council supplied the buses, dispatch equipment, Trapeze, radios, Mobile Data Terminal System (MDT) and cameras. "Defendants" Metropolitan Council and First Transit breached the non discrimination clause in contract 14P109 by discriminating against Plaintiffs' Carter & Bailey by not investigating Plaintiffs' complaints of discrimination, retaliation and harassment.

9. Plaintiffs' Carter & Bailey were hired as Drivers by "Defendant" First Transit, 1717 County Road CW, Roseville, MN. to perform the work for "Defendant" Metropolitan Council "Metro Mobility ADA Program". "Defendant" Teamsters Local 120 (Sub Contractor) located at 9422 Ulysses St NE, Blaine, MN is the Union that negotiated, investigated, bargained wages and work conditions on behalf of Plaintiffs' Carter & Bailey who were First Transit "Metro Mobility" Drivers (Drivers that performed the work in contract 14P109 between "Defendants" Metropolitan Council & First Transit). "Defendants" Teamsters Local 120 & First Transit entered into a contract known as Working Agreement Between First Transit, Inc And Teamsters Local Union No.120 (CBA). The agreement began on January 5, 2013 and ended on August 31, 2017. "Defendants" First Transit & Teamsters Local 120 breached the non discrimination clause in the CBA by discriminating against Plaintiffs' Carter & Bailey by not investigating Plaintiffs' complaints of discrimination, retaliation and harassment.

10. On January 7, 2016 Plaintiff Bailey was engaged in Protected Activity at First Transit, 1717 County Road CW, Roseville MN.  In attendance were, "Defendants" First Transit "General Manager" Tim Ogren, along with Union Stewart Ron Fishback. Plaintiff Bailey was being harassed with rides.The trips that were being inserted on Plaintiff's Ranger Mobile Data Terminal (MDT) were so bad that Plaintiff's break time was being violated. When Plaintiff Bailey notified "Defendant" First Transit "Dispatcher" Mia to request a lunch or break, "Defendant" First Transit "Dispatcher Supervisor" Dean Vinge retaliated by removing Plaintiff Bailey's remaining rides and insisted that Plaintiff Bailey bring the bus back to base (First Transit 1717 County Road CW, Roseville MN). When Plaintiff returned to base, "Defendant" Tim Ogren placed Plaintiff on Administrative Leave for 3 weeks without pay and no warning. "Defendant" First Transit " Region Vice President John Mattews made an offer toPlaintiff Bailey for one week of pay its was rejected by  Plaintiff

Bailey "Defendant" Teamsters Local 120 Union BA Joe Battaglia sent an email in response to Plaintiff Bailey counter offer to be fully compensated to "Defendant" First Transit General Manager Tim Ogren "Defendant" Tim Ogren retaliated against Plaintiff Bailey by ignoring "Defendant" Teamsters Local 120 emails, the grievance counter offer and continued reducing Plaintiff's pay & hours. **National Transit Systems Security Act (NTSSA), 6 U.S.C. § 1142, threats, intimidation, retaliation and discrimination is prohibited..**

11. On June 22, 2016 Plaintiffs' Carter & Bailey engaged in Protected Activity and met with "Defendant" Metropolitan Council "Metro Mobility Customer Service Manager" Andy Streasick at "Defendant" Metropolitan Council, 390 Robert St N, St Paul, MN. Plaintiffs' made Andy Streasick aware that there were safety violations occurring at "Defendant" First Transit and that the Metropolitan Council could be liable. Plaintiffs' made Andy Sreasick aware that Plaintiffs' would like to obtain the contracts between "Defendants" First Transit and The Metropolitan Council in hopes of finding something that was of help to "Defendant" First Transit drivers and "Defendant" Metropolitan Council "Metro Mobility" clients safety. This made "Defendant" Metropolitan Council aware that "Plaintiffs" Carter & Bailey were investigating safety violations. "Defendant" Metropolitan Council "Customer Service Manager" Andy Streasick retaliated by not investigating and discriminated against Plaintiffs' by not directing Plaintiffs' Carter & Bailey to "Defendant" Metropolitan Council's complaint procedure. **Federal Transit Authority (FTA) guidelines and under the National Transit Systems Security Act (NTSSA), 6 U.S.C. § 1142, threats, intimidation and discrimination are prohibited.**

12. On June 24, 2016 "Plaintiff" Carter was engaged in Protected Activity at First Transit, 1717 County Road CW, Roseville MN. In attendance were, "Defendants" First Transit "General Manager" Tim Ogren, "Demand Supervisor" Sue Westerwelle, "Safety Manager" Al Halaas and "Road Supervisor" Matt. "Plaintiff" Carter was being harassed with rides. The trips that were being inserted on Plaintiff's Ranger Mobile Data Terminal (MDT) were so bad that Plaintiff's break time was being violated. The agitation, distraction and stress caused Plaintiff Carter to be fatigued and put Plaintiff and "Defendant" Metropolitan Council "Metro Mobility" client's safety in jeopardy. "Plaintiff" Carter notified dispatch to let them know that he needed to return to base because Plaintiff didn't feel that he could continue to do his route safely. When "Plaintiff" Carter returned to base he asked to meet with "Defendants" First Transit "General Manager Tim Ogren,

"Demand Supervisor" Sue Westerwelle, "Safety Manager" Al Halas and "Road Supervisor" Matt all at once

to talk about what "Plaintiff" Carter endured on this day and complaints of harassment, discrimination and

retaliation that Plaintiff had made previously to each of them on separate occasions. "Plaintiff" Carter's

request was granted and when Plaintiff engaged in Protected Activity and made "Defendants" aware that

Plaintiff Carter had made complaints of harassment, discrimination and retaliation to each of them

previously, "Defendant" Tim Ogren cut Plaintiff off, bullied the conversation and stated "if you're going to go

down that path then maybe we are going to involve HR". Tim Ogren also intimidated Plaintiff by not

accepting "Plaintiff" Carter's verbal complaint and stated that Plaintiff was wasting their time if Plaintiff didn't

write his complaint down. "Defendants" First Transit & Tim Ogren discriminated against "Plaintiff" Carter by

not accepting Plaintiff's verbal complaints of harassment, retaliation and discrimination. "Plaintiff" Carter's

previous verbal complaints nor his verbal complaint of harassment on this day was never reported to HR by

"Defendant" First Transit "General Manager Tim Ogren, "Demand Supervisor" Sue Westerwelle, "Safety

Manager" Al Halas or "Road Supervisor" Matt. **According to First Group's Reporting Procedure,**

**section 2.04 in the First Transit Policy Handbook was given to "Plaintiffs" by First Transit. ANY**

**SUPERVISOR OR GENERAL MANAGER WHO RECEIVES EITHER A VERBAL OR WRITTEN FORMAL**

**OR INFORMAL COMPLAINT WILL NOTIFY THE HUMAN RESOURCES DEPARTMENT WITHIN 24**

**HOURS OF RECEIPT OF THE COMPLAINT.  General policy Under Harassment , section 2.02 page 18**

**in "Defendants" First Transit Policy Handbook which related to public transportation safety states:**

**VERBAL CONDUCT such as epithets, derogatory comments, slurs or unwanted comments and**

**jokes; THREATS AND DEMANDS to submit to certain non-work-related conduct or perform certain**

**non-work-related actions in order to keep or get a job, to avoid some other loss, or as a condition of**

**some job benefits, security or promotion. FIRST TRANSIT PROHIBITS SUCH CONDUCT, EVEN IF**

**THE CONDUCT IS NOT SUFFICIENTLY SEVERE OR PERVASIVE TO CONSTITUTE UNLAWFUL**

**HARASSMENT. Under the National Transit Systems Security Act (NTSSA), 6 U.S.C. § 1142, threats,**

**intimidation and discrimination is prohibited. Article 6 Non-discrimination clause in The Collected**

**Bargaining Agreement (CBA) between "Defendants" First Transit & Teamsters Union Local 120**

**prohibits discrimination. It states: Neither the company nor the Union shall discriminate against any**

**employee in any matter.**

13. On August 18, 2016 "Plaintiff" Carter engaged in Protected Activity at First Transit, 1717 County Road CW, Roseville MN for several grievance investigations that were filed against "Defendant" First Transit by "Plaintiff" Carter. In attendance were, "Defendants" First Transit "General Manager" Tim Ogren, "District Safety Manager" Don Johnson, Teamsters Local 120 "Business Agent" Troy Gustafson along with "Union Steward" Greg Tvedt and "Plaintiff" Carter. At the end of the grievance investigations, "Defendant" Tim Ogren discriminated against Plaintiff Carter & Bailey by directing Greg Tvedt (white employee) to "Defendant" First Transit "Dispatcher" Antwon to get rides removed from his route so that he could engage in Protected Activity but didn't do the same for "Plaintiffs" Carter & Bailey when Plaintiffs' engaged in Protected Activity on September 16, 2016.**General policy Under Harassment , section 2.02 page 18 in "Defendants" First Transit Policy Handbook which related to public transportation safety states: VERBAL CONDUCT such as epithets, derogatory comments, slurs or unwanted comments and jokes; THREATS AND DEMANDS to submit to certain non-work-related conduct or perform certain non-work-related actions in order to keep or get a job, to avoid some other loss, or as a condition of some job benefits, security or promotion. FIRST TRANSIT PROHIBITS SUCH CONDUCT, EVEN IF THE CONDUCT IS NOT SUFFICIENTLY SEVERE OR PERVASIVE TO CONSTITUTE UNLAWFUL HARASSMENT. Under the National Transit Systems Security Act (NTSSA), 6 U.S.C. § 1142, threats, intimidation and discrimination is prohibited. Article 6 Non-discrimination clause in The Collected Bargaining Agreement (CBA) between "Defendants" First Transit & Teamsters Union Local 120 prohibits discrimination. It states: Neither the company nor the Union shall discriminate against any employee in any matter.**

14. On August 18, 2016 Plaintiffs' Carter & Bailey engaged in Protected Activity Together at "Defendant" First Transit, 1717 County Road CW, Roseville MN for several grievance investigations that were filed against "Defendant" First Transit by "Plaintiff" Bailey. In attendance were, "Defendants" First Transit "General Manager" Tim Ogren, "District Safety Manager" Don Johnson, Teamsters Local 120 "Business Agent" Troy Gustafson along with "Union Steward" Greg Tvedt and Plaintiffs' Carter & Bailey. At the start of the grievance investigation when "Defendants" First Transit "District Safety Manager" Don Johnson and First Transit "General Manager" Tim Ogren challenged Plaintiffs' engaging in Protected Activity Together, "Defendant" Troy Gustafson made "Defendants" Johnson & Ogren aware that Plaintiffs' Weingarten Rights permitted Plaintiffs' Carter & Bailey to engage in Protected Activity together. "Defendants" Ogren & Johnson

11

threatened, intimidated, retaliated and discriminated against Plaintiffs' Carter and Bailey. Defendant's Johnson & Ogren threatened to hold Grievance Investigations after hours to discourage Plaintiffs' from engaging in Protected Activity together. Defendant's Johnson and Ogren intimidated Plaintiffs' Carter & Bailey by discouraging Plaintiffs' (Black employees) from exercising their Weingarten rights and engaging in Protected Activity together for Grievance investigations. Defendant's Johnson & Ogren discriminated against Plaintiffs' by not intimidating or making the same threat towards Greg Tvedt (White employee) who was engaged in Protected Activity during the same Grievance Investigations as Plaintiffs' on August 18, 2016. During the Grievance Investigation when Plaintiffs' attempted to make "Defendants" Tim Ogren & Don Johnson aware that the driver retention problem at "Defendant" First Transit was relevant to Plaintiff Bailey's Lunch & Break Grievance, "Defendant" Tim Ogren intimidated & discouraged Plaintiffs' by stating: "We're getting so far off of this grievance, your talking about retention". **General policy Under Harassment ,section 2.02 page 18 in "Defendants" First Transit Policy Handbook which related to public transportation safety states: VERBAL CONDUCT such as epithets, derogatory comments, slurs or unwanted comments and jokes; THREATS AND DEMANDS to submit to certain non-work-related conduct or perform certain non-work-related actions in order to keep or get a job, to avoid some other loss, or as a condition of some job benefits, security or promotion. FIRST TRANSIT PROHIBITS SUCH CONDUCT, EVEN IF THE CONDUCT IS NOT SUFFICIENTLY SEVERE OR PERVASIVE TO CONSTITUTE UNLAWFUL HARASSMENT. Under the National Transit Systems Security Act (NTSSA), 6 U.S.C. § 1142, threats, intimidation and discrimination is prohibited. Article 6 Non-discrimination clause in The Collected Bargaining Agreement (CBA) between "Defendants" First Transit & Teamsters Union Local 120 prohibits discrimination. It states: Neither the company nor the Union shall discriminate against any employee in any matter.**

15. On August 24, 2016,Plaintiffs' Carter & Bailey engaged in Protected Activity Together at "Defendant" Teamsters Local 120, 9422 Ulysses St NE, Blaine, MN. In attendance were "Defendants" Teamsters Local 120 "Legal Counsel" Katrina Joseph,Teamsters Local 120 "Union Business Agent (BA)" Troy Gustafson, Teamsters Local 120 "President " Tom Ericson and Teamsters Local 120 "Secretary-Treasurer" Bill Wedebrand. Plaintiffs discovered that the Memorandum Of Understanding (MOU) for Plaintiffs' Retro Pay from the Metropolitan Council was signed by Teamsters Union Local 120 on August 3, 2016 but hadn't

been signed by "Defendant" First Transit. "Plaintiffs' " Carter & Bailey were informed by Union Treasurer Bill Wedebrand that First Transit changed to a new payroll system a few weeks after the retro pay was approved and "Defendant" First Transit couldn't figure out the hours that drivers worked dating back to July 1, 2016. On August 26, 2016. "Complainants" Bailey & Carter received a copy of the Memorandum Of Understanding via U.S Mail and it was signed by "Defendant" First Transit Region Vice President John Matthews on August 25, 2016. There was no transparency on the (MOU) showing the total amount money received from "Defendant" Metropolitan Council's to be paid to Plaintiffs' for the Metro Mobility driver retro pay disbursement on September 16, 2016. This leaves one to wonder did all current and recent drivers like Plaintiffs' get paid correctly since "Defendant" First Transit couldn't figure out the hours that drivers worked dating back to July 1, 2016. This included vacation hours, holiday hours, overtime hours and PTO hours that current and recent Metro Mobility drivers accrued during the retro pay time period. It appeared to Plaintiffs' that funds were being misappropriated, so Plaintiffs Carter & Bailey look forward to continuing their investigations with "Defendant" Metropolitan Council's Metro Mobility Dept and "Defendant" First Transit "General Manager" Tim Ogren.

16. On September 12, 2016 At the request of Plaintiff Carter, "Defendant" Teamsters Local 120 "Union Business Agent (BA)" Troy Gustafson contacted "Defendant" First Transit "General Manager" Tim Ogren via email and stated: "Marlon Carter grievance # 15-13846
Tim, Please be advised that per Article 12 of the CBA Teamsters Local 120 moves the above referenced grievance past Step 2 and on to Step 3. Please notify the proper HR personal and have them contact me in order to set up a meeting". "Defendant" First Transit "General Manager" Tim Ogren never responded to the request of Plaintiff Carter and discriminated and retaliated by ignoring the request and not investigating grievance # 15-13846 (Lunch & Breaks Grievance) a safety related grievance that "Plaintiff" Carter requested to be reimbursed for because "Defendant" First Transit "Demand Supervisor" Sue Westerwelle reduced Plaintiff's pay & hours by ending Plaintiff's route early on the day that Plaintiff was grieved.

17. On September 13, 2016 10:46AM "Plaintiff" Bailey was engaged in Protected Activity on his route for First Transit, 1717 County Road CW, Roseville MN with "Defendant" First Transit "Safety Manager" Al Halas. "Plaintiff" Bailey informs "Defendant" First Transits Dispatch Dept that non ambulatory clients were

showing up on plaintiff (MDT) While driving "Defendant" Metropolitan Council's Metro Mobility bus "Plaintiff" Bailey received a text message on the Ranger Mobile Data Terminal (MDT) saying I will move the ride but contact "Defendant" First Transit "Safety Manager" Al Halas. When Plaintiff contacted Al Halas via cell phone, Al Halas intimidated & harassed "Plaintiff" Bailey to go against "Plaintiff" Bailey's doctor restrictions. "Defendant" First Transit "Safety Manager" Al Halas insisted that Plaintiff tie down scooters which required bending and twisting. "Plaintiff" Bailey's doctor orders specifically stated ambulatory only no twisting or bending. "Plaintiff" Bailey made "Defendant" First Transit "Safety Manager" Al Halas aware that stooping & kneeling violated Plaintiff's doctor restrictions and was an unsafe act that would jeopardize Plaintiff's and passengers' safety. "Defendant" First Transit "Safety Manager" Al Halas then threatened to file a complaint with the Medical Board against "Plaintiff" Bailey's doctor and would fight to the end to have the doctor's license jerked. "Plaintiff" Bailey ask "Defendant" First Transit "Safety Manager" Al Halas about the retro pay that was to be paid in a couple of days A halas stated that not my area of responsibility I'm incharge of safety no payroll see wait till you get your check then figure it out on september 16,2016.  "Defendant" First Transit "Safety Manager" Al Halas discriminated against Plaintiff Bailey by violating "Defendant" First Transit Handbook harassment policy copy written amended July 2011. , section 2.02 page 18 and violatedArticle 6 Non-discrimination clause in The Collected Bargaining Agreement (CBA) between "Defendants" First Transit & Teamsters Union Local 120 prohibits discrimination. It states: Neither the company nor the Union shall discriminate against any employee in any matter.

18. On September 14, 2016 at 7am Plaintiffs' Carter & Bailey engaged in Protected Activity by assisting with three Union Members Termination Grievance Investigations at "Defendant" First Transit, 1717 County Road CW, Roseville MN. In attendance for the first Termination Grievance investigation were, "Defendants" First Transit Management Sue Westerwelle, Don Johnson and Troy Gustafson along with Plaintiffs' Carter & Bailey and Union Member 1. In attendance for the second Termination Grievance investigation were, "Defendants" First Transit Management Sue Westerwelle, Don Johnson and Troy Gustafson along with Plaintiffs' Carter & Bailey and Union Member 2. In attendance for the third Termination Grievance Investigation were, "Defendants" First Transit Management Delaney Brinkley, Don Johnson and Troy Gustafson along with Plaintiffs' Carter & Bailey and Union Member 3. The first Termination Grievance Investigation was for a wheelchair tip, the second Termination Grievance Investigation was for 2 accidents in 12 months and the third Termination Grievance Investigation was for 3 accidents in 12 months.

14

Defendant's Teamsters Local 120 "Union Business Agent" Troy Gustafson, First Transit "District Safety Manager" Don Johnson and "General Manager" Tim Ogren Intimidated, threatened and retaliated against Plaintiffs' Carter & Bailey. Before entering the Wheelchair tip Termination Grievance Investigation, Defendant Troy Gustafson retaliated and intimidated Plaintiffs' Carter & Bailey by discouraging, threatening and yelling at Plaintiffs' when he discovered that Union members were signing Release Of Information (ROI) documents permitting Plaintiffs' to have access to job related information for investigative purposes. "Defendant" Troy Gustafson was furious with Plaintiffs' and yelled "That's My Job". "Defendant" Troy Gustafson also retaliated by threatening to remove Plaintiffs' from assisting with the investigations if Plaintiffs' didn't take a quiet role. "Defendant" Troy Gustafson even suggested that Plaintiffs' only take notes during the investigations. 'Defendant' Troy Gustafson also frightened Plaintiffs' Carter & Bailey by making Plaintiffs' aware that "Defendant" Tim Ogren made "Defendant" Troy Gustafson aware that "Plaintiff" Carter had a wheelchair tip and that Ogren was very upset with Plaintiffs' for being engaged in Protected Activity on this day. When Defendant Gustafson was asked by Plaintiffs' how he felt about Ogren's statements, he replied "Carter should be grateful that he wasn't terminated for his wheelchair tip". At this time Plaintiffs' discovered that Defendant's Troy Gustafson and Tim Ogren knew that "Plaintiff" Carter wasn't terminated for his wheelchair tip and it would show that Defendant's First Transit and Teamsters Local 120 was using the contract to discriminate against drivers that violated Article 16.2(Q) of the Collective Bargaining Agreement (CBA) between First Transit and Teamsters Union Local 120. **General policy Under Harassment , section 2.02 page 18 in "Defendants" First Transit Policy Handbook which related to public transportation safety states: VERBAL CONDUCT such as epithets, derogatory comments, slurs or unwanted comments and jokes; THREATS AND DEMANDS to submit to certain non-work-related conduct or perform certain non-work-related actions in order to keep or get a job, to avoid some other loss, or as a condition of some job benefits, security or promotion. FIRST TRANSIT PROHIBITS SUCH CONDUCT, EVEN IF THE CONDUCT IS NOT SUFFICIENTLY SEVERE OR PERVASIVE TO CONSTITUTE UNLAWFUL HARASSMENT. Under the National Transit Systems Security Act (NTSSA), 6 U.S.C. § 1142, threats, intimidation and discrimination is prohibited. Article 6 Non-discrimination clause in The Collected Bargaining Agreement (CBA) between "Defendants" First Transit & Teamsters Union Local 120 prohibits discrimination. It states: Neither the company nor the Union shall discriminate against any employee in any matter.**

19. On September 14, 2016 When Plaintiffs' attempted to speak in the Wheelchair Tip Termination Grievance investigation, "Defendant" Don Johnson intimidated Plaintiffs' by discouraging Plaintiffs' from speaking while being engaged in Protected Activity. "Defendant" Don Johnson stated "I was told that Troy would be the spokesperson here, so I'm not going to recognize your questions right now". Consequently, it was established that Plaintiffs' Carter & Bailey could speak on Union Member 1 behalf. During the Wheelchair Tip Termination Grievance Investigation Plaintiffs' caused information to be provided that showed "Defendant" First Transit Safety Department terminated Union Member 1 without conducting an Administrative Leave investigation, "Defendant" First Transit Dispatch Department didn't follow Zero code (accident) procedures, "Defendant" First Transit didn't report the Wheelchair Tip to "Defendant" Metropolitan Council in the time frame specified in the contract between "Defendant's" Metropolitan Council & First Transit and the Collected Bargaining Agreement between "Defendants" Teamsters Local 120 & First Transit was being used in a discriminatory manner because not all drivers who had Wheelchair Tips was terminated. Because of the information Plaintiffs" provided or caused to be provided during the Wheelchair Tip Termination Grievance Investigation, Union Member 1 was reinstated back to work and "Defendant" Don Johnson was furious. **General policy Under Harassment , section 2.02 page 18 in "Defendants" First Transit Policy Handbook which related to public transportation safety states: VERBAL CONDUCT such as epithets, derogatory comments, slurs or unwanted comments and jokes; THREATS AND DEMANDS to submit to certain non-work-related conduct or perform certain non-work-related actions in order to keep or get a job, to avoid some other loss, or as a condition of some job benefits, security or promotion. FIRST TRANSIT PROHIBITS SUCH CONDUCT, EVEN IF THE CONDUCT IS NOT SUFFICIENTLY SEVERE OR PERVASIVE TO CONSTITUTE UNLAWFUL HARASSMENT. Under the National Transit Systems Security Act (NTSSA), 6 U.S.C. § 1142, threats, intimidation and discrimination is prohibited. Article 6 Non-discrimination clause in The Collected Bargaining Agreement (CBA) between "Defendants" First Transit & Teamsters Union Local 120 prohibits discrimination. It states: Neither the company nor the Union shall discriminate against any employee in any matter.**

20. On September 14, 2016 During the 2 accidents in 12 months Termination Grievance Investigation,"Defendant" Don Johnson argued that Union Member 2 was wrong for the accident at an intersection where the lights were out. Plaintiffs' asked "Defendant" Don Johnson "what's the proper procedure when approaching an intersection with no lights"? "Defendant" Don Johnson stated "if you don't know the answer to that then you shouldn't be driving for Metro Mobility". When Plaintiffs' attempted to make "Defendant" Don Johnson aware that "Plaintiff" Carter had 2 accidents in 12 months and wasn't terminated, "Defendant" Don Johnson intimidated Plaintiffs' by interrupting and bullying the conversation stating "we're not even going to go there". Plaintiffs' Carter & Bailey provided information that showed the Collected Bargaining Agreement between "Defendants" Teamsters Local 120 & First Transit and "Defendant" First Transit Employee Handbook was being used in a discriminatory manner because not all Union Members who had 2 accidents in 12 months were terminated. **General policy Under Harassment , section 2.02 page 18 in "Defendants" First Transit Policy Handbook which related to public transportation safety states: VERBAL CONDUCT such as epithets, derogatory comments, slurs or unwanted comments and jokes; THREATS AND DEMANDS to submit to certain non-work-related conduct or perform certain non-work-related actions in order to keep or get a job, to avoid some other loss, or as a condition of some job benefits, security or promotion. FIRST TRANSIT PROHIBITS SUCH CONDUCT, EVEN IF THE CONDUCT IS NOT SUFFICIENTLY SEVERE OR PERVASIVE TO CONSTITUTE UNLAWFUL HARASSMENT. Under the National Transit Systems Security Act (NTSSA), 6 U.S.C. § 1142, threats, intimidation and discrimination is prohibited. Article 6 Non-discrimination clause in The Collected Bargaining Agreement (CBA) between "Defendants" First Transit & Teamsters Union Local 120 prohibits discrimination. It states: Neither the company nor the Union shall discriminate against any employee in any matter.**

21. On September 14, 2016 During the 3 accidents in 12 months Termination Grievance Investigation, "Defendant" Don Johnson pretended that an Administrative Leave investigation had taken place. When "Defendant" First Transit "Agency Supervisor" Delaney Brinkley admitted that he was put in a position to do the termination and didn't conduct an investigation, and Plaintiffs' assisted in bringing out the fact that Union Member 3 assumed that she was at fault and there was no evidence of Union Employee 3 being at fault. "Defendant" Don Johnson still insisted on terminating Union Member 3. "Defendants" First Transit

17

Safety Department, Don Johnson and First Transit Management were so negligent with investigating the Three Termination Grievances on September 14, 2016 that it caused "Defendant" Troy Gustafson to yell "you don't get to treat these drivers like shit Don". Plaintiffs' Carter & Bailey provided information and caused information to be provided that showed "Defendants" First Transit Safety Department, Don Johnson and First Transit Management discriminated against Union Member 3 by terminating her without conducting an Administrative Leave investigation. Consequently, Union Member 3 was reinstated back to work and "Defendant" Don Johnson was furious. **General policy Under Harassment , section 2.02 page 18 in "Defendants" First Transit Policy Handbook which related to public transportation safety states: VERBAL CONDUCT such as epithets, derogatory comments, slurs or unwanted comments and jokes; THREATS AND DEMANDS to submit to certain non-work-related conduct or perform certain non-work-related actions in order to keep or get a job, to avoid some other loss, or as a condition of some job benefits, security or promotion. FIRST TRANSIT PROHIBITS SUCH CONDUCT, EVEN IF THE CONDUCT IS NOT SUFFICIENTLY SEVERE OR PERVASIVE TO CONSTITUTE UNLAWFUL HARASSMENT. Under the National Transit Systems Security Act (NTSSA), 6 U.S.C. § 1142, threats, intimidation and discrimination is prohibited. Article 6 Non-discrimination clause in The Collected Bargaining Agreement (CBA) between "Defendants" First Transit & Teamsters Union Local 120 prohibits discrimination. It states: Neither the company nor the Union shall discriminate against any employee in any matter.**

22. On September 14, 2016 At the request of Plaintiff Bailey, "Defendant" Teamsters Local 120 "Union Business Agent (BA)" Troy Gustafson contacted "Defendants" First Transit "General Manager" Tim Ogren, "District Manager" John Matthews via email and stated: "Tim, Due to the fact the Company has been unresponsive to multiple emails sent by the Union on 8-19,8-23, and 8-31 requesting meetings in order to adhere to the time lines and steps outlined in The Collective Bargaining Agreement Grievance Procedure Article 12. the Union moves grievances 15-13984, 16-14188, and 16-14632 past step 3 and on to The Appeal Procedure outlined in Article 13.1. Please submit available dates in a timely fashion in order to schedule a mediation panel hearing. "Defendants" Tim Ogren & John Matthews never responded to the request of Plaintiff Bailey and discriminated and retaliated by ignoring the request and not investigating grievance # 16-14188 (Lunch & Breaks Grievance) a safety related grievance that Plaintiff Bailey requested

to be reimbursed for because "Defendant" First Transit "General Manager" Tim Ogren reduced Plaintiff's pay & hours by ending Plaintiff's route early on the day that Plaintiff was grieved.

23. On September 16, 2016 Plaintiffs' Carter & Bailey engaged in Protected Activity at First Transit, 1717 County Road CW, Roseville MN. In attendance were "Defendants" First Transit "General Manager" Tim Ogren, First Transit "Dispatch Supervisor" Dean Vinge, First Transit "Payroll Clerk" Patricia Vold and First Transit "Safety Administrative Assistant" Yolanda Sweat. On the morning of September 16, 2016 "Plaintiff" Carter clocked in at 7am and proceeded to the payroll office to discuss retro pay discrepancies that Plaintiff Carter noticed on his paycheck that he had received that morning. Plaintiff Carter spoke with "Defendant" Patricia Vold for 7-10 minutes about retro pay discrepancies with no harassment, no retaliation, no intimidation and no discrimination. Plaintiff Carter then proceeded to pre trip the bus that Plaintiff would drive that day. While Plaintiff Carter was pre tripping his bus, he was approached by "Plaintiff" Bailey" who had asked Plaintiff Carter to witness and engage in Protected Activity with him. Plaintiff Carter agreed to witness and engage in Protected Activity with Plaintiff Bailey after he finished pre tripping his bus. After Plaintiff Carter pre tripped his bus he met Plaintiff Bailey at the dispatch counter around 7:27am. Plaintiffs' Carter & Bailey informed "Defendant" First Transit "Dispatcher" Shari Schultz that Plaintiff Carter was witnessing for Plaintiff Bailey in a meeting with "Defendant" Tim Ogren and that Plaintiff Carter's bus was already pre tripped. "Dispatcher" Shari Schultz said ok and picked up the phone as though she was calling "Defendant" Tim Ogren. "Plaintiff" Bailey clocked in at 7:30am and "Plaintiffs" Carter & Bailey proceeded to "Defendant" Tim Ogren's office and the door was closed. While waiting to speak with "Defendant" Tim Ogren, Plaintiffs' Carter & Bailey went into the payroll office which is right next door to "Defendant" Tim Ogren's office. Plaintiffs' Carter & Bailey spoke to "Defendant" First Transit "Payroll Clerk" Patricia Vold about the retro pay that Plaintiffs' Carter & Bailey investigated on August 24, 2016 at "Defendant" Teamsters Local 120 Union Hall, 9422 Ulysses St NE, Blaine, MN 55434. The retro pay was implemented on the paycheck that Plaintiffs' had received the morning of September 16, 2016. At 7:32am "Defendant" First Transit "Dispatch Supervisor" Dean Vinge came into the payroll office and harassed & intimidated Plaintiffs' by discouraging Plaintiffs' from exercising their Weingarten rights when he stated: this 7 o'clock ride, I can't cover it" to Plaintiff Carter. Instead of transferring the 7 o'clock ride to another driver like dispatchers normally do, especially if a driver hasn't left the yard (1717 County RD CW) yet. Plaintiffs'

19

asked "Defendant" Dean Vinge to get "Defendant" Tim Ogren and "Defendant" Dean Vinge replied "his door is closed". "Defendant" Dean Vinge chose to harass & intimidate Plaintiffs' about a 7am ride at 7:32am. "Defendant" Dean Vinge was made aware by Shari Schultz that "Plaintiff" Carter was a witness for "Plaintiff" Bailey before "Defendant" Dean Vinge entered the payroll office at 7:32am. After Plaintiff Carter explained to "Defendant" Dean Vinge that Union Members had a right to witness for one another and that Plaintiff Carter's bus was pre tripped and ready to go, "Defendant" Dean Vinge returned to his office at 7:34am. Plaintiffs' continued to speak with "Defendant" Patricia Vold only to be interrupted by "Defendant" First Transit "Safety Administrative Assistant" Yolanda Sweat at 7:36am. Yolanda Sweat came into the payroll office and harassed, intimidated and discouraged Plaintiffs' from being engaged in Protected Activity by offering Plaintiffs' a payroll discrepancy form that was only supposed to be used if the payroll office door was closed. Yolanda Sweat also discouraged Plaintiffs' from engaging in Protected Activity by stating: "Tim is on a conference call". Yolanda sweat left the payroll office at 7:37am. After being in the payroll office for 7 minutes, "Defendant" Tim Ogren came into the payroll office with hostility & resistance. Plaintiffs' asked "would you like to know what's going on"? "Defendant" Tim Ogren bullied Plaintiffs' by replying "No" and insisted that Plaintiffs' go in a loud and intimidating voice. "Defendant" Tim Ogren threatened to reduce Plaintiffs' hours & pay by taking Plaintiffs' work away for the day and that's exactly what he did when he took 10 hours of work away and payed Plaintiffs' 2 hours minimum pay according to the Collected Bargaining Agreement (CBA) between "Defendants" First Transit & Teamsters Local 120. "Defendant" Tim Ogren threatened Plaintiffs' Carter & Bailey when Plaintiffs' engaged in Protected Activity together on August 18, 2016 and was very upset when Plaintiffs' engaged in Protected Activity together on September 14, 2016. "Defendant" Tim Ogren perceived that Plaintiffs' were engaged in Protected Activity together on September 16, 2016 and retaliated by paying Plaintiffs' 2 hours according to the Collected bargaining Agreement (CBA) between First Transit & Teamsters Local 120. **According to article 14 in the CBA, section 14.10 states: The minimum reporting pay shall not apply if the employee is tardy, suspended from work for disciplinary reasons, or requests to not work for all or a portion of his/her shift.General policy Under Harassment , section 2.02 page 18 in "Defendants" First Transit Policy Handbook which related to public transportation safety states: VERBAL CONDUCT such as epithets, derogatory comments, slurs or unwanted comments and jokes; THREATS AND DEMANDS to submit to certain non-work-related conduct or perform certain non-work-related actions in order**

20

to keep or get a job, to avoid some other loss, or as a condition of some job benefits, security or promotion. **FIRST TRANSIT PROHIBITS SUCH CONDUCT, EVEN IF THE CONDUCT IS NOT SUFFICIENTLY SEVERE OR PERVASIVE TO CONSTITUTE UNLAWFUL HARASSMENT. Under the National Transit Systems Security Act (NTSSA), 6 U.S.C. § 1142, threats, intimidation and discrimination is prohibited. Article 6 Non-discrimination clause in The Collected Bargaining Agreement (CBA) between "Defendants" First Transit & Teamsters Union Local 120 prohibits discrimination. It states: Neither the company nor the Union shall discriminate against any employee in any matter.**

24. On Friday September 16. 2016  approximately 1pm, evening Plaintiff Bailey' called  "Defendants" First Transit " retaliation, harrasment and discrimination hotline 1-877-3CALLFG to make A verbal complaint of retaliation, harrasment and discrimination against "Defendants" First Transit "Managment and the young lady that answered the call took my phone number and email address and said someone will contact me about the complaint soon, shortly after making the complaint through the hotline, Plantiff Bailey received  a phone call from "Defendant" First Transit "Sr.Director of Fleld Labor Relation & HR" Kim Michelle Mingo. Plaintiff Bailey expressed the dislike of retaliatiation, harassment, and discrimination from "Defendants" First Transit Management. "Defendants" First Transit "Kim Michelle Mingo" asked me if I met "Defendant" First Transit "Regional HR Manager" Tom Graves before and I expressed to her that he might be a part of the problem. Kim assured me that Tom was not in cahoots with anyone from First Transit Management and said that she would contact "Defendant" First Transit "Regional HR Manager" Tom Graves to let him know to call me and come to Minnesota  to meet with Plaintiff Bailey to investigate the complaints  Instead of contacting Plaintiff', "Defendant" First Transit "Regional HR Manager" Tom Graves chose to retaliate against Plaintiff Bailey by excluding Plaintiff from his investigation on or before September 19, 2016 and by violating "Defendant" First Transit's Policy Handbook reporting procedure section 2.04 by immediately notifying and making "Defendant" First Transit Management aware of Plaintiffs' complaint. Doing this caused Plaintiffs' to be subjected to a hostile environment and retaliated against on Monday, September 19, 2016 by "Defendant" First Transit Management. "Defendant" First Transit "Regional HR Manager" Tom Graves discriminated against Plaintiff Bailey by not contacting Plaintiff before he contacted "Defendant" First Transit Management. **General policy Under Harassment , section 2.02 page 18 in "Defendants"**

First Transit Policy Handbook which related to public transportation safety states: VERBAL
CONDUCT such as epithets, derogatory comments, slurs or unwanted comments and jokes;
THREATS AND DEMANDS to submit to certain non-work-related conduct or perform certain
non-work-related actions in order to keep or get a job, to avoid some other loss, or as a condition of
some job benefits, security or promotion. FIRST TRANSIT PROHIBITS SUCH CONDUCT, EVEN IF
THE CONDUCT IS NOT SUFFICIENTLY SEVERE OR PERVASIVE TO CONSTITUTE UNLAWFUL
HARASSMENT. Under the National Transit Systems Security Act (NTSSA), 6 U.S.C. § 1142, threats,
intimidation and discrimination is prohibited. Article 6 Non-discrimination clause in The Collected
Bargaining Agreement (CBA) between "Defendants" First Transit & Teamsters Union Local 120
prohibits discrimination. It states: Neither the company nor the Union shall discriminate against any
employee in any matter.

25. On Friday September 16, 2016 "Defendants" First Transit "Payroll Clerk" Patricia Vold, "Payroll
Manager" Pa Yang and "Safety Administrative Assistant" Yolanda Sweat Harassed, discriminated and
retaliated against Plaintiffs' Carter & Bailey by writing and submitting false statements to "Defendant" Tim
Ogren about the events that occurred on September 16, 2016. Because "Defendants" wrote and submitted
false statements about the events that occurred on September 16, 2016, Plaintiffs' Carter & Bailey's hours
& pay were reduced.

26. On Sunday September 18, 2016 at 8:19pm, Plaintiff Carter utilized "Defendant" First Transit's
harassment, discrimination and retaliation procedure and submitted a written complaint to "Defendant" First
Transit "Regional HR Manager" Tom Graves via email expressing that Plaintiff had informed "Defendant"
First Transit Management on several occasions of Plaintiff Carter being harassed, retaliated &
discriminated against and how Plaintiffs' complaint was not taking seriously. Instead of contacting Plaintiff',
"Defendant" First Transit "Regional HR Manager" Tom Graves chose to retaliate against Plaintiff Carter by
excluding Plaintiff from his investigation on or before September 19, 2016 and by violating "Defendant" First
Transit's Policy Handbook reporting procedure section 2.04 by immediately notifying and making
"Defendant" First Transit Management aware of Plaintiffs' complaint. Doing this caused Plaintiffs' to be
subjected to a hostile environment and retaliated against on Monday, September 19, 2016 by "Defendant"

22

First Transit Management. "Defendant" First Transit "Regional HR Manager" Tom Graves discriminated against Plaintiff Carter by not contacting Plaintiff before he contacted "Defendant" First Transit Management. **General policy Under Harassment , section 2.02 page 18 in "Defendants" First Transit Policy Handbook which related to public transportation safety states: VERBAL CONDUCT such as epithets, derogatory comments, slurs or unwanted comments and jokes; THREATS AND DEMANDS to submit to certain non-work-related conduct or perform certain non-work-related actions in order to keep or get a job, to avoid some other loss, or as a condition of some job benefits, security or promotion. FIRST TRANSIT PROHIBITS SUCH CONDUCT, EVEN IF THE CONDUCT IS NOT SUFFICIENTLY SEVERE OR PERVASIVE TO CONSTITUTE UNLAWFUL HARASSMENT. Under the National Transit Systems Security Act (NTSSA), 6 U.S.C. § 1142, threats, intimidation and discrimination is prohibited. Article 6 Non-discrimination clause in The Collected Bargaining Agreement (CBA) between "Defendants" First Transit & Teamsters Union Local 120 prohibits discrimination. It states: Neither the company nor the Union shall discriminate against any employee in any matter.**

27. On Monday September 19, 2016 at 7am  Plaintiffs' Carter & Bailey engaged in Protected Activity Together at "Defendant" First Transit, 1717 County Road CW, Roseville MN to meet with "Defendant" First Transit Management to discuss what had taken place on Friday, September 16, 2016. In attendance were, "Defendants" First Transit "General Manager" Tim Ogren, "District Safety Manager" Don Johnson, "Safety Manager" Al Halas along with "Union Steward" Greg Tvedt and Plaintiffs' Carter & Bailey. "Defendant" First Transit "District Safety Manager" Don Johnson started the meeting off by stating:" We are here to talk about the events from last Friday morning". When Plaintiffs' Carter & Bailey attempted to discuss the events on Friday September 16, 2016, "Defendant" Tim Ogren stated: Our intent is to get statements from you not to go down this road and rehash what happened Friday. I'm not going to revisit what happened on Friday in this room right now". Coming into this meeting, Plaintiffs' Carter & Bailey was under the impression that they would be able to discuss the events that took place on September 16, 2016 and then perform assigned work. When Plaintiffs' realized that this meeting would lead to discipline and requested Union representation ("Defendant" Troy Gustufson), "Defendants" First Transit "Safety Manager" Al Halas, Tim Ogren and Don Johnson retaliated & discriminated against Plaintiffs' by denying Plaintiffs' request for Union

23

representation and placing  Plaintiffs' Carter & Bailey on Administrative Leave. First Transit "General Manager" Tim Ogren, "District Safety Manager" Don Johnson and "Safety Manager" Al Halas retaliated against Plaintiffs' Carter & Bailey by luring them into a meeting to discuss and turning the meeting to discuss into an investigation that led to Plaintiffs' hours & pay being reduced on this day by placing Plaintiffs' on Administrative Leave Pending an investigation. "Defendants" First Transit "Safety Manager" Al Halas Tim Ogren and Don Johnson harassed and discriminated against Plaintiffs' Carter & Bailey by accusing Plaintiffs' of misconduct (refusing to perform assigned work on September 16, 2016) on September 19, 2016 while knowing that "Defendant" Tim Ogren signed a document on September 16, 2016 stating that there was no misconduct. "Defendants" First Transit "Safety Manager" Al Halas, Tim Ogren and Don Johnson retaliated & discriminated against Plaintiffs' Carter & Bailey by violating article 16 section 16.2 in the Collected Bargaining Agreement (CBA) between "Defendants" First Transit & Teamsters Local 120 which states: Employees shall not be disciplined until he/she has been afforded Union representation. **General policy Under Harassment , section 2.02 page 18 in "Defendants" First Transit Policy Handbook which related to public transportation safety states: VERBAL CONDUCT such as epithets, derogatory comments, slurs or unwanted comments and jokes; THREATS AND DEMANDS to submit to certain non-work-related conduct or perform certain non-work-related actions in order to keep or get a job, to avoid some other loss, or as a condition of some job benefits, security or promotion. FIRST TRANSIT PROHIBITS SUCH CONDUCT, EVEN IF THE CONDUCT IS NOT SUFFICIENTLY SEVERE OR PERVASIVE TO CONSTITUTE UNLAWFUL HARASSMENT. Under the National Transit Systems Security Act (NTSSA), 6 U.S.C. § 1142, threats, intimidation and discrimination is prohibited. Article 6 Non-discrimination clause in The Collected Bargaining Agreement (CBA) between "Defendants" First Transit & Teamsters Union Local 120 prohibits discrimination. It states: Neither the company nor the Union shall discriminate against any employee in any matter.**

28. On Monday September 19, 2016 "Plaintiffs" Carter & Bailey engaged in Protected Activity at "Defendant" Teamsters Local 120 Union Hall, 9422 Ulysses St NE, Blaine, MN. 55434. In attendance were, "Defendant" Teamsters Local 120 ", Teamsters Local 120 "Secretary" along with Chris Stampley and Plaintiffs' Carter & Bailey. Plaintiffs' filed grievances against "Defendant" First Transit  for violating Article 6

(Discrimination) and Article 14 section 14.10 of the Collected Bargaining Agreement (CBA). "Defendants" Teamsters Local 120 & Troy Gustafson retaliated and discriminated against Plaintiffs' Carter & Bailey by accepting Plaintiffs' Article 6 (Discrimination) and Article 14 grievances and "Defendants" First Transit "General Manager" Tim Ogren and "Defendants" Teamsters Local 120 & Troy Gustafson not investigating them, knowing that those grievances were in connection with the events that had taken place on September 16, 2016. **Article 6 Non-discrimination clause in The Collected Bargaining Agreement (CBA) between "Defendants" First Transit & Teamsters Union Local 120 prohibits discrimination. It states: Neither the company nor the Union shall discriminate against any employee in any matter. General policy Under Harassment , section 2.02 page 18 in "Defendants" First Transit Policy Handbook which related to public transportation safety states: VERBAL CONDUCT such as epithets, derogatory comments, slurs or unwanted comments and jokes; THREATS AND DEMANDS to submit to certain non-work-related conduct or perform certain non-work-related actions in order to keep or get a job, to avoid some other loss, or as a condition of some job benefits, security or promotion. FIRST TRANSIT PROHIBITS SUCH CONDUCT, EVEN IF THE CONDUCT IS NOT SUFFICIENTLY SEVERE OR PERVASIVE TO CONSTITUTE UNLAWFUL HARASSMENT. Under the National Transit Systems Security Act (NTSSA), 6 U.S.C. § 1142, threats, intimidation and discrimination is prohibited. Article 6 Non-discrimination clause in The Collected Bargaining Agreement (CBA) between "Defendants" First Transit & Teamsters Union Local 120 prohibits discrimination. It states: Neither the company nor the Union shall discriminate against any employee in any matter.**

29. On September 19, 2016 "Defendants" First Transit "General Manager" Tim Ogren, harassed, discriminated and retaliated against Plaintiffs' Carter & Bailey by writing and submitting false statements claiming misconduct to himself to terminate Plaintiffs' Carter & Bailey for the events that occurred on September 16, 2016. Because "Defendant" Tim Ogren wrote and submitted false statements about the events that occurred on September 16, 2016, Plaintiffs' Carter & Bailey's hours & pay were reduced.

30. On September 20, 2016 "Plaintiffs" Carter & Bailey engaged in Protected Activity at the Metropolitan Council, 390 Robert St N, St Paul, MN. In attendance were, "Plaintiffs" Carter & Bailey along with Chris

Stampley and "Defendant" Metropolitan Council "Principal Contract Administrator" Laron Weddington of the Procurement Department. When Plaintiffs' made "Defendant" Metropolitan Council "Principal Contract Administrator" Laron Weddington aware that the contract between "Defendants" Metropolitan Council & First Transit was causing safety hazards for "Defendant" Metropolitan Council "Metro Mobility" clients and "Defendant" First Transit "Metro Mobility' drivers, Laron Weddington stated: "I thought you guys were down here to talk about money". Then, "Defendant" Metropolitan Council "Principal Contract Administrator" Laron Weddington Discouraged, Intimidated and Threatened Plaintiffs' by stating: "there may be consequences for you coming forth with this information, I'm not the person that can handle this, I will forward your information to Andrew Kruger". "Defendant" Metropolitan Council "Principal Contract Administrator" Laron Weddington retaliated against Plaintiffs' by not investigating and not forwarding our information to Andrew Kruger. Laron Weddington discriminated against Plaintiffs' by not directing Plaintiffs' Carter & Bailey to "Defendant" Metropolitan Council's complaint procedure. Federal Transit Authority (FTA) guidelines and under the National Transit Systems Security Act (NTSSA), 6 U.S.C. § 1142, threats, intimidation and discrimination are prohibited.

31. On September 21, 2016 "Defendant" First Transit "Dispatch Supervisor" Dean Vinge harassed, discriminated and retaliated against Plaintiffs' Carter & Bailey by writing and submitting false statements claiming misconduct about the events that occurred on September 16, 2016. Because "Defendants" wrote and submitted false statements about the events that occurred on September 16, 2016, Plaintiffs' Carter & Bailey's hours & pay were reduced.

32. On September 26, 2016 "Defendants" First Transit, Tim Ogren retaliated against Plaintiffs' Carter & Bailey by mailing Plaintiffs' letters stating:"We have concluded our investigation of the events that occurred on September 16, 2016, in which you refused to go on your route. I have found you to be in violation of Article 16.2 (g) of the union bargaining agreement. Your employment is terminated effective immediately". The letter was signed by "Defendant" Tim Ogren and John Matthews, Don Johnson, Tom Graves and Teamsters Local 120 was Cc. Plaintiffs' hours & pay were reduced. "Defendant" First Transit retaliated and discriminated against Plaintiffs' Carter & Bailey by allowing "Defendant" Tim Ogren (A primary subject in Plaintiffs complaints of discrimination, retaliation and harassment to "Defendant" First Transit's Corporate

HR on September 16, 2016 and September 18, 2016) to conduct a bias unpaid Administrative Leave Investigation that led to Plaintiff's being terminated. The unpaid Administrative Leave Investigation was bias because "Defendant" Tim Ogren didn't include Plaintiffs' Carter & Bailey in his investigation, investigated his own false written statement claiming misconduct by Plaintiffs', coerced other employees to write and submit false statements claiming misconduct by Plaintiffs' and discharged Plaintiffs' knowing willfully that he paid Plaintiffs' Carter & Bailey 2 hours of pay according to the CBA on September 16, 2016 and Article 14 section 14:10 states: The minimum reporting pay shall not apply if the employee is tardy, suspended from work for disciplinary reasons, or requests to not work for all or a portion of his/her shift. The (CBA) makes it clear that you can't pay 2 hours of pay for misconduct.

33. On October 7, 2016 Plaintiffs' Carter & Bailey engaged in Protected Activity for Plaintiffs' Step 1 Termination Grievance at "Defendant" First Transit, 1717 County Road CW, Roseville MN "Defendants" First Transit, Tim Ogren, Teamsters Local 120 and Troy Gustafson retaliated by failing to rehire, reducing Plaintiff's pay & hours and discriminating against Plaintiffs' Carter & Bailey by not allowing Plaintiffs' to investigate & discuss the events that revolved around Plaintiffs' Step 1 Termination grievances. When on September 14, 2016 at the three Termination Grievance Investigations, all grievants were able to investigate & discuss the events that revolved around their Step 1 Termination Grievances. "Defendants" First Transit, Tim Ogren Teamsters Local 120 and Troy Gustafson violated First Transit's Employee Handbook and the CBA's policy, procedure & process.

34. On October 19, 2016 Plaintiffs' Carter & Bailey engaged in Protected Activity for Plaintiffs' Step 2 Termination Grievance at "Defendant" First Transit, 3400 Spring Street N.E, Minneapolis MN. In attendance were, "Defendants" Tim Ogren, Troy Gustafson, John Matthews along with Plaintiffs' Carter & Bailey. "Defendants" First Transit, Tim Ogren, Teamsters Local 120 and Troy Gustafson discriminated by not allowing Plaintiffs' to investigate & discuss the events that revolved around Plaintiffs' termination grievances. When on September 14, 2016 at the three Termination Grievance Investigations, all grievants and plaintiffs were able to investigate & discuss the events that revolved around their termination grievances. "Defendants" First Transit, Tim Ogren, Teamsters Local 120 and Troy Gustafson retaliated by

27

intimidating and discouraging Plaintiffs' Carter & Bailey from exercising their Weingarten Rights to engage in Protected Activity together. "Defendants" failed to rehire and continued to reduce Plaintiff's pay & hours.

35.On October 26, 2016 Plaintiffs' Carter & Bailey engaged in Protected Activity for Plaintiffs' Step 3 Termination Grievance at "Defendant" Teamsters Local 120, 9422 Ulysses St NE, Blaine, MN. 55434 "Defendant" Troy Gustafson retaliated, discriminated and breached the (CBA) procedure at Plaintiffs Step 3 Termination Grievance Investigation by allowing "First Student HR" Tom Graves "a third party who was not authorized according to the CBA" to reduce Plaintiffs pay & hours and to decide and conduct a bias (CBA) Step 3 Grievance investigation for "Plaintiffs" Carter & Bailey.

36. On November 15, 2016 Plaintiffs' Carter & Bailey engaged in Protected Activity together at The National Labor Board (NLRB) located at 212 3rd Ave S, Minneapolis MN and filed Unlawful Labor Practices (ULP) against "Defendants" First Transit and Teamsters Local 120. The ULP filed against First Transit was for discrimination and retaliation against Plaintiffs' for discharging Plaintiffs' to discourage Protected Activity and The ULP against Teamsters Local 120 was for interference with Plaintiffs' rights to seek decertification. Consequently, Plaintiffs' Carter & Bailey were granted Arbitration because of the ULP that was filed by Plaintiffs' against "Defendant" First Transit. This changed Plaintiffs' Termination status to Terminated pending Arbitration. Because Plaintiffs' filed ULP's on this day, "Defendants" First Transit and Teamsters Local 120 continued retaliating and discriminating against Plaintiffs' Carter & Bailey by failing to rehire and reducing Plaintiffs' pay & hours for the remainder of Plaintiffs' Termination Grievance Process (Panel Hearing and Arbitration). The Panel Hearing was November 22, 2016 and Plaintiffs' received the Arbitrator's decision September 2017.

37. On November 22, 2016 Plaintiffs' Carter & Bailey engaged in Protected Activity for Plaintiffs' final 4th stepTermination Panel Hearing Grievance at "Defendant" Teamsters Local 120, 9422 Ulysses St NE, Blaine, MN. In attendance were "Defendants" First Transit "District Safety Manager" Don Johnson, First Transit "Safety Manager" Al Halas, Teamsters Local 120 "Union Business Agent" Troy Gustafson, Teamsters Local 120 "Panel Chairman" Louie Miller along with "Union Steward" Greg Tvedt and Plaintiffs' Carter & Bailey. "Defendants" First Transit, Don Johnson, Teamsters Local 120 and Troy Gustafson

retaliated & discriminated by reducing Plaintiffs hours & pay and allowing "Defendant" Don Johnson "A primary subject in Plaintiffs complaints of retaliaiton, discrimination and harassment to Corporate" to conduct a bias (CBA) Panel Hearing Investigation and vote against Plaintiffs' being reinstated back to work.

38. On February 28, 2017 "Plaintiffs" Carter & Bailey engaged in Protected Activity via email titled Drivers Uncover Systemic Problem At Metro Mobility that was sent to "Defendant" Metropolitan Council "Management" andy.streasick@metc.state.mn.us,
dana.rude@metc.state.mn.us, leslie.kandaras@metc.state.mn.us,
mark.filipi@metc.state.mn.us, andrew.krueger@metc.state.mn.us,
judd.schetnan@metc.state.mn.us, paul.johnson@metc.state.mn.us,
jennifer.munt@metc.state.mn.us, claudia.fuentes@metc.state.mn.us,
carol.lafleur@metc.state.mn.us, rep.tony.albright@house.mn,
laron.weddington@metc.state.mn.us at 390 Robert St N, St Paul, MN. In the email Plaintiffs' stated: "Due to our (Driver 1 & 2) moral obligation, we have no choice but to continue exercising every effort to eliminate the systemic problem that continues to put drivers and clients safety at risk. It is imperative that we have an opportunity to share our information with the Metropolitan Council Metro Mobility Management and Tony Albright (Chair Of Metropolitan Council Legislative Oversight Panel) for examination with expectations of bringing resolution to a natural obligation of all binding parties. We have given you an adequate amount of time to contact us with meaningful consideration. With that being said, with the lack of consideration and response leaves us no choice but to grant you 24 hours to respond to this email with the intent of fulfilling your obligations to our moral obligations. Otherwise we will continue with our WHISTLEBLOWING AND PROTECTED CONCERTED ACTIVITY RIGHTS"  Plaintiffs' made "Defendant" Metropolitan Council "Management" aware of the safety hazards that Plaintiffs' had uncovered with the "Defendant" Metropolitan Council "Metro Mobility" program. In this email, "Defendant" Metropolitan Council "Management" Andy Streasick & Laron Weddington was made aware for the second time by Plaintiffs' of the safety hazards at "Defendant" First Transit and that the Metropolitan Council was liable. Andy Streasick & Laron Weddington continued to retaliate against Plaintiffs' Carter & Bailey by not investigating and continued to discriminate against Plaintiffs' by not directing Plaintiffs' to "Defendant" Metropolitan Council complaint procedure.

39. On March 1, 2017 "Plaintiffs" Carter & Bailey engaged in Protected Activity at "Defendant" Metropolitan Council, 390 Robert St N, St Paul MN and investigated misappropriation of funds. Plaintiffs' made "Defendant" Metropolitan Council "Project Administrators Dana Rude & Greg Schuck aware that when "Defendant" Metropolitan Council awarded "Defendant" First Transit more zones to cover, it caused driver & client injuries excessive wheelchair tips, poor driver retention, lunches & breaks violations, and contract violations. Plaintiffs' also made Greg Schuck aware that "Defendant" First Transit was putting bonuses and revenue hours over safety and "Defendant" First Transit was liable. "Defendant" Metropolitan Council discriminated against Plaintiffs' Carter & Bailey by not investigating nor directing Plaintiffs to "Defendant" Metropolitan Council's complaint procedure and continued to reduce Plaintiffs' pay & hours.

40. On March 6, 2017 "Plaintiffs" Carter & Bailey engaged in Protected Activity with the Minnesota Department of Labor (OSHA) Doug Poeschl, at 443 Lafayette Road N, St Paul MN and submitted complaints that high work demands were leading to injuries in the work environment. Plaintiffs' OSHA complaints # 209555382, 209555267, 209555382 and 209555267 were sent to "Defendants" First Transit "Safety Manager" Al Halas and First Transit "Regional Vice President" John Matthews. Because Plaintiffs' filed complaints with OSHA, "Defendants" First Transit continued to retaliate and discriminate against Plaintiffs' by reducing Plaintiffs' pay & hours for the remainder of Plaintiffs' Termination Grievance Process (Arbitration).

41. On June 27, 2017 (Plaintiff' Carter's Arbitration) engaged in Protected Activity at 1300 Godward St suite 3950, Minneapolis MN, In attendance were "Defendants" First Transit "Region Vice President John Matthews, First Transit "Safety Administrative Assistant" Yolanda Sweat  First Transit "Dispatcher" Shari Schultz, "Teamsters Local 120 "Union Business Agent" Troy Gustafson along with First Transit "Safety Administrative Assistant" Yolanda Sweat, First Transit "Payroll Manager" Pa Yang, Teamsters Local 120 "Union Business Agent" Joe Battaglia, "Union Steward" Greg Tvedt and Plaintiffs' Carter & Bailey. Defendants" First Transit, Teamsters Local 120, Tim Ogren, Dean Vinge, Patricia Vold and Troy Gustafson continued retaliating, discriminating, reducing Plaintiffs pay & hours and failed to rehire by submitting conflicting false statements, conducting a bias investigation, withholding evidence and denying Plaintiff Carter of the same procedure as other Union members.

30

42. On July 13, 2017 (Plaintiff' Bailey's Arbitration) engaged in Protected Activity at 1300 Godward St suite 3950, Minneapolis MN,  In attendance were "Defendants" First Transit "Region Vice President John Matthews, First Transit "Safety Administrative Assistant" Yolanda Sweat  First Transit "Dispatcher" Shari Schultz, First Transit "Safety Manager" Al Halas, Teamsters Local 120 "Union Business Agent" Troy Gustafson, along with First Transit "Safety Administrative Assistant" Yolanda Sweat, First Transit "Payroll Manager" Pa Yang, Teamsters Local 120 "Union Business Agent" Joe Battaglia, "Union Steward" Greg Tvedt and Plaint:ffs' Carter & Bailey. "Defendants" First Transit, Teamsters Local 120, Tim Ogren, Dean Vinge, Patricia Vold and Troy Gustafson along with First Transit "Safety Manager" Al Halas continued retaliating, discriminating, reducing Plaintiffs pay & hours and failed to rehire by submitting conflicting false statements, conducting a bias investigation withholding evidence and denying Plaintiff Bailey of the same procedure as other Union members.

43. Because Plaintiffs Carter & Bailey are represented by "Defendant" Teamsters Local 120 (The Subcontractor) and the Subcontractor has a binding contract with "Defendant" First Transit (The Contractor),( who hired "Plaintiffs" Carter & Bailey) and the Contractor has a binding contract with "Defendant" Metropolitan Council (The Agency), "Plaintiffs" Carter & Bailey are covered by the NTSSA Act because Plaintiffs' were employee's of a public transportation Agency. When Plaintiffs' Carter & Bailey were engaged in Protected Activity with "Defendants" First Transit, First Transit "General Manager" Tim Ogren, First Transit "Dispatch Supervisor" Dean Vinge, First Transit "District Safety Manager" Don Johnson, Teamsters Local 120 and Teamsters Local 120 "Union Business Agent" Troy Gustafson, Plaintiffs' became covered by the NTSSA Act because Plaintiffs provided information to "Defendants" or caused information to be provided to "Defendants", assisted in a investigation by a federal regulatory agency (NLRB, OSHA) and assisted in investigations with Plaintiffs' employers about an alleged violation of federal laws, rules & regulations related to public transportation safety, fraud, abuse of federal grants and other public funds intended for public transportation safety, filed a complaint and caused a proceeding to be brought about rules & regulations and reported hazardous safety conditions. Because Plaintiffs' Carter & Bailey engaged in Protected Activity, "Defendants" First Transit, First Transit "General Manager" Tim Ogren, First Transit "Dispatch Supervisor" Dean Vinge, First Transit "District Safety Manager" Don Johnson, Teamsters Local

31

120 and Teamsters Local 120 "Union Business Agent" Troy Gustafson, retaliated against Plaintiffs' by intimidating, threatening, denying overtime & promotions, disciplining, firing, failing to rehire and reducing Plaintiffs' pay & hours. All "Defendants" First Transit, First Transit "General Manager" Tim Ogren, First Transit "Dispatch Supervisor" Dean Vinge, First Transit "District Safety Manager" Don Johnson, First Transit "Payroll Clerk" Patricia Vold, Teamsters Local 120 and Teamsters Local 120 "Business Agent" Troy Gustafson perceived that Plaintiffs' Carter & Bailey were engaged in Protected Activity and proceeded to discriminate and retaliate against Plaintiffs' by violating

**MINNESOTA STATUTES 2016 177.253 MANDATORY WORK BREAKS. Subdivision 1. Rest breaks. An employer must allow each employee adequate time from work within each four consecutive hours of work to utilize the nearest convenient restroom. Subd. 2. Collective bargaining agreement. Nothing in this section prohibits employers and employees from establishing rest breaks different from those provided in this section pursuant to a collective bargaining agreement. And Violating MINNESOTA STATUTES 2016 177.254 MANDATORY MEAL BREAK states An employer must permit each employee who is working for eight or more consecutive hours sufficient time to eat a meal. Subd. 2. Payment not required. Nothing in this section requires the employer to pay the employee during the meal break. Subd. 3. Collective bargaining agreement. Nothing in this section prohibits employers and employees from establishing meal periods different from those provided in this section pursuant to a collective bargaining agreement. History: 1989 c 167 s 1 Copyright © 2016 by the Revisor of Statutes, State of Minnesota. All Rights Reserved. 1**

**MINNESOTA STATUTES 2016 177.254**

**Violating Article 14 in the CBA, section 14.10 which states: "The minimum reporting pay shall not apply if the employee is tardy, suspended from work for disciplinary reasons, or requests to not work for all or a portion of his/her shift.", Violating Article 6 in the CBA Non-discrimination clause in The Collected Bargaining Agreement (CBA) between "Defendants" First Transit & Teamsters Union Local 120 which states: Neither the company nor the Union shall discriminate against any employee in any matter.", violating the General policy Under Harassment , section 2.02 page 18 in "Defendants" First Transit Policy Handbook which states: "VERBAL CONDUCT such as epithets, derogatory comments, slurs or unwanted comments and jokes;**

**THREATS AND DEMANDS to submit**

32

to certain non-work-related conduct or perform certain non-work-related actions in order to keep or get a job, to avoid some other loss, or as a condition of some job benefits, security or promotion. FIRST TRANSIT PROHIBITS SUCH CONDUCT, EVEN IF THE CONDUCT IS NOT SUFFICIENTLY SEVERE OR PERVASIVE TO CONSTITUTE UNLAWFUL HARASSMENT.", violating FMCSA Title 49 Transportation §392.3 ill or fatigued operator which states: "No driver shall operate a commercial motor vehicle, and a motor carrier shall not require or permit a driver to operate a commercial motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate the commercial motor vehicle. However, in a case of grave emergency where the hazard to occupants of the commercial motor vehicle or other users of the highway would be increased by compliance with this section, the driver may continue to operate the commercial motor vehicle to the nearest place at which that hazard is removed.", violating the National Transit Systems Security Act 6 U.S.C. § 1142, (NTSSA) which states: "threats, retaliation, intimidation and discrimination is prohibited.", Violating 42 U.S. Code § 1981 which states: "Equal rights under the law All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts.", Violating Sec. 181.932 MN Statutes which states "An employer shall not discharge, discipline, threaten, otherwise discriminate against, or penalize an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of an employee, in good faith, reports a violation, suspected violation, or planned violation of any federal or state law or common law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official, Violating 31 U.S. Code § 3729. False claims act states any person who knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461note; Public Law 104–410 [1]), plus 3 times the amount of damages which the Government sustains because of the act of that person. Violating 28 C.F.R. § 42.107(e) *Intimidatory or retaliatory acts prohibited.* No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured

by section 601 of the Act or this subpart, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subpart. The identity of complainants shall be kept confidential except to the extent necessary to carry out the purpose of this subpart, including the conduct of any investigation, hearing, or judicial proceeding arising thereunder." and violating TITLE VI OF THE CIVIL RIGHTS ACT OF 1964 §2000d SEC. 601 which states: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Because "Defendants" egregiously committed these acts and terminated Plaintiffs', Plaintiffs' Carter & Bailey suffered mental anguish, anxiety, lost sleep, lost seniority, lost health insurance, lost vacation pay, lost holiday pay, lost PTO pay, lost overtime pay, lost annual pay raises, lost interval pay bonuses, lost mental health day pay, lost job, credit was damaged, relationships were damaged, character was defamed and suffered a general feeling of worthlessness as a result of termination. Plaintiffs' are seeking compensatory damages, punitive damages, front pay with interest, back pay with interest and other damages with interest. Interest shall be computed by compounding daily the IRS interest rate for the underpayment of taxes. See 26 U.S.C. §6621 (the Federal short—term rate plus three percentage points).

44."Defendants" Metropolitan Council, First Transit, First Transit "General Manager" Tim Ogren, First Transit "Dispatch Supervisor" Dean Vinge, First Transit "District Safety Manager" Don Johnson, Teamsters Local 120 and Teamsters Local 120 "Union Business Agent" Troy Gustafson all had the authority to investigate instead of investigating all the Defendants Retaliated and discriminated by denying Plaintiff's the opportunity to utilize all the policies, processes and procedures without discrimanation in order to stop all the retaliation.

**Attach additional sheets of paper as necessary.**
**Check here if additional sheets of paper are attached: xtra**

**Please label the attached sheets of paper to as Additional Facts and continue to number the paragraphs consecutively.**

REQUEST FOR RELIEF

State what you want the Court to do for you and the amount of monetary compensation, if any, you are seeking.

1. Back pay, all raises, vacations, holiday pay, sick pay and  overtime pay,

2. Medical and Dental benefits Reinstated and paid up to date

3. Compensatory Damages

4. Punitive Damages

5. Expungement of warnings, reprimands, and derogatory references (such as references to Plaintiffs Bailey & Carter termination) which may have been placed in the complainants personnel file as a result of the protected activity.

6. "Defendants" Metropolitan Council, First Transit and Teamsters Local 120 provide training to their Management regarding OSHA Whistleblower statue.

7. Reinstatement with 401k, pension and with no forced Union membership.

8. "Defendant" Metropolitan Council creates a position for "Plaintiffs" Bailey & Carter to be a paid liaison between First Transit and Metropolitan Council for Paratransit drivers that are being reprimanded or terminated for safety related incidents / accidents.

9. Implement Metropolitan Councils Complaint Procedure in First transit Employee policy Handbook and the Collected Bargaining Agreement (CBA) between Teamsters Local 120 and First Transit.

10. Implement FTA nondiscrimination clause in First transit Employee policy Handbook and Collected Bargaining Agreement (CBA) between Teamsters Local 120 and First Transit.


11. $9,272,000 ( Nine million- two hundred seventy two thousand dollars)

Date: 5/22/2020

Signature of Plaintiff   _Md  Ct_____

Mailing Address   _2600  21ˢᵗ Ave N_____

_Minneapolis  MN  55411_____

_____

Telephone Number   _612  280-1088_____

Date: 5/22/2020

Signature of Plaintiff   _JffzBorly_____

Mailing Address   _1418  130ᵗʰ Av_____

_New  Richmond  WI_____

_____

Telephone Number   _763-843-5457_____

Note:   All plaintiffs named in the caption of the complaint must date and sign the complaint and provide his/her mailing address and telephone number.  Attach additional sheets of paper as necessary.