
RECEIVED

SEP 18 2020

CLERK, U.S. DISTRICT COURT
ST. PAUL, MINNESOTA

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Jeffrey L. Bailey / Marlon E. Carter

                            Plaintiff(s),

vs.                                             Case No.
                                                0:20-cv-01238-DWF-TNL


First Transit Inc.
Tim Ogren
First Group America Inc.                        DEMAND FOR JURY
First Student Inc.                              TRIAL
Don Johnson                                          YES ✔_   NO ___
Troy Gustafson            Defendant(s).
Metropolitan Council
Teamsters Local 120


### AMENDED  COMPLAINT

TWO

SCANNED

SEP 18 2020 KOOS

U.S. DISTRICT COURT ST. PAUL

PARTIES

1.  List your name, address and telephone number.  Do the same for any additional plaintiffs.

     A. Plaintiff

| | |
|---|---|
| Name | Jeffrey L Bailey |
| Street Address | 1418 130th Av |
| County, City | St Croix,  New Richmond |
| State & Zip Code | WI, 54017 |
| Telephone Number | (763) 843-5457 |

     B. Plaintiff

| | |
|---|---|
| Name | Marlon Carter |
| Street Address | 2600 21st Ave N |
| County, City | Hennepin, Minneapolis |
| State & Zip Code | MN, 55411 |
| Telephone Number | (612) 280-1088 |

List all defendants.  You should state the full name of the defendant, even if that defendant is a government agency, an organization, a corporation, or an individual. Include the address where each defendant may be served.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.

2

A.  Defendant No. 1

| | |
|---|---|
| Name | First Transit Inc. |
| Street Address | 1717 County Road CW |
| County, City | Ramsey, St Paul |
| State & Zip Code | MN, 55434 |

B.  Defendant No. 2

| | |
|---|---|
| Name | Tim Ogren |
| Street Address | 1717 County Road CW |
| County, City | Ramsey, St Paul |
| State & Zip Code | MN, 55434 |

C. Defendant No. 3

| | |
|---|---|
| Name | First Group America, Inc. |
| Street Address | 600 Vine St Suite 1200 |
| County, City | Hamilton, Cincinnati |
| State & Zip Code | OH, 45202 |

D. Defendant No. 4

| | |
|---|---|
| Name | Metropolitan Council |
| Street Address | 390 North Robert Street |
| County, City | Ramsey, St, Paul |
| State & Zip Code | MN, 55101 |

3

E. Defendant No. 5

Name                Don Johnson

Street Address      30347 Rydeen Ave

County, City        Chisago, Shafer

State & Zip Code    MN, 55074


F. Defendant No. 6

Name                Troy Gustafson

Street Address      9422 Ulysses St NE

County, City        Anoka, Blaine

State & Zip Code    MN, 55434


G.  Defendant No. 7

Name                Teamsters Local 120

Street Address      9422 Ulysses St NE

County, City        Anoka, Blaine

State & Zip Code    MN, 55434


H.  Defendant No. 8

Name                First Student Inc.

Street Address      600 Vine St Suite 1200

County, City        Hamilton, Cincinnati

State & Zip Code    OH, 45202

4

**NOTE: IF THERE ARE ADDITIONAL PLAINTIFFS OR DEFENDANTS, PLEASE PROVIDE THEIR NAMES AND ADDRESSES ON A SEPARATE SHEET OF PAPER.**
Check here if additional sheets of paper are attached: ✔ **SEE Additional defendants**
Please label the attached sheets of paper to correspond to the appropriate numbered paragraph above (e.g., Additional Defendants 2.d., 2.e., etc.)

JURISDICTION

Federal courts are courts of limited jurisdiction. Generally, two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case involving the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state and the amount of damages is more than $75,000 is a diversity of citizenship case.

3. What is the basis for federal court jurisdiction? *(check all that apply)*

   ✔ Federal Question          ☐ Diversity of Citizenship

4. If the basis for jurisdiction is Federal Question, which Federal Constitutional, statutory or treaty right is at issue? List all that apply.

OSHA DOL  NTSSA  Whistleblowing Act    6 U.S.C. § 1142

TITLE VI OF THE CIVIL RIGHTS ACT OF 1964    42 U.S.C. § 2000D

Sec 268.095 MN Statute    and      Sec 181.74 MN Statute

28 C.F.R. § 42.107(e)

31 U.S. Code § 3729(a )(1)(B)

42 U.S. Code § 1981

Sec. 181.932 MN Statutes

5

5. If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party? Each Plaintiff must be diverse from each Defendant for diversity jurisdiction.

Plaintiff Name:                        State of Citizenship:

Defendant No. 1:                       State of Citizenship:

Defendant No. 2:                       State of Citizenship:

**Attach additional sheets of paper as necessary and label this information as paragraph 5.**
**Check here if additional sheets of paper are attached.  ☐**

6. What is the basis for the venue in the District of Minnesota? (*check all that apply*)

   ✔ Defendant(s) reside in Minnesota     ✔ Facts alleged below primarily occurred in Minnesota

   ✔ Other: explain

Plaintiffs are exercising their rights under 49 U.S Code § 20109 to kick out an existing case because it has exceeded 210 days § 1982.114 District Court Jurisdiction. NTSSA  Whistleblower ACT

STATEMENT OF THE CLAIM

Describe in the space provided below the basic facts of your claim. The description of facts should include a specific explanation of how, where, and when each of the defendants named in the caption violated the law, and how you were harmed. Each paragraph must be numbered separately, beginning with number 7. Please write each single set of circumstances in a separately numbered paragraph.

7. According to the National Transit Systems Security Act (NTSSA) 6 U.S.C. § 1142

(a) In GENERAL A public transportation agency, a contractor or a subcontractor of such agency, or an officer or employee of such agency, shall not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part, to the employee's lawful, good faith act done, or perceived by the employer to have been done or about to be done—

(1) to provide information, directly cause information to be provided, or otherwise directly assist in any investigation regarding any conduct which the employee reasonably believes constitutes a violation of any Federal law, rule, or regulation relating to public transportation safety or security, or fraud, waste, or abuse of Federal grants or other public funds intended to be used for public transportation safety or security, if the information or assistance is provided to or an investigation stemming from the provided information is conducted by—

(A ) a Federal, State, or local regulatory or law enforcement agency (including an office of the Inspector General under the Inspector General Act of 1978 (5 U.S.C. App.; Public Law 95–452); [1]

(B) any Member of Congress, any Committee of Congress, or the Government Accountability Office; or

(C) a person with supervisory authority over the employee or such other person who has the authority to investigate, discover, or terminate the misconduct;

(b) HAZARDOUS SAFETY OR SECURITY CONDITIONS

**(1)** A public transportation agency, or a contractor or a subcontractor of such agency, or an officer or employee of such agency, shall not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee for—

    **(A)** reporting a hazardous safety or security condition;

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States under 28 U.S.C. § 1331, a case involving the United States Constitution or federal laws or treaties is a federal question case. The District Court has jurisdiction over Plaintiffs 6 U.S.C. § 1142 claim because on August 3, 2007, the National Transit Systems Security Act (NTSSA), 6 U.S.C. § 1142, became law as part of The Implementing Recommendations of the 9/11 Commission Act (Public Law 110-53), establishing retaliation protections for public transportation agency workers.

8. Plaintiffs' Carter & Bailey are two African American Males that were Union Drivers for "Defendant" Metropolitan Council's "Metro Mobility ADA Program". Plaintiff Carter drove from 2007 - 2016 and Plaintiff Bailey drove from 2013 - 2016 providing door-to-door service ensuring that riders/customers/clients get from the entry door at their pickup location to the first entry door at their destination. Metro Mobility, a service of "Defendant" Metropolitan Council located at 390 Robert St N, St Paul MN is public transportation in the Twin Cities metro area for certified riders who are unable to use regular fixed-route bus service due to a disability or health condition. Metro Mobility is a door-to-door service that receives federal funds from the Federal Transportation Authority (FTA) and must comply with the FTA and DOT regulations implementing the transportation-related provisions of the Americans with Disabilities Act (ADA) of 1990 and Section 504 of the Rehabilitation Act of 1973, as amended. The regulations in 49 CFR Parts 27, 37, 38, and 39 set specific requirements transit providers must follow to ensure their services, vehicles, and facilities are accessible to and usable by individuals with disabilities.The DOT regulations were amended as part of DOT's ADA rulemaking to require ADA compliance as a condition of Section 504 compliance. In order to receive Federal funds, FTA grantees must comply with Section 504; in order to comply with DOT's Section 504 regulations, grantees must comply with the DOT ADA regulations and FTA guidelines.

"Defendant" Metropolitan Council breached the FTA's non discrimination clause by discrimiating against Plaintiffs' Carter & Bailey by not investigating Plaintiffs' complaints of discrimination, retaliation and harassment.

9. "Defendant" Metropolitan Council (The Agency) entered into an agreement (Contract 14P109 Demand East Zone) with "Defendant" First Transit inc (The Agency Contractor) for operation of Metro Mobility Demand ParaTransit Agency. The agreement began on August 26, 2015 and ended on June 30, 2020. "Defendant" First Transit agreed to perform all services under the contract between "Defendants" Metropolitan Council & First Transit in accordance with all applicable divisions of the Americans With Disabilities Act (ADA) and the special transportation service rules. In addition to any applicable provisions of federal, state, local laws and regulations. "Defendant" First Transit receives payment for services according to vehicle revenue hours. The maximum amount to be paid to "Defendant" First Transit was not to exceed $85,945,267. Vehicle revenue hours means the measurement of time (in hours) during which a vehicle is in service for transporting riders/customers/clients. A vehicle revenue hour is calculated from the first customer pickup to the last customer dropoff excluding all out of service time. Out of service time includes but is not limited to drivers lunches, drivers breaks, slack time greater than 60 minutes, accidents or refueling time. "Defendant" Metropolitan Council supplied the buses, dispatch equipment, Trapeze, radios, Mobile Data Terminal System (MDT) and cameras. "Defendants" Metropolitan Council and First Transit breached the non discrimination clause in contract 14P109 by discriminating against Plaintiffs' Carter & Bailey by not investigating Plaintiffs' complaints of discrimination, retaliation and harassment.

10. According to the September 19, 2014 MInneapolis / St Paul Business Journal, "Defendant" Metropolitan Council had broken off ties with DARTS, a St. Paul nonprofit bus service for the elderly and disabled, after an audit found that several staff members at DARTS changed the arrival times for trip pickups, falsified records and improper maintenance on buses. "Defendant" Metropolitan Council leased about 52 buses to DARTS, which provides Metro Mobility and Transit Link services in Dakota County (South Zone). "Defendants" First Transit & Metropolitan Council was made aware by "Defendant" Metropolitan Council

9

"Metro Mobility" Transportation Committee that there were driver retention issues since 2013 at "Defendant"
"First Transit" 1717 County Road CW, Roseville MN (East Zone). According to the September 19, 2014
Pioneer Press, In 2013, DARTS provided 170,246 Metro Mobility rides in 2013 in Dakota County, and
another 43,043 Transit Link rides. "Defendant" Metropolitan Council' contracts with the nonprofits (DARTS
& Transit Link) was to expire April 2015 and June 2015, but it ended in November 2014. Subsequently,
"Defendant" Metropolitan Council chose "Defendant" First Transit (East Zone) to cover the South Zone that
DARTS & Transit Link covered in 2013-2014. 8 months later, "Defendants" Metropolitan Council & First
Transit entered into a contract agreement 14P127 (South Zone) and began operating out of Burnsville, MN
June 28, 2015. The South Zone contract 14P127 had a five-year base term. First Transit Senior Vice
President Beverly Edwards states, "First Transit values our partnership with Roseville's Metro Mobility. We
are pleased to continue our Metro Mobility services in the East Zone and look forward to operating the new
services in the South Zone." In 2015, adequate staffing to meet revenue hours was an issue at "Defendant"
First Transit (East Zone). "Defendant" First Transit (East Zone) gave incentives to numerous drivers to
transfer to the South Zone which caused the drivers that remained at the East Zone location to have
heavier workloads. As a result of the heavier workloads, Plaintiffs' Bailey & Carter (East Zone Drivers)
experienced fatigue, ride harassment, end times being excessively abused and lunch & breaks violations
according to MN statues: 177.253, 177.254. Instead of falsifying arrival times like Darts & Transit Link did to
meet "Defendant" Metropolitan Council's productivity goals, "Defendant" First Transit (East Zone) falsified
and altered  Plaintiffs Carter & Bailey's lunch &  break times and altered Plaintiffs' start time & end times in
"Defendant" Metropolitan Council's trapeze (the reservation, scheduling and dispatch software system
utilized by "Defendant" Metropolitan Council in providing Metro Mobility service) in order to achieve the
minimum standard of performance and OTP bonuses in contract 14P109 which caused safety hazards
(heavy work loads, driver fatigue, wheelchair tips, accidents). In 2015-2016 "Defendant" Metropolitan
Council knew that there was a high turnover rate & low driver retention at "Defendant" First Transit (East
Zone) and that drivers performed duties for 3 contracts (14P109, 14P127, 11P199) that caused high work
demands which is a safety hazard.

11. Plaintiffs' Carter & Bailey were hired as Drivers by "Defendant" First Transit (East Zone), 1717 County Road CW, Roseville, MN. to perform revenue hours for "Defendant" Metropolitan Council "Metro Mobility ADA Program". "Defendant" Teamsters Local 120 (The Agency SubContractor) located at 9422 Ulysses St NE, Blaine, MN is the Union that had the authority to negotiate, investigate and bargain wages & work conditions on behalf of Plaintiffs' Carter & Bailey who were First Transit (East Zone) "Metro Mobility" Drivers (Drivers that performed the work in contract 14P109 between "Defendants" Metropolitan Council & First Transit). "Defendants" Teamsters Local 120 & First Transit entered into a contract known as Working Agreement Between First Transit, Inc And Teamsters Local Union No.120 (CBA). The agreement began on January 5, 2013 and ended on August 31, 2017. "Defendants" First Transit & Teamsters Local 120 failed to comply with Article 6 (non discrimination clause) in the CBA by discriminating against Plaintiffs' Carter & Bailey by not investigating Plaintiffs' complaints of discrimination, retaliation and harassment.

12. On September 9, 2015 Plaintiff Carter engaged in Protected Activity at "Defendant" Teamsters Local 120, 9422 Ulysses St NE Blaine, MN. Plaintiff Carter filed a grievance (#15-13846) against "Defendant" First Transit for violation of article 7 and 14 of the CBA. On September 9, 2015. Plaintiff Carter was scheduled for an 11:30am lunch break with multiple 11:00am rides and multiple 11:30am rides on his route. Plaintiff had communicated with "Defendant" First Transit dispatch department several times throughout the morning about transferring multiple rides off of Plaintiff's route so that Plaintiffs' 11:30am scheduled lunch wouldn't be violated."Defendant" First Transit dispatch transferred off rides and then added more rides to Plaintiffs' route which kept Plaintiff stressed, fatigued and worried about his lunch break being violated. Plaintiff dropped off a client at 11:25am and received a 11:30am add-on (additional ride). When Plaintiff notified dispatch and stated: "I would like to take my lunch before I do my next ride", Plaintiff was told to contact "Defendant" First Transit "Demand Supervisor" Sue Westerwelle. When Plaintiff contacted Sue Westerwelle, he was told to bring the bus back to base (1717 County Road CW) because he didn't want to do the add-on before Plaintiff took his lunch. Plaintiff brought the bus back to base and went to file a grievance immediately at 9422 Ulysses St NE. "Defendant" First Transit discriminated against Plaintiff

Carter by violating Articles 7 & 14 in the CBA. "Defendant" First Transit retaliated by reducing Plaintiff Carter's pay & hours.

13. On October 2, 2015 Plaintiff Carter engaged in Protected Activity at "Defendant" First Transit, 1717 County Road CW, Roseville MN for Step 1 for grievance #15-13846. In attendance were, "Defendants" First Transit "Demand Supervisor" Sue Westerwelle, First Transit "Lead Dispatcher" Antwon, Teamsters Local 120 "Union Business Agent" Joe Batagglia along with Plaintiff. The meeting created  no resolution to pay Plaintiff Carter for the hours that were taken away and the grievance was moved on to Step 2. "Defendant" First Transit retaliated by continuing to reduce Plaintiff Carter's pay & hours.

14. On October 5, 2015 "Defendants" First Transit "East Zone Driver" & Teamsters Local 120 "Union Steward" Greg Tvedt (white male) engaged in Protected Activity with "Defendant" Local 120. Greg Tvedt filed a grievance (#15-13920) against "Defendant" First Transit for violating article 7 and 14 of the CBA by forcing employees unreasonably and consistently beyond their shift. In the grievance Teamsters Local 120 requested that First Transit cease, desist and allow employees to get off at their scheduled bid times. "Defendants" First Transit & Teamsters Local 120 discriminated against Plaintiffs' Carter & Bailey by allowing Greg Tvedt to file grievances and engage in Protected Activity without being subjected to retaliation.

15. On November 14, 2015 Plaintiff Bailey engaged in Protected Activity with "Defendant" Teamsters Local 120 at 9422 Ulysses St NE Blaine, MN. Plaintiff Bailey filed a grievance (#15-13984) against "Defendant" First Transit for violating article 14:5 of the CBA by denying Plaintiff Bailey the 40 hour route that Plaintiff Bid on and won. The route that was given to Plaintiff Bailey had an endtime that was different from the Awarded route which was more than 40 hours. Plaintiff was stressed and forced to work excessively fatigued beyond the endtime of the awarded route. "Defendant" First Transit retaliated by denying Plaintiff the awarded route,

16. On November 17, 2015 Plaintiff Bailey engaged in Protected Activity at "Defendant" First Transit, 1717
County Road CW, Roseville MN for Step 1 for grievance #15-13984. In attendance were, "Defendants"
First Transit General Manager Tim Ogren, First Transit district safety manager Don Johnson,  First Transit
Roseville safety managerAl Halas,Teamsters Local 120 "Union Business Agent" Joe Batagglia and
"Defendant" First Transit & Teamsters Local 120 "Union Steward" Greg Tvedt. On behalf of Plaintiff Bailey
Teamsters Local 120 "Union Business Agent" Joe Batagglia informed everybody that ride overloads and
keeping Plaintiff out past his awarded endtime and the stress of worrying about it  was causing safety
hazards. In this grievance investigation Plaintiff became aware of Union Steward Greg Tevdt had also file a
grievance #15-13920 on behalf of all the drivers because of complaints he received of work overload
hazzards. First Transit General Manager Tim Ogren and First Transit district safety manager Don Johnson
claim that they would fix the parameters of Plaintiff Bailey's route to make sure Plaintiff endtime was not
violated. Because Plaintiff Bailey filed a grievance this did not happen, "Defendant" First Transit retaliated
by reducing Plaintiff Bailey's route to less than 40 hours.


17. On December 15, 2015 Plaintiffs' Carter and Bailey along with drivers from contracts 14P109 Roseville
Mn (East Zone), 14P127 Burnsville Mn (South Zone) and 11P199 Roseville Mn (Agency) gathered at the
Roseville Library 2180 Hamline Ave N Roseville MN to sign a petition to Decertify  "Defendant" Teamsters
Local 120 for being complicit with "Defendant" First Transit violating Articles 12, 7 and 14 of the CBA.
"Defendant" Teamsters Local 120 wouldn't even file a ULP ( Unlawful  Labor Practice occurs when a union
or an employer violates Section 8 of the National Labor Relations Act. Union members commonly file ULPs
against their union because the union failed to fairly represent its members) against "Defendant" First
Transit. When "Defendant" Teamsters Local 120 became aware of Plaintiffs' attempt to decertify them (
Decertification refers to the process where the National Labor Relations Board (NLRB) allows employees to
call for a special election to get rid of the union as their "exclusive representative, once the union is
removed as your legal bargaining representative you no longer have to join the union or pay dues or fees to
it) "Defendant" Teamsters Local 120  retaliated and discriminated against Plaintiffs Carter & Bailey by
ignoring the safety hazard grievances (#15-13846) and (#15-13984) filed by Plaintiffs Carter & Bailey and
allowing their pay and hours to continually be reduced.

18. On January 7, 2016 Plaintiff Bailey was engaged in Protected Activity at First Transit, 1717 County Road CW, Roseville MN.  In attendance were, "Defendants" First Transit "General Manager" Tim Ogren, along with Union Stewart Ron Fishback. Plaintiff Bailey was being harassed with rides.The trips (Rides) that were being inserted on Plaintiff's Ranger Mobile Data Terminal (MDT) by Defendant First Transit Dispatcher were excessively overloaded and Plaintiff's break time was being violated. When Plaintiff Bailey notified "Defendant" First Transit "Dispatcher" Mia to request a lunch or break, "Defendant" First Transit "Dispatcher Supervisor" Dean Vinge retaliated by removing Plaintiff Bailey's entire route and insisted that Plaintiff Bailey bring the bus back to base (First Transit 1717 County Road CW, Roseville MN). When Plaintiff returned to base, "Defendant" Tim Ogren placed Plaintiff on Administrative Leave for 3 weeks without pay as a written warning for insubordination. Subsequently,on  01/25/2016 Plaintiff Bailey filed a Article 16 lunch break grievance (#16-14188) and filed a Article 16.2 no written warning notice grievance (#16-14856) on 08/3/2016 against "Defendant" First Transit. "Defendant" First Transit " Region Vice President John Mattews made an offer to Plaintiff Bailey for one week of pay and it was rejected by Plaintiff Bailey with a counter offer. "Defendant" Teamsters Local 120 Union BA Joe Battaglia sent an email to "Defendant" First Transit General Manager Tim Ogren for Plaintiff Bailey's counter offer to be fully compensated for the 3 weeks. "Defendants" First Transit "General Manager" Tim Ogren and First Transit discriminated against Plaintiff Bailey by violating Article 16 and 16.2 in the CBA "Defendant" First Transit "General Manager"Tim Ogren and First Transit discriminated & retaliated against Plaintiff Bailey by ignoring "Defendant" Teamsters Local 120 emails (the grievance counter offer) and continued reducing Plaintiff's pay & hours.

19. On June 22, 2016 Plaintiffs' Carter & Bailey engaged in Protected Activity and met with "Defendant" Metropolitan Council "Metro Mobility Customer Service Manager" Andy Streasick at "Defendant" Metropolitan Council, 390 Robert St N, St Paul, MN. Plaintiffs' made Andy Streasick aware that there were safety violations occurring at "Defendant" First Transit and that the Metropolitan Council could be liable. Plaintiffs' made Andy Sreasick aware that Plaintiffs' would like to obtain the contracts between "Defendants" First Transit and The Metropolitan Council in hopes of finding something that was of help to "Defendant" First Transit drivers and "Defendant" Metropolitan Council "Metro Mobility" clients safety. This made "Defendant" Metropolitan Council aware that "Plaintiffs" Carter & Bailey were investigating safety

14

violations. "Defendant" Metropolitan Council "Customer Service Manager" Andy Streasick discriminated against Plaintiffs' by not directing Plaintiffs' Carter & Bailey to "Defendant" Metropolitan Council's complaint procedure.

20. On June 24, 2016 "Plaintiff" Carter was engaged in Protected Activity at First Transit, 1717 County Road CW, Roseville MN.  In attendance were, "Defendants" First Transit "General Manager" Tim Ogren, "Demand Supervisor" Sue Westerwelle, "Safety Manager" Al Halaas and "Road Supervisor" Matt. "Plaintiff" Carter was being harassed with rides. The trips that were being inserted on Plaintiff's Ranger Mobile Data Terminal (MDT) were so bad that Plaintiff's break time was being violated. The agitation, distraction and stress caused Plaintiff Carter to be fatigued and put Plaintiff and "Defendant" Metropolitan Council "Metro Mobility" client's safety in jeopardy. "Plaintiff" Carter notified dispatch to let them know that he needed to return to base because Plaintiff didn't feel that he could continue to do his route safely. When "Plaintiff" Carter returned to base he asked to meet with "Defendants" First Transit "General Manager Tim Ogren, "Demand Supervisor" Sue Westerwelle, "Safety Manager" Al Halas and "Road Supervisor" Matt all at once to talk about what "Plaintiff" Carter endured on this day and complaints of  harassment, discrimination and retaliation that Plaintiff had made previously to each of them on separate occasions. "Plaintiff" Carter's request was granted and when Plaintiff engaged in Protected Activity and made "Defendants" aware that Plaintiff Carter had made complaints of harassment, discrimination and retaliation to each of them previously, "Defendant" Tim Ogren cut Plaintiff off, bullied the conversation and stated "if you're going to go down that path then maybe we are going to involve HR". Tim Ogren also intimidated Plaintiff by not accepting "Plaintiff" Carter's verbal complaint and stated that Plaintiff was wasting their time if Plaintiff didn't write his complaint down. "Defendants" First Transit & Tim Ogren discriminated against "Plaintiff" Carter by not accepting Plaintiff's verbal complaints of harassment, retaliation and discrimination. "Plaintiff" Carter's previous verbal complaints nor his verbal complaint of harassment on this day was never reported to HR by "Defendant" First Transit "General Manager Tim Ogren, "Demand Supervisor" Sue Westerwelle, "Safety Manager" Al Halas or "Road Supervisor" Matt.

21. On July 27, 2016, Plaintiffs' Carter & Bailey engaged in Protected Activity at "Defendant" Teamsters Local 120, 9422 Ulysses St NE, Blaine, MN. In attendance were "Defendants" Teamsters Local 120 "Secretary - Treasurer" Bill Wedebrand and Teamsters Local 120 "Secretary" Sandy / Stephanie. Plaintiffs' launched an investigation when filing Article 12 grievances (#16-14812, #16-14811) against "Defendant" First Transit for violating grievance procedure timelines.

22. On August 3, 2016, Plaintiffs' Carter & Bailey engaged in Protected Activity at "Defendant" Teamsters Local 120, 9422 Ulysses St NE, Blaine, MN. In attendance were "Defendants" Teamsters Local 120 "Secretary - Treasurer" Bill Wedebrand and Teamsters Local 120 "Secretary" Sandy / Stephanie. Plaintiffs' launched an investigation when filing Article 29 grievances (#16-14854, #16-14855) against "Defendant" First Transit for misappropriation of funds.

23. On August 18, 2016 "Defendants" Teamsters Local 120, Troy Gustafson and First Transit came to a resolution when "Defendant" First Transit agreed to follow the timelines in Article 12. This was a lie because "Defendant" First Transit continued to violate the timelines specified in Article 12 with Plaintiffs' Carter & Bailey's lunch and break grievances (#15-13846, #16-14188).

24. On August 18, 2016 "Plaintiff" Carter engaged in Protected Activity at First Transit, 1717 County Road CW, Roseville MN for several grievance investigations (#16-4633, #16-14812, #16-14854) that were filed against "Defendant" First Transit by "Plaintiff" Carter. In attendance were, "Defendants" First Transit "General Manager" Tim Ogren, "District Safety Manager" Don Johnson, Teamsters Local 120 "Business Agent" Troy Gustafson along with "Union Steward" Greg Tvedt and "Plaintiff" Carter. At the end of the grievance investigations, "Defendant" Tim Ogren discriminated against Plaintiff Carter & Bailey by directing Greg Tvedt (white employee) to "Defendant" First Transit "Dispatcher" Antwon to get rides removed from

his route so that he could engage in Protected Activity but didn't do the same for "Plaintiffs" Carter & Bailey
when Plaintiffs' engaged in Protected Activity on September 16, 2016.

25. On August 18, 2016 Plaintiffs' Carter & Bailey engaged in Protected Activity Together at "Defendant"
First Transit, 1717 County Road CW, Roseville MN for several grievance investigations ( #15-9384,
#16-14188, #16-14632, #16-14811, #16-14855, #16-14856 that were filed against "Defendant" First Transit
by "Plaintiff" Bailey. In attendance were, "Defendants" First Transit "General Manager" Tim Ogren, "District
Safety Manager" Don Johnson, Teamsters Local 120 "Business Agent" Troy Gustafson along with "Union
Steward" Greg Tvedt and Plaintiffs' Carter & Bailey. At the start of the grievance investigation when
"Defendants" First Transit "District Safety Manager" Don Johnson and First Transit "General Manager" Tim
Ogren challenged Plaintiffs' engaging in Protected Activity Together, "Defendant" Troy Gustafson made
"Defendants" Johnson & Ogren aware that Plaintiffs' Weingarten Rights permitted Plaintiffs' Carter & Bailey
to engage in Protected Activity together. "Defendants" Ogren & Johnson threatened, intimidated, retaliated
and discriminated against Plaintiffs' Carter and Bailey. Defendant's Johnson & Ogren threatened to hold
Grievance Investigations after hours to discourage Plaintiffs' from engaging in Protected Activity together.
"Defendants" Johnson and Ogren intimidated Plaintiffs' Carter & Bailey by discouraging Plaintiffs' (Black
employees) from exercising their Weingarten rights and engaging in Protected Activity together for
Grievance investigations. "Defendants" Johnson & Ogren discriminated against Plaintiffs' by not
intimidating or making the same threat towards Greg Tvedt (White employee) who was engaged in
Protected Activity during the same Grievance Investigations as Plaintiffs' on August 18, 2016. During the
Grievance Investigation when Plaintiffs' attempted to make "Defendants" Tim Ogren & Don Johnson aware
that the driver retention problem at "Defendant" First Transit was relevant to Plaintiff Bailey's Lunch & Break
Grievance, "Defendant" Tim Ogren intimidated & discouraged Plaintiffs' by stating: "We're getting so far off
of this grievance, your talking about retention".

26. On August 24, 2016,Plaintiffs' Carter & Bailey engaged in Protected Activity Together at "Defendant"
Teamsters Local 120, 9422 Ulysses St NE, Blaine, MN. In attendance were "Defendants" Teamsters Local
120 "Legal Counsel" Katrina Joseph,Teamsters Local 120 "Union Business Agent (BA)" Troy Gustafson,
Teamsters Local 120 "President " Tom Ericson and Teamsters Local 120 "Secretary-Treasurer" Bill

Wedebrand. Plaintiffs discovered that the Memorandum Of Understanding (MOU) for Plaintiffs' Retro Pay

from the Metropolitan Council was signed by Teamsters Union Local 120 on August 3, 2016 but hadn't

been signed by "Defendant" First Transit. "Plaintiffs' " Carter & Bailey were informed by Union Treasurer Bill

Wedebrand that First Transit changed to a new payroll system a few weeks after the retro pay was

approved and "Defendant" First Transit couldn't figure out the hours that drivers worked dating back to July

1, 2016. On August 26, 2016. "Complainants" Bailey & Carter received a copy of the Memorandum Of

Understanding via U.S Mail and it was signed by "Defendant" First Transit Region Vice President John

Matthews on August 25, 2016. There was no transparency on the (MOU) showing the total amount money

received from "Defendant" Metropolitan Council's to be paid to Plaintiffs' for the Metro Mobility driver retro

pay disbursement on September 16, 2016. This leaves one to wonder did all current and recent drivers like

Plaintiffs' get paid correctly since "Defendant" First Transit couldn't figure out the hours that drivers worked

dating back to July 1, 2016. This included vacation hours, holiday hours, overtime hours and PTO hours

that current and recent Metro Mobility drivers accrued during the retro pay time period. It appeared to

Plaintiffs' that funds were being misappropriated, so Plaintiffs Carter & Bailey look forward to continuing

their investigations with "Defendant" Metropolitan Council's Metro Mobility Dept and "Defendant" First

Transit "General Manager" Tim Ogren.


27. On September 12, 2016 At the request of Plaintiff Carter, "Defendant" Teamsters Local 120 "Union

Business Agent (BA)" Troy Gustafson contacted "Defendant" First Transit "General Manager" Tim Ogren

via email and stated: "Marlon Carter grievance # 15-13846

Tim, Please be advised that per Article 12 of the CBA Teamsters Local 120 moves the above referenced

grievance past Step 2 and on to Step 3. Please notify the proper HR personal and have them contact me in

order to set up a meeting". "Defendant" First Transit "General Manager" Tim Ogren never responded to the

request of Plaintiff Carter and discriminated and retaliated by ignoring the request and not investigating

grievance # 15-13846 (Lunch & Break Grievance where state law was violated) a safety related grievance

that "Plaintiff" Carter requested to be reimbursed for because "Defendant" First Transit "Demand

Supervisor" Sue Westerwelle reduced Plaintiff's pay & hours by ending Plaintiff's route early on the day that

Plaintiff was grieved. According to Article 12.2 step 2 in the CBA: "If the grievance is not resolved in step 2,

the union, if it wishes to proceed further with the grievance may request in writing, via fax within (5)

calendar days of notice to the company, a meeting or conference call between the Company Human Resource Director or his/her designated representative, within (10) days of the request, the parties shall schedule a meeting or conference call". "Defendants" Teamsters Local 120 and Troy Gustafson sent notice on September 14, 2016 to "Defendants" First Transit, First Transit "Region Vice President" John Matthews and Tim Ogren  to proceed further with grievance #15-13846. "Defendants" First Transit, First Transit "Regional Director" John Matthews and Tim Ogren discriminated against Plaintiff Carter by not responding on or before September 22, 2016. Instead of responding to grievance 15-13846, "Defendants" First Transit and Tim Ogren retaliated by terminating Plaintiff Carter on September 26, 2016.

28. On September 13, 2016 10:46 AM  "Plaintiff" Bailey  was engaged in Protected Activity on his route for First Transit, 1717 County Road CW, Roseville MN with "Defendant" First Transit "Safety Manager" Al Halas. "Plaintiff" Bailey informs "Defendant" First Transits Dispatch Dept that non ambulatory clients were showing up on plaintiff (MDT) While driving "Defendant" Metropolitan Council's Metro Mobility bus "Plaintiff" Bailey received a text message on the Ranger Mobile Data Terminal (MDT) saying I will move the ride but contact "Defendant" First Transit "Safety Manager" Al Halas. When Plaintiff contacted Al Halas via cell phone, Al Halas intimidated & harassed "Plaintiff" Bailey to go against "Plaintiff" Bailey's doctor restrictions. "Defendant" First Transit "Safety Manager" Al Halas insisted that Plaintiff tie down scooters which required bending and twisting. "Plaintiff" Bailey's doctor orders specifically stated ambulatory only no twisting or bending. "Plaintiff" Bailey made "Defendant" First Transit "Safety Manager" Al Halas aware that stooping & kneeling violated Plaintiff's doctor restrictions and was an unsafe act that would jeopardize Plaintiff's and passengers' safety. "Defendant" First Transit "Safety Manager" Al Halas then threatened to file a complaint with the Medical Board against "Plaintiff" Bailey's doctor and would fight to the end to have the doctor's license jerked. "Plaintiff" Bailey ask "Defendant" First Transit "Safety Manager" Al Halas about the retro pay that was to be paid in a couple of days A halas stated that not my area of responsibility I'm incharge of safety no payroll see wait till you get your check then figure it out on september 16,2016.  "Defendant" First Transit "Safety Manager" Al Halas retaliated by making unwanted threats and discriminated against Plaintiff Bailey by violating  "Defendant" First Transit Handbook harassment policy copy written amended July 2011 section 2.02 page 18 and violated Article 6 Non-discrimination clause in The Collected Bargaining Agreement (CBA) between "Defendants" First Transit & Teamsters Union Local 120 prohibits

19

discrimination. It states: Neither the company nor the Union shall discriminate against any employee in any matter.

29. On September 14, 2016 at 7am Plaintiffs' Carter & Bailey engaged in Protected Activity by assisting with three Union Members Termination Grievance Investigations at "Defendant" First Transit, 1717 County Road CW, Roseville MN. In attendance for the first Termination Grievance investigation were, "Defendants" First Transit Management Sue Westerwelle, Don Johnson and Troy Gustafson along with Plaintiffs' Carter & Bailey and Union Member 1. In attendance for the second Termination Grievance investigation were, "Defendants" First Transit Management Sue Westerwelle, Don Johnson and Troy Gustafson along with Plaintiffs' Carter & Bailey and Union Member 2. In attendance for the third Termination Grievance Investigation were, "Defendants" First Transit Management Delaney Brinkley, Don Johnson and Troy Gustafson along with Plaintiffs' Carter & Bailey and Union Member 3. The first Termination Grievance Investigation was for a wheelchair tip, the second Termination Grievance Investigation was for 2 accidents in 12 months and the third Termination Grievance Investigation was for 3 accidents in 12 months. Defendant's Teamsters Local 120 "Union Business Agent" Troy Gustafson, First Transit "District Safety Manager" Don Johnson and "General Manager" Tim Ogren Intimidated, threatened and retaliated against Plaintiffs' Carter & Bailey. Before entering the Wheelchair tip Termination Grievance Investigation, Defendant Troy Gustafson retaliated and intimidated Plaintiffs' Carter & Bailey by discouraging, threatening and yelling at Plaintiffs' when he discovered that Union members were signing Release Of Information (ROI) documents permitting Plaintiffs' to have access to job related information for investigative purposes. "Defendant" Troy Gustafson was furious with Plaintiffs' and yelled "That's My Job". "Defendant" Troy Gustafson also retaliated by threatening to remove Plaintiffs' from assisting with the investigations if Plaintiffs' didn't take a quiet role. "Defendant" Troy Gustafson even suggested that Plaintiffs' only take notes during the investigations. 'Defendant' Troy Gustafson also frightened Plaintiffs' Carter & Bailey by making Plaintiffs' aware that "Defendant" Tim Ogren made "Defendant" Troy Gustafson aware that "Plaintiff" Carter had a wheelchair tip and that Ogren was very upset with Plaintiffs' for being engaged in Protected Activity on this day. When Defendant Gustafson was asked by Plaintiffs' how he felt about Ogren's statements, he replied "Carter should be grateful that he wasn't terminated for his wheelchair tip".

20

At this time Plaintiffs' discovered that Defendant's Troy Gustafson and Tim Ogren knew that "Plaintiff" Carter wasn't terminated for his wheelchair tip and it would show that Defendant's First Transit and Teamsters Local 120 was using the contract to discriminate against drivers that violated Article 16.2(Q) of the Collective Bargaining Agreement (CBA) between First Transit and Teamsters Union Local 120.

30. On September 14, 2016 When Plaintiffs' attempted to speak in the Wheelchair Tip Termination Grievance investigation, "Defendant" Don Johnson intimidated Plaintiffs' by discouraging Plaintiffs' from speaking while being engaged in Protected Activity. "Defendant" Don Johnson stated "I was told that Troy would be the spokesperson here, so I'm not going to recognize your questions right now". Consequently, it was established that Plaintiffs' Carter & Bailey could speak on Union Member 1 behalf. During the Wheelchair Tip Termination Grievance Investigation Plaintiffs' caused information to be provided that showed "Defendant" First Transit Safety Department terminated Union Member 1 without conducting an Administrative Leave investigation, "Defendant" First Transit Dispatch Department didn't follow Zero code (accident) procedures, "Defendant" First Transit didn't report the Wheelchair Tip to "Defendant" Metropolitan Council in the time frame specified in the contract between "Defendant's" Metropolitan Council & First Transit and the Collected Bargaining Agreement between "Defendants" Teamsters Local 120 & First Transit was being used in a discriminatory manner because not all drivers who had Wheelchair Tips was terminated. Because of the information Plaintiffs" provided or caused to be provided during the Wheelchair Tip Termination Grievance Investigation, Union Member 1 was reinstated back to work and "Defendant" Don Johnson was furious.

31. On September 14, 2016 During the 2 accidents in 12 months Termination Grievance Investigation,"Defendant" Don Johnson argued that Union Member 2 was wrong for the accident at an intersection where the lights were out. Plaintiffs' asked "Defendant" Don Johnson "what's the proper procedure when approaching an intersection with no lights"? "Defendant" Don Johnson stated "if you don't know the answer to that then you shouldn't be driving for Metro Mobility". When Plaintiffs' attempted to make "Defendant" Don Johnson aware that "Plaintiff" Carter had 2 accidents in 12 months and wasn't terminated, "Defendant" Don Johnson intimidated Plaintiffs' by interrupting and bullying the conversation stating "we're not even going to go there". Plaintiffs' Carter & Bailey provided information that showed the Collected Bargaining Agreement between "Defendants" Teamsters Local 120 & First Transit and

"Defendant" First Transit Employee Handbook was being used in a discriminatory manner because not all Union Members who had 2 accidents in 12 months were terminated.

32. On September 14, 2016 During the 3 accidents in 12 months Termination Grievance Investigation, "Defendant" Don Johnson pretended that an Administrative Leave investigation had taken place. When "Defendant" First Transit "Agency Supervisor" Delaney Brinkley admitted that he was put in a position to do the termination and didn't conduct an investigation, and Plaintiffs' assisted in bringing out the fact that Union Member 3 assumed that she was at fault and there was no evidence of Union Employee 3 being at fault. "Defendant" Don Johnson still insisted on not reinstating Union Member 3. "Defendants" First Transit Safety Department, Don Johnson and First Transit Management were so negligent with investigating the Three Termination Grievances on September 14, 2016 that it caused "Defendant" Troy Gustafson to yell "you don't get to treat these drivers like shit Don". Plaintiffs' Carter & Bailey provided information and caused information to be provided that showed "Defendants" First Transit Safety Department, Don Johnson and First Transit Management discriminated against Union Member 3 by terminating her without conducting an Administrative Leave investigation. Consequently, Union Member 3 was reinstated back to work and "Defendant" Don Johnson was furious.

33. On September 14, 2016 At the request of Plaintiff Bailey, "Defendant" Teamsters Local 120 "Union Business Agent (BA)" Troy Gustafson contacted "Defendants" First Transit "General Manager" Tim Ogren, "Region Vice President" John Matthews via email and stated: "Tim, Due to the fact the Company has been unresponsive to multiple emails sent by the Union on 8-19,8-23, and 8-31 requesting meetings in order to adhere to the timelines and steps outlined in The Collective Bargaining Agreement Grievance Procedure Article 12. The Union moves grievances 15-13984, 16-14188, and 16-14632 past step 3 and on to The Appeal Procedure outlined in Article 13.1. Please submit available dates in a timely fashion in order to schedule a mediation panel hearing". "Defendants" First Transit "General Manager" Tim Ogren & First

22

Transit "Region Vice President" John Matthews  never responded to the request of Plaintiff Bailey and

discriminated and retaliated by ignoring the request and not investigating grievance # 16-14188

(Lunch & Break grievance where state law was violated) a safety related grievance that Plaintiff Bailey

requested to be reimbursed for because "Defendant" First Transit "General Manager" Tim Ogren reduced

Plaintiff's pay & hours by ending Plaintiff's route early on the day that Plaintiff was grieved. According to

Article 12.2 step 3 in the CBA: "If the grievance is not resolved in step 2, the union, if it wishes to proceed

further with the grievance may request in writing, via fax within (5) calendar days of notice to the company,

a meeting or conference call between the Company Human Resource Director or his/her designated

representative, within (10) days of the request, the parties shall schedule a meeting or conference call".

"Defendants" Teamsters Local 120 and Troy Gustafson sent notice on September 14, 2016 to "Defendants"

First Transit, First Transit "Region Vice President" John Matthews and Tim Ogren  to proceed further with

grievance #16-14188. "Defendants" First Transit, First Transit "Regional Director" John Matthews and Tim

Ogren discriminated against Plaintiff Bailey by not responding on or before September 24, 2016. Instead of

responding to grievance 16-14188, "Defendants" First Transit and Tim Ogren retaliated by terminating

Plaintiff Bailey on September 26, 2016.

34. On September 16, 2016 Plaintiffs' Carter & Bailey engaged in Protected Activity at First Transit, 1717

County Road CW, Roseville MN. In attendance were "Defendants" First Transit "General Manager" Tim

Ogren, First Transit "Dispatch Supervisor" Dean Vinge, First Transit "Payroll Clerk" Patricia Vold and First

Transit "Safety Administrative Assistant" Yolanda Sweat. On the morning of September 16, 2016 "Plaintiff"

Carter clocked in at 7am and proceeded to the payroll office to discuss retro pay discrepancies that Plaintiff

Carter noticed on his paycheck that he had received that morning. Plaintiff Carter spoke with "Defendant"

Patricia Vold for 7-10 minutes about retro pay discrepancies with no harassment, no retaliation, no

intimidation and no discrimination. Plaintiff Carter then proceeded to pre trip the bus that Plaintiff would

drive that day. While Plaintiff Carter was pre tripping his bus, he was approached by "Plaintiff" Bailey" who

had asked Plaintiff Carter to witness and engage in Protected Activity with him. Plaintiff Carter agreed to

witness and engage in Protected Activity with Plaintiff Bailey after he finished pre tripping his bus. After

Plaintiff Carter pre tripped his bus he met Plaintiff Bailey at the dispatch counter around 7:27am. Plaintiffs'

Carter & Bailey informed "Defendant" First Transit "Dispatcher" Shari Schultz that Plaintiff Carter was

witnessing for Plaintiff Bailey in a meeting with "Defendant" Tim Ogren and that Plaintiff Carter's bus was already pre tripped. "Dispatcher" Shari Schultz said ok and picked up the phone as though she was calling "Defendant" Tim Ogren. "Plaintiff" Bailey clocked in at 7:30am and "Plaintiffs" Carter & Bailey proceeded to "Defendant" Tim Ogren's office and the door was closed. While waiting to speak with "Defendant" Tim Ogren, Plaintiffs' Carter & Bailey went into the payroll office which is right next door to "Defendant" Tim Ogren's office. Plaintiffs' Carter & Bailey spoke to "Defendant" First Transit "Payroll Clerk" Patricia Vold about the retro pay that Plaintiffs' Carter & Bailey investigated on August 24, 2016 at "Defendant" Teamsters Local 120 Union Hall, 9422 Ulysses St NE, Blaine, MN 55434. The retro pay was implemented on the paycheck that Plaintiffs' had received the morning of September 16, 2016. At 7:32am "Defendant" First Transit "Dispatch Supervisor" Dean Vinge came into the payroll office and harassed & intimidated Plaintiffs' by discouraging Plaintiffs' from exercising their Weingarten rights when he stated: this 7 o'clock ride, I can't cover it" to Plaintiff Carter. Instead of transferring the 7 o'clock ride to another driver like dispatchers normally do, especially if a driver hasn't left the yard (1717 County RD CW) yet. Plaintiffs' asked "Defendant" Dean Vinge to get "Defendant" Tim Ogren and "Defendant" Dean Vinge replied "his door is closed". "Defendant" Dean Vinge chose to harass & intimidate Plaintiffs' about a 7am ride at 7:32am. "Defendant" Dean Vinge was made aware by Shari Schultz that "Plaintiff" Carter was a witness for "Plaintiff" Bailey before "Defendant" Dean Vinge entered the payroll office at 7:32am. After Plaintiff Carter explained to "Defendant" Dean Vinge that Union Members had a right to witness for one another and that Plaintiff Carter's bus was pre tripped and ready to go, "Defendant" Dean Vinge returned to his office at 7:34am. Plaintiffs' continued to speak with "Defendant" Patricia Vold only to be interrupted by "Defendant" First Transit "Safety Administrative Assistant" Yolanda Sweat at 7:36am. Yolanda Sweat came into the payroll office and harassed, intimidated and discouraged Plaintiffs' from being engaged in Protected Activity by offering Plaintiffs' a payroll discrepancy form that was only supposed to be used if the payroll office door was closed. Yolanda Sweat also discouraged Plaintiffs' from engaging in Protected Activity by stating: "Tim is on a conference call". Yolanda sweat left the payroll office at 7:37am. After being in the payroll office for 7 minutes, "Defendant" Tim Ogren came into the payroll office with hostility & resistance. Plaintiffs' asked "would you like to know what's going on"? "Defendant" Tim Ogren bullied Plaintiffs' by replying "No" and insisted that Plaintiffs' go in a loud and intimidating voice. "Defendant" Tim Ogren threatened to reduce Plaintiffs' hours & pay by taking Plaintiffs' work away for the day and that's exactly what he did when he

took 10 hours of work away and payed Plaintiffs' 2 hours minimum pay according to the Collected Bargaining Agreement (CBA) between "Defendants" First Transit & Teamsters Local 120. "Defendant" Tim Ogren threatened Plaintiffs' Carter & Bailey when Plaintiffs' engaged in Protected Activity together on August 18, 2016 and was very upset when Plaintiffs' engaged in Protected Activity together on September 14, 2016. "Defendant" Tim Ogren perceived that Plaintiffs' were engaged in Protected Activity together on September 16, 2016 and retaliated by using the CBA to reduce Plaintiffs' pay & hours when Plaintiffs' 10 hour routes were removed and Plaintiffs' were paid 2 hours according to the Collected Bargaining Agreement (CBA) between First Transit & Teamsters Local 120.


35. "Defendant" First Transit's 2011 Employee Handbook section 2.01 through 2.04 reporting procedure states: any employee who believes that they have been subjected to or witnessed any kind of harrasment, discrimination, retaliation, coercion or intimidation by anyone, whether by a co-employee, a client or vendor, or a member of our management, is encouraged to file a written or verbal complaint with either their Supervisor or General Manager, however, employee's may also directly file a written or verbal complaint with their respective Region Human Resource Manager or Director, the Vice President of Human Resources, the Director of compliance and employee relations or the employee hotline 1-877-3CALLFG. Section 2.01 through 2.04 states: "Any Supervisor or General Manager who receives either a verbal or a written formal or informal complaint will notify the Human Resource Department within 24 hours of receipt of the complaint. All complaints will be thoroughly and objectively investigated. The investigation may include interviews of individuals believed to have information regarding the alleged retaliation, harassment or discrimination. Such complaints or investigations will remain strictly confidential to the extent possible. However, the company may need to disclose certain information in connection with the investigation and corrective measures taken". Plaintiffs' Carter & Bailey made numerous complaints of harassment, discrimination and retaliation to "Defendants" First Transit Management, Tim Ogren and Don Johnson between 2015 & 2016 and each time "Defendants" discriminated and failed to comply with the reporting procedure by not notifying the Human Resource Department and as a result, no investigations ever took place. When "Defendant" First Transit "Dispatcher" Mia (Black Female) made a harassment complaint, she received a thorough investigation. On Friday September 16, 2016 approximately 1pm Plaintiff Bailey' called "Defendant" First Group retaliation, harrasment and discrimination hotline 1-877-3CALLFG to make

a verbal complaint of retaliation, harrasment and discrimination against "Defendants" First Transit

"Management and the young lady that answered the call took my phone number and email address and

said someone will contact me about the complaint soon. Shortly after making the complaint through the

hotline, Plaintiff Bailey received a phone call from "Defendant" First Student "Sr.Director of FIeld Labor

Relation & HR" Kim Michelle Mingo. Plaintiff Bailey expressed the dislike of retaliatiation, harassment, and

discrimination from "Defendant" First Transit Management. "Defendant" First Student "Kim Michelle Mingo"

asked Bailey if he'd met "Defendant" First Student "Regional HR Manager" Tom Graves before and Bailey

expressed to her that "Defendant" First Student "Regional HR Manager" Tom Graves might be a part of the

problem. Even after Plaintiff Bailey informed "Defendant" First Student "Sr. Director of Field Labor Relation

& HR" Kim Mingo that he believed that Tom Graves was compromised, "Defendant" "First Student" Kim

Mingo egregiously discriminated and failed to comply with section 2 of First Transit Employee Handbook by

ignoring Plaintiff Bailey's informal complaint of the possibility of "Defendant" First Student "Regional HR

Manager" Tom Graves involvement with the retaliation, discrimination and harassment. Kim Mingo stated &

assured Plaintiff Bailey that Tom was not in cahoots with anyone from "Defendant" First Transit

Management and said that she would contact "Defendant" First Student "Regional HR Manager" Tom

Graves to let him know to call Plaintiff Bailey and come to Minnesota to meet with Plaintiff Bailey to get

Plaintiff Bailey's full complaint of retaliation, discrimination and harassment against "Defendant" First transit

Management. Plaintiff Carter was made aware by Plaintiff Bailey that "Defendant" First Student "Regional

HR Manager" Tom Graves was the person to submit complaints of harassment, retaliation and

discrimination to. On Sunday September 18, 2016 at 8:19pm, Plaintiff Carter submitted an initial written

complaint to "Defendant" First Student "Regional HR Manager" Tom Graves via email expressing that

Plaintiff Carter had informed "Defendant" First Transit Management on several occasions of Plaintiff Carter

being harassed, retaliated & discriminated against and how Plaintiff complaints were not taking seriously.

According to section 2.04 reporting procedure in "Defendant" First Transit Employee Handbook: the result

of the investigation and any remedial action taken will be promptly communicated to the complaining

employee in writing and will also be communicated to the alleged harasser, and if appropriate, to others

directly concerned if the investigation reveals that a violation of the company's anti harassment or

anti-retaliation policy or other inappropriate conduct has occurred, then the company will take immediately

corrective action, including discipline up to and including termination, as is appropriate under the

circumstances, regardless of the job position of the parties involved. The company may discipline an employee for any inappropriate conduct discovered in the investigation of reports of harassment, discrimination or retaliation regardless of whether the conduct amounts to the violation of law. If the person who engaged in the harassment or retaliation is not employed by the company, then the company will take whatever corrective action is reasonable and appropriate under the circumstances. "Defendant" First Transit, "Defendant" First Group, "Defendant" First Student "Sr. Director of Field Labor Relation & HR" Kim Mingo and "Defendant" First Student "Regional HR Manager" Tom Graves violated section 2 of First Transit's Employee Handbook by discriminating against Plaintiffs' Carter & Bailey when they communicated with the harasser's between September 16 and September 19, 2016 about Plaintiffs' initial complaint of retaliation, discrimination and retaliation to "Defendant" First Group's hotline and the reporting procedure in Section 2.04 of "Defendant" First Transit's Employee Handbook. "Defendant" First Transit, "Defendant" First Group, "Defendant" First Student "Sr. Director of Field Labor Relation & HR" Kim Mingo and "Defendant" First Student "Regional HR Manager" Tom Graves also egregiously discriminated against Plaintiffs' Carter & Bailey by initiating an investigation with the harassers before meeting and receiving a completed formal complaint from Plaintiffs'.

36. On Friday September 16, 2016 "Defendants" First Transit "Payroll Clerk" Patricia Vold, "Payroll Manager" Pa Yang and "Safety Administrative Assistant" Yolanda Sweat Harassed, discriminated and retaliated against Plaintiffs' Carter & Bailey by writing and submitting false statements to "Defendant" Tim Ogren about the events that occurred on September 16, 2016. Because "Defendants" wrote and submitted false statements about the events that occurred on September 16, 2016, Plaintiffs' Carter & Bailey's hours & pay were reduced.

37. On Sunday September 18, 2016 at 8:19 pm, Plaintiff Carter utilized "Defendant" First Transit's harassment, discrimination and retaliation procedure and submitted a written complaint to "Defendant" First Transit "Regional HR Manager" Tom Graves via email expressing that Plaintiff had informed "Defendant" First Transit Management on several occasions of Plaintiff Carter being harassed, retaliated &

discriminated against and how Plaintiffs' complaint was not taking seriously. Instead of contacting Plaintiff',

"Defendant" First Transit "Regional HR Manager" Tom Graves chose to retaliate against Plaintiff Carter by

excluding Plaintiff from his investigation on or before September 19, 2016 and by violating "Defendant" First

Transit's Policy Handbook reporting procedure section 2.04 by immediately notifying and making

"Defendant" First Transit Management aware of Plaintiffs' complaint. Doing this caused Plaintiffs' to be

subjected to a hostile environment and retaliated against on Monday, September 19, 2016 by "Defendant"

First Transit Management. "Defendant" First Student "Regional HR Manager" Tom Graves discriminated

against Plaintiff Carter by not contacting Plaintiff before he contacted "Defendant" First Transit

Management.


38. "Defendant" First Transit's 2011 Employee Handbook section 2.04 reporting procedure

states:Measures will be undertaken to protect those who use the complaint procedure from any further acts

of harassment, coercion or intimidation, and from retaliation due to their reporting an incident of these types

or participating in an investigation or proceeding concerning the alleged harassment. "Defendant" First

Transit,  "Defendant" First Group, "Defendant" First Student "Sr. Director of Field Labor Relation & HR" Kim

Mingo and "Defendant" First Student "Regional HR Manager" Tom Graves violated section 2 of First

Transit's Employee Handbook by egregiously discriminating against Plaintiffs' Carter & Bailey when no

measures were taken to protect Plaintiffs' Carter & Bailey from any further acts of  intimidation, retaliation

and harassment. Because "Defendants" failed to protect Plaintiffs' confidentiality after their initial complaints

of retaliation, discrimination and harassment. Plaintiffs' Carter & Bailey were egregiously retaliated against

by "Defendant" First Transit (Roseville) Management, "Defendant" First Transit "District Safety Manager"

Don Johnson and "Defendant" First Transit "General Manager" Tim Ogren at on September 19, 2016 at

"Defendant" First Transit, 1717 County Road CW, Roseville MN. At this time Plaintiffs' were engaged in

protected activity in a meeting with "Defendants" Tim Ogren, Don Johnson, Troy Gustafson and Al Halas

when "Defendant" Don Johnson stated: "these gentlemen have chosen to escalate this to a corporate level

(Mingo & Graves) which leaves me no choice but to go to our corporate level and see what my advice is

from people well above me, so that's how we're going to leave it, were going to place these gentlemen on

administrative leave pending an investigation". "Defendants" First Student First Group egregiously

discriminated against Plaintiffs' by violating section 2.04 of First Transit's Employee Handbook by not taking

28

any measures to protect Plaintiffs' from any further acts of intimidation, retaliation and harassment. Plaintiffs' were retaliated against by "Defendants" First Group, First Student, First Student "Regional HR Manager" Tom Graves and First Student "Sr. Director of Field Labor Relation & HR" Kim Mingo because the discrimination led to Plaintiffs' termination and their pay & hours being reduced.

39. On Monday September 19, 2016 at 7:30 am  Plaintiffs' Carter & Bailey engaged in Protected Activity Together at "Defendant" First Transit, 1717 County Road CW, Roseville MN to meet with "Defendant" First Transit Management to discuss what had taken place on Friday, September 16, 2016. In attendance were, "Defendants" First Transit "General Manager" Tim Ogren, "District Safety Manager" Don Johnson, "Safety Manager" Al Halas along with "Union Steward" Greg Tvedt, Plaintiffs' Carter & Bailey and "Defendant" Troy Gustafson via phone. "Defendant" First Transit "District Safety Manager" Don Johnson started the meeting off by stating:" We are here to talk about the events from last Friday morning". When Plaintiffs' Carter & Bailey attempted to discuss the events from Friday September 16, 2016, "Defendant" Tim Ogren stated: "Our intent is to get statements from you not to go down this road and rehash what happened Friday. I'm not going to revisit what happened on Friday in this room right now". On September 16, 2016 "Defendant" First Transit "Demand Supervisor" Sue Westerwelle contacted Plaintiffs' and informed them of a 7:30 am meeting on September 19, 2016 to discuss the events that occurred the morning of September 16, 2016. Westerwelle also told Plaintiffs' to wear their uniforms. So coming into this meeting, Plaintiffs' Carter & Bailey was under the impression that they would be able to discuss the events that took place the morning of September 16, 2016 and then perform assigned work. While in the meeting with "Defendants" Tim Ogren, Don Johnson, Troy Gustafson and Al Halas, "Defendant" Don Johnson stated: "these gentlemen have chosen to escalate this to a corporate level which leaves me no choice but to go to our corporate level and see what my advice is from people well above me, so that's how we're going to leave it, were going to place these gentlemen on administrative leave pending an investigation". "Defendants" Teamsters Local 120 and Troy Gustafson discriminated by failing to inform "Defendants" First Transit, First Transit "Safety

Manager" Al Halas, Don Johnson,and Tim Ogren  that there was nothing in the CBA that states employees shall be put on administrative leave for getting corporate involved. On September 19, 2016 while knowing that "Defendant" Tim Ogren signed a document on September 16, 2016 stating that there was no misconduct, "Defendants" First Transit, First Transit "Safety Manager" Al Halas, Tim Ogren, Don Johnson, Teamsters Local 120 and Troy Gustafson egregiously discriminated against Plaintiffs' Carter & Bailey by violating article 6 in the Collected Bargaining Agreement (CBA) and section 2 of "Defendant" First Transit's Employee Handbook."Defendants" First Transit, First Transit "Safety Manager" Al Halas, Tim Ogren, Don Johnson, Teamsters Local 120 and Troy Gustafson retaliated by placing Plaintiffs' on administrative leave and reducing their pay & hours.

40. On Monday September 19, 2016 "Plaintiffs" Carter & Bailey engaged in Protected Activity at "Defendant" Teamsters Local 120 Union Hall, 9422 Ulysses St NE, Blaine, MN. 55434. In attendance were, "Defendant" Teamsters Local 120 ", Teamsters Local 120 "Secretary" along with Chris Stampley and Plaintiffs' Carter & Bailey. Plaintiffs' filed Article 6 (Non Discrimination) grievances against "Defendant" First Transit. Article 6 in the CBA states: "Neither the company nor the Union shall discriminate against any employee in any matter". Plaintiffs also filed Article 14 (Hours Of Work) grievances against "Defendant" First Transit. Article 14 in the CBA states: "If an employee reports to work for his/her regular assigned route (excluding meetings, safety meetings, training or other special events) and no work is available, the employee shall receive a minimum two (2) hours reporting pay. This minimum reporting pay shall not apply if the employee is tardy, suspended from work for disciplinary reasons, or requests to not work for all or a portion of his/her shift". On September 16, 2016 "Defendant"  "General Manager" Tim Ogren violated Article 14 of the CBA when he took Plaintiffs' Carter & Bailey's 10 hour shifts, lied & claimed that there was no work available and paid Plaintiffs' 2 hours according to Article 14.10 of the CBA. "Defendants" Teamsters Local 120 & Troy Gustafson egregiously discriminated against Plaintiffs' Carter & Bailey by not investigating Plaintiffs' Article 6 and Article 14 grievances (16-15023, 16-15024, 16-15020, 16-15021), knowing that those grievances were in connection with the events that had taken place on September 16, 2016.

41. On September 19, 2016 "Defendants" First Transit "General Manager" Tim Ogren, harassed, discriminated and retaliated against Plaintiffs' Carter & Bailey by writing and submitting false statements claiming misconduct to himself to terminate Plaintiffs' Carter & Bailey for the events that occurred on September 16, 2016. Because "Defendant" Tim Ogren retaliated & discriminated when he wrote and submitted a false statement about the events that occurred on September 16, 2016, Plaintiffs' Carter & Bailey's hours & pay were reduced.

42. On September 20, 2016 "Plaintiffs" Carter & Bailey engaged in Protected Activity at the Metropolitan Council, 390 Robert St N, St Paul, MN. In attendance were, "Plaintiffs" Carter & Bailey along with Chris Stampley and "Defendant" Metropolitan Council "Principal Contract Administrator" Laron Weddington of the Procurement Department. When Plaintiffs' made "Defendant" Metropolitan Council "Principal Contract Administrator" Laron Weddington aware that the contract between "Defendants" Metropolitan Council & First Transit was causing safety hazards for "Defendant" Metropolitan Council "Metro Mobility" clients and "Defendant" First Transit "Metro Mobility' drivers, Laron Weddington stated: "I thought you guys were down here to talk about money". Then, "Defendant" Metropolitan Council "Principal Contract Administrator" Laron Weddington Discouraged, Intimidated and Threatened Plaintiffs' by stating: "there may be consequences for you coming forth with this information, I'm not the person that can handle this, I will forward your information to Andrew Kruger". "Defendant" Metropolitan Council "Principal Contract Administrator" Laron Weddington retaliated against Plaintiffs' by not investigating and not forwarding our information to Andrew Kruger. Laron Weddington discriminated against Plaintiffs' by not directing Plaintiffs' Carter & Bailey to "Defendant" Metropolitan Council's complaint procedure.

43. On September 21, 2016 "Defendant" First Transit "Dispatch Supervisor" Dean Vinge harassed, discriminated and retaliated against Plaintiffs' Carter & Bailey by writing and submitting false statements claiming misconduct about the events that occurred on September 16, 2016. Because "Defendants" wrote

and submitted false statements about the events that occurred on September 16, 2016, Plaintiffs' Carter & Bailey's hours & pay were reduced.

44. On September 26, 2016 "Defendants" First Transit and Tim Ogren terminated Plaintiffs' Carter & Bailey for violating Article 16.2 (g) (Refusal to perform assigned work) on September 16, 2016. On September 16, 2016 "Defendant" Tim Ogren signed Plaintiffs' Carter & Bailey's Revenue Time Card stating that plaintiffs received the minimum 2 hours of pay according to the CBA (Article 14.10). According to article 14 in the CBA, section 14.10 states: "If an employee reports to work for his/her regular assigned route (excluding meetings, safety meetings, training or other special events) and no work is available, the employee shall receive a minimum two (2) hours reporting pay. This minimum reporting pay shall not apply if the employee is tardy, suspended from work for disciplinary reasons, or requests to not work for all or a portion of his/her shift". "Defendants" Teamsters Local 120 and Troy Gustafson retaliated & discriminated against Plaintiffs' Carter & Bailey by failing to hold "Defendant" First Transit accountable for complying with Article 14.10 in the CBA and withholding evidence (Revenue Time Card) throughout Plaintiffs' termination grievance process (step1, step 2, step 3, panel hearing and arbitration).

45. On September 26, 2016 "Defendants" First Transit, Tim Ogren retaliated against Plaintiffs' Carter & Bailey by mailing Plaintiffs' letters stating:"We have concluded our investigation of the events that occurred on September 16, 2016, in which you refused to go on your route. I have found you to be in violation of Article 16.2 (g) of the union bargaining agreement. Your employment is terminated effective immediately". The letter was signed by "Defendant" Tim Ogren and John Matthews, Don Johnson, Tom Graves and Teamsters Local 120 was Cc. Plaintiffs' hours & pay were reduced. "Defendant" First Transit retaliated and discriminated against Plaintiffs' Carter & Bailey by allowing "Defendant" Tim Ogren (A primary subject in Plaintiffs complaints of discrimination, retaliation and harassment to "Defendant" First Transit's Corporate HR on September 16, 2016 and September 18, 2016) to conduct a bias unpaid Administrative Leave Investigation that led to Plaintiff's being terminated. The unpaid Administrative Leave Investigation was bias because "Defendant" Tim Ogren didn't include Plaintiffs' Carter & Bailey in his investigation, investigated his own false written statement claiming misconduct by Plaintiffs', coerced other employees to write and

submit false statements claiming misconduct by Plaintiffs' and discharged Plaintiffs' knowing willfully that he paid Plaintiffs' Carter & Bailey 2 hours of pay according to the CBA on September 16, 2016 and Article 14 section 14:10 states: The minimum reporting pay shall not apply if the employee is tardy, suspended from work for disciplinary reasons, or requests to not work for all or a portion of his/her shift. The (CBA) makes it clear that you can't pay 2 hours of pay for misconduct.

46. "Defendant" First Transit's 2011 Employee Handbook section 2.04 reporting procedure states: It is the obligation of all employees to cooperate fully in the investigation process, in addition, disciplinary action will be taken against any employee(s) who attempt to discourage or prevent any harassment victim from using the company's complaint procedure to report harassing conduct. "Defendant" First Student "Regional HR Manager" Tom Graves discriminated against Plaintiffs' Carter & Bailey by violating section 2.04 of First Transit's Employee Handbook when he prevented Plaintiffs' Carter & Bailey from using the company's (First Transit) complaint procedure to report harassing conduct by refusing to meet with Plaintiffs to get their full formal complaints of harassment, discrimination and retaliation. On September 16, 2016 "Defendant" First Student "Sr. Director of Field Labor Relation & HR" Kim Mingo assured Plaintiff Bailey that "Defendant" First Student "Regional HR Manager" Tom Graves would come to Minnesota to meet with and get a full formal complaint from Plaintiff Bailey. THIS NEVER HAPPENED. Instead of meeting with Plaintiffs' Carter & Bailey to finish taking their full complaints to complete the complaint procedure, "Defendant" First Student "Regional HR Manager" Tom Graves informed "Defendant" First Transit Management (the harassers) between September 16, 2016 & September 19, 2016 of Plaintiffs' complaints and met with the harassers ("Defendants" First Transit Management, Teamsters Local 120 and Troy Gustafson) during the week of October 2, 2016. This conduct denied plaintiffs' to complete the complaint procedure.

47. On October 7, 2016 Plaintiffs' Carter & Bailey engaged in Protected Activity for Plaintiffs' Step 1 Termination Grievance at "Defendant" First Transit, 1717 County Road CW, Roseville MN "Defendants" First Transit, Tim Ogren, Teamsters Local 120 and Troy Gustafson retaliated by failing to rehire, reducing

Plaintiff's pay & hours and discriminating against Plaintiffs' Carter & Bailey by not allowing Plaintiffs' to investigate & discuss the events that revolved around Plaintiffs' Step 1 Termination grievances. When on September 14, 2016 at the three Termination Grievance Investigations, all grievants were able to investigate & discuss the events that revolved around their Step 1 Termination Grievances. "Defendants" First Transit, Tim Ogren Teamsters Local 120 and Troy Gustafson violated First Transit's Employee Handbook and the CBA's policy, procedure & process.

48. On October 12, 2016 "Defendants" First Transit, Tim Ogren, Don Johnson, Teamsters Local 120 and Troy Gustafson intentionally continued retaliating and reducing Plaintiffs' pay & hours by failing to rehire and comply with MN statute 268.095. When The State Of Minnesota conducted their own investigation for Plaintiffs' Carter & Bailey termination, it concluded "Under Minnesota Statute section 268.095, an applicant is not eligible for unemployment benefits if the applicant is discharged for employment misconduct. The law defines employment misconduct as intentional or negligent conduct that is a serious violation of standards of behavior the employer has the right to reasonably expect. A single incident with no significant negative effect on the employment is not employment misconduct. The employer discharged the applicants during the week beginning 09/25/2016. The applicant's conduct was not intentional or negligent, and therefore was not employment misconduct." "Defendant" First Transit, had until Tuesday, November 1, 2016 to file an appeal to allege any just cause for misconduct, instead of filing an appeal  "Defendants" First Transit, Tim Ogren, Don Johnson, Teamsters Local 120 and Troy Gustafson became complicit with retaliating against and ultimately violated Plaintiffs' Carter & Bailey UNION RIGHTS by discharging Plaintiffs' AT WILL without any misconduct. On September 16, 2016 "Defendant" Tim Ogren signed off on Plaintiffs' timesheet with 2 hours of pay according to the CBA which is evident that there was no misconduct by Plaintiffs'. On October 12, 2016 The State Of Minnesota Department Of Employment and Economic Development made "Defendants" aware that there was no misconduct by Plaintiffs' Carter or Bailey which makes Plaintiffs' wonder why "Defendants" continued with the termination process and leads Plaintiffs' to believe that "Defendants" egregious behavior was due to Plaintiffs' Whistle Blowing efforts.

49. On October 19, 2016 Plaintiffs' Carter & Bailey engaged in Protected Activity for Plaintiffs' Step 2 Termination Grievance at "Defendant" First Transit, 3400 Spring Street N.E, Minneapolis MN. In attendance

were, "Defendants" Tim Ogren, Troy Gustafson, First Transit Region Vice President John Matthews along with Plaintiffs' Carter & Bailey. "Defendants" First Transit, Tim Ogren, Teamsters Local 120 and Troy Gustafson discriminated by not allowing Plaintiffs' to investigate & discuss the events that revolved around Plaintiffs' termination grievances. When on September 14, 2016 at the three Termination Grievance Investigations, all grievants and plaintiffs were able to investigate & discuss the events that revolved around their termination grievances. "Defendants" First Transit, Tim Ogren, Teamsters Local 120 and Troy Gustafson retaliated by intimidating and discouraging Plaintiffs' Carter & Bailey from exercising their Weingarten Rights to engage in Protected Activity together. "Defendants" failed to rehire and continued to reduce Plaintiff's pay & hours.

50. "Defendant" First Transit's 2011 Employee Handbook section 2.04 reporting procedure states:Measures will be undertaken to protect those who use the complaint procedure from any further acts of harassment, coercion or intimidation, and from retaliation due to their reporting an incident of these types or participating in an investigation or proceeding concerning the alleged harassment. On October 26, 2016 Plaintiffs' Carter & Bailey engaged in Protected Activity for Step 3 of Plaintiffs' Termination Grievance Investigation at "Defendant" Teamsters Local 120, 9422 Ulysses St NE, Blaine, MN. In attendance were "Defendants" Teamsters Local 120 "Union Business Agent (BA)" Troy Gustafson, Teamsters Local 120 "President " Tom Erickson and First Student "Regional HR Manager" Tom Graves (via phone). During the investigation "Defendant" First Student "Regional HR Manager" Tom Graves was asked by "Defendant" Teamsters Local 120 "Union BA" Troy Gustafson "how did Plaintiffs' Carter & Bailey refuse to do their jobs"? "Defendant" First Student "Regional HR Manager" Tom Graves replied "by the statements of others". "Defendant" Teamsters Local 120 discriminated against Plaintiffs by failing to inform "Defendant" First Student "Regional HR Manager" Tom Graves that there is nothing in the CBA nor First Transit's Employee Handbook that states that the statements of others is a violation nor is it grounds for termination. "Defendants" First Student " Regional HR Manager" Tom Graves, First Transit and First Group discriminated against Plaintiffs' Carter & Bailey by violating section 2.04 by coercing "Defendants" First Transit "Dispatch Supervisor" Dean Vinge, First Transit "Payroll Clerk" Patricia Vold, First Transit "Safety Administrative Assistant" Yolanda Sweat, First Transit "Payroll Manager" Pa Yang and First Transit "Dispatcher" Shari Schultz to write statements that were ultimately used to retaliate, terminate and defame

Plaintiffs' Carter & Bailey's character. "Defendant" First Group, First Student and First Transit retaliated by failing to rehire Plaintiffs'.

51. On November 15, 2016 Plaintiffs' Carter & Bailey engaged in Protected Activity together at The National Labor Board (NLRB) located at 212 3rd Ave S, Minneapolis MN and filed Unlawful Labor Practices (ULP) against "Defendants" First Transit and Teamsters Local 120. The ULP filed against First Transit was for discrimination and retaliation against Plaintiffs' for discharging Plaintiffs' to discourage Protected Activity and The ULP against Teamsters Local 120 was for interference with Plaintiffs' rights to seek decertification. Consequently, Plaintiffs' Carter & Bailey were granted Arbitration because of the ULP that was filed by Plaintiffs' against "Defendant" First Transit. This changed Plaintiffs' Termination status to Terminated pending Arbitration. Because Plaintiffs' filed ULP's on this day, "Defendants" First Transit and Teamsters Local 120 continued retaliating and discriminating against Plaintiffs' Carter & Bailey by failing to rehire and reducing Plaintiffs' pay & hours for the remainder of Plaintiffs' Termination Grievance Process (Panel Hearing and Arbitration). The Panel Hearing was November 22, 2016 and Plaintiffs' received the Arbitrator's decision September 2017.

52. On November 22, 2016 Plaintiffs' Carter & Bailey engaged in Protected Activity for Plaintiffs' final 4th stepTermination Panel Hearing Grievance at "Defendant" Teamsters Local 120, 9422 Ulysses St NE, Blaine, MN. In attendance were "Defendants" First Transit "District Safety Manager" Don Johnson, First Transit "Safety Manager" Al Halas, Teamsters Local 120 "Union Business Agent" Troy Gustafson, Teamsters Local 120 "Panel Chairman" Louie Miller along with "Union Steward" Greg Tvedt and Plaintiffs' Carter & Bailey. "Defendants" First Transit, Don Johnson, Teamsters Local 120 and Troy Gustafson retaliated & discriminated by reducing Plaintiffs hours & pay and allowing "Defendant" Don Johnson "A primary subject in Plaintiffs complaints of retaliaiton, discrimination and harassment to Corporate" to conduct a bias (CBA) Panel Hearing Investigation and vote against Plaintiffs' being reinstated back to work.

53. On February 22, 2017 Plaintiffs' Carter & Bailey requested missing monies from their last paycheck at "Defendant" First Transit, 1717 County Road CW, Roseville MN. "Defendants" First Transit, First Group, Tim Ogren and Don Johnson intentionally discriminated & retaliated against Plaintiffs' Carter and Bailey by failing to comply with Sec 181.74 MN Statute "FAILURE OF EMPLOYER TO PAY BENEFITS OR WAGE SUPPLEMENTS, PENALTY. Subdivision 1.Gross misdemeanor. Any employer required under the provisions of an agreement to which the employer is a party to pay or provide benefits or wage supplements to employees or to a third party or fund for the benefit of employees, and who refuses to pay the amount or amounts necessary to provide such benefits or furnish such supplements within 30 days after such payments are required to be made under law or under agreement, is guilty of a gross misdemeanor. If such employer is a corporation, any officer who intentionally violates the provisions of this section shall be guilty of a gross misdemeanor. The institution of bankruptcy proceedings according to law shall be a defense to any criminal action under this section. Subd. 2.Benefits or wage supplements defined. As used in this section, the term "benefits or wage supplements" includes, but is not limited to, reimbursement for expenses; health, welfare, and retirement benefits; and vacation, separation or holiday pay." On February 22, 2017 Plaintiffs' Carter & Bailey submitted a second request via email for the retaliation to cease and informed "Defendants" First Transit, First Group, Tim Ogren and Don Johnson of missing monies (Accrued benefits for the year 2016) from Plaintiffs' last paycheck. According to section 5.05 in the First Transit Policy Handbook "An employee who is terminated from the company, voluntary or involuntary will be paid the prorated amount of vacation time allocated but not used based on the last day of employment." Also According to Article 21.2 in the Working Agreement between "Defendants" First Transit & Teamsters Local 120 "Vacation entitlement under this provision shall be calculated and accrued on a prorated basis. Because Plaintiff Carter worked over 8 years, he is entitled to 120 vacation hours with pay, 40 PTO hours with pay and 8 Mental Health Day hours with pay. Because Plaintiff Bailey worked over 3 years, he is entitled to 80 vacation hours with pay, 40 PTO hours with pay and 8 Mental Health Day hours with pay. Because there was no response from "Defendants", Plaintiffs submitted a third request to "Defendants" First Transit, First Group, Tim Ogren and Don Johnson via email for the retaliation to cease and for the monies owed to them on February 27, 2017. On March 2, 2017 Plaintiffs' Carter & Bailey received a response from "Defendant" First Group "Vice President & General Counsel" Michael Petrucci stating: "Dear Mr. Bailey and Mr. Carter, in my capacity as General Counsel to First Group America Inc,

37

First Transit's parent company, your February 22, 2017 and February 27, 2017 emails to First Group
Chairman Wolfhart Hauser and First Group CEO Tim O'toole have been referred to me for review and
response. I have discussed the various allegations with First Transit VP of Human Resources. As you are
aware, in connection with the allegations you each have pending claims against First Transit with the
EEOC (discrimination), the NLRB (unfair labor practices), as well as union grievances with pending
arbitrations. In addition, a Minnesota wage and hour putative class action case is pending against First
Transit which encompasses various wage claims you both have alleged. As the aforementioned claims are
in formal legal proceedings, First Transit will respond and address the claims within the confines of those
legal proceedings. No communication from First Group in the connection with the claims will take place
outside of the aforementioned proceedings. Given the above referenced active litigation, please be advised
that any further communication to Mr. Hauser and / or Mr. O'toole will be referred directly to me. Thank you.
Sincerely, Michael Petrucci" Sec 181.74 MN Statute states: Any employer required under the provisions of
an agreement to which the employer is a party to pay or provide benefits or wage supplements to
employees or to a third party or fund for the benefit of employees, and who refuses to pay the amount or
amounts necessary to provide such benefits or furnish such supplements within 30 days after such
payments are required to be made under law or under agreement, is guilty of a gross misdemeanor. If such
an employer is a corporation, any officer who intentionally violates the provisions of this section shall be
guilty of a gross misdemeanor. "Defendants" First Transit, First Group, Tim Ogren and Don Johnson
refused to pay Plaintiffs' Carter & Bailey the accrued Vacation, PTO and Mental Health hours within the 30
days mentioned in Sec 181.74 MN Statute.

54. On February 28, 2017 Plaintiffs' Carter & Bailey engaged in Protected Activity via email titled Drivers
Uncover Systemic Problem At Metro Mobility that was sent to "Defendant" Metropolitan Council
"Management" andy.streasick@metc.state.mn.us,
dana.rude@metc.state.mn.us, leslie.kandaras@metc.state.mn.us,
mark.filipi@metc.state.mn.us, andrew.krueger@metc.state.mn.us,
judd.schetnan@metc.state.mn.us, paul.johnson@metc.state.mn.us,
jennifer.munt@metc.state.mn.us, claudia.fuentes@metc.state.mn.us,

carol.lafleur@metc.state.mn.us, rep.tony.albright@house.mn,

laron.weddington@metc.state.mn.us at 390 Robert St N, St Paul, MN. In the email Plaintiffs' stated: "Due to

our (Driver 1 & 2) moral obligation, we have no choice but to continue exercising every effort to eliminate

the systemic problem that continues to put drivers and clients safety at risk. It is imperative that we have an

opportunity to share our information with the Metropolitan Council Metro Mobility Management and Tony

Albright (Chair Of Metropolitan Council Legislative Oversight Panel) for examination with expectations of

bringing resolution to a natural obligation of all binding parties. We have given you an adequate amount of

time to contact us with meaningful consideration. With that being said, with the lack of consideration and

response leaves us no choice but to grant you 24 hours to respond to this email with the intent of fulfilling

your obligations to our moral obligations. Otherwise we will continue with our WHISTLEBLOWING AND

PROTECTED CONCERTED ACTIVITY RIGHTS"  Plaintiffs' made "Defendant" Metropolitan Council

"Management" aware of the safety hazards that Plaintiffs' had uncovered with the "Defendant" Metropolitan

Council "Metro Mobility" program. In this email, "Defendant" Metropolitan Council "Management" Andy

Streasick & Laron Weddington was made aware for the second time by Plaintiffs' of the safety hazards at

"Defendant" First Transit and that the Metropolitan Council was liable. Andy Streasick & Laron Weddington

continued to retaliate against Plaintiffs' Carter & Bailey by not investigating and continued to discriminate

against Plaintiffs' by not directing Plaintiffs' to "Defendant" Metropolitan Council complaint procedure.

55. On March 1, 2017 Plaintiffs' Carter & Bailey engaged in Protected Activity at "Defendant" Metropolitan

Council, 390 Robert St N, St Paul MN and investigated misappropriation of funds. Plaintiffs' made

"Defendant" Metropolitan Council "Project Administrators Dana Rude & Greg Schuck aware that when

"Defendant" Metropolitan Council awarded "Defendant" First Transit more zones to cover, it caused driver &

client injuries excessive wheelchair tips, poor driver retention, lunches & breaks violations, and contract

violations. Plaintiffs' also made Greg Schuck aware that "Defendant" First Transit was putting bonuses and

revenue hours over safety and "Defendant" First Transit was liable. "Defendant" Metropolitan Council

discriminated against Plaintiffs' Carter & Bailey by not investigating nor directing Plaintiffs to "Defendant"

Metropolitan Council's complaint procedure and continued to reduce Plaintiffs' pay & hours.

56. On March 6, 2017 Plaintiffs' Carter & Bailey engaged in Protected Activity with the Minnesota Department of Labor (OSHA) Doug Poeschl, at 443 Lafayette Road N, St Paul MN and submitted complaints that high work demands were leading to injuries in the work environment. Plaintiffs' OSHA complaints # 209555382, 209555267, 209555382 and 209555267 were sent to "Defendants" First Transit "Safety Manager" Al Halas and First Transit "Regional Vice President" John Matthews. Because Plaintiffs' filed complaints with OSHA, "Defendants" First Transit continued to retaliate against Plaintiffs' by reducing Plaintiffs' pay & hours for the remainder of Plaintiffs' Termination Grievance Process (Arbitration).

57. On March 9, 2017 Plaintiffs' Carter & Bailey filed complaints with the United States Department Of Labor (OSHA),1310 W. Clairemont Avenue Eau Claire, WI 54701 and submitted complaints # Carter 5-4760-17-017 / Bailey 5-4760-17-016 of retaliation under the NTSSA Act against "Defendants" First Transit and Metropolitan Council. "Defendants" discriminated against Plaintiffs' by violating the NTSSA act and retaliated by terminating Plaintiffs' and reducing their pay & hours

58. On June 27, 2017 (Plaintiff' Carter's Arbitration) engaged in Protected Activity at 1300 Godward St suite 3950, Minneapolis MN, In attendance were "Defendants" First Transit "Region Vice President John Matthews, First Transit "Safety Administrative Assistant" Yolanda Sweat First Transit "Dispatcher" Shari Schultz, "Teamsters Local 120 "Union Business Agent" Troy Gustafson along with First Transit "Safety Administrative Assistant" Yolanda Sweat, First Transit "Payroll Manager" Pa Yang, Teamsters Local 120 "Union Business Agent" Joe Battaglia, "Union Steward" Greg Tvedt and Plaintiffs' Carter & Bailey. Defendants" First Transit, Teamsters Local 120, Tim Ogren, Dean Vinge, Patricia Vold and Troy Gustafson continued retaliating, discriminating, reducing Plaintiffs pay & hours and failed to rehire by submitting conflicting false statements, conducting a bias investigation, withholding evidence and denying Plaintiff Carter of the same procedure as other Union members.

59. On July 13, 2017 (Plaintiff' Bailey's Arbitration) engaged in Protected Activity at 1300 Godward St suite 3950, Minneapolis MN, In attendance were "Defendants" First Transit "Region Vice President John Matthews, First Transit "Safety Administrative Assistant" Yolanda Sweat First Transit "Dispatcher" Shari Schultz, First Transit "Safety Manager" Al Halas, Teamsters Local 120 "Union Business Agent" Troy

Gustafson, along with First Transit "Safety Administrative Assistant" Yolanda Sweat, First Transit "Payroll Manager" Pa Yang, Teamsters Local 120 "Union Business Agent" Joe Battaglia, "Union Steward" Greg Tvedt and Plaintiffs' Carter & Bailey. "Defendants" First Transit, Teamsters Local 120, Tim Ogren, Dean Vinge, Patricia Vold and Troy Gustafson along with First Transit "Safety Manager" Al Halas continued retaliating, discriminating, reducing Plaintiffs pay & hours and failed to rehire by submitting conflicting false statements, conducting a bias investigation withholding evidence and denying Plaintiff Bailey of the same procedure as other Union members.

60. Because Plaintiffs Carter & Bailey were represented by "Defendant" Teamsters Local 120 (The Subcontractor) who had a binding contract with "Defendant" First Transit (The Contractor that hired "Plaintiffs" Carter & Bailey) who had a binding contract with "Defendant" Metropolitan Council (The Agency), "Plaintiffs" Carter & Bailey were covered by the NTSSA Act because Plaintiffs' were employee's of a public transportation Agency. When Plaintiffs' Carter & Bailey were engaged in Protected Activity with "Defendants" First Transit, First Transit "General Manager" Tim Ogren, First Transit "Dispatch Supervisor" Dean Vinge, First Transit "District Safety Manager" Don Johnson, Teamsters Local 120 and Teamsters Local 120 "Union Business Agent" Troy Gustafson, Plaintiffs' became covered by the NTSSA Act because Plaintiffs provided information to "Defendants" or caused information to be provided to "Defendants", assisted in a investigation by a federal regulatory agency (NLRB, OSHA) and assisted in investigations with Plaintiffs' employers about an alleged violation of federal laws, rules & regulations related to public transportation safety, fraud, abuse of federal grants and other public funds intended for public transportation safety, filed a complaint and caused a proceeding to be brought about rules & regulations and reported hazardous safety conditions. Because Plaintiffs' Carter & Bailey engaged in Protected Activity, "Defendants" First Transit, First Transit "General Manager" Tim Ogren, First Group, First Student, First Transit "District Safety Manager" Don Johnson, Teamsters Local 120 and Teamsters Local 120 "Union Business Agent" Troy Gustafson, retaliated against Plaintiffs' by intimidating, threatening, denying overtime & promotions, disciplining, firing, failing to rehire and reducing Plaintiffs' pay & hours. All "Defendants" First Transit, First Transit "General Manager" Tim Ogren, First Group,First Student, First Transit "District Safety Manager" Don Johnson, Metropolitan Council, Teamsters Local 120 and Teamsters Local 120 "Business

Agent" Troy Gustafson perceived that Plaintiffs' Carter & Bailey were engaged in Protected Activity and proceeded to discriminate against Plaintiffs' by violating

MINNESOTA STATUTES 2016 177.253 MANDATORY WORK BREAKS. Subdivision 1. Rest breaks. An employer must allow each employee adequate time from work within each four consecutive hours of work to utilize the nearest convenient restroom. Subd. 2. Collective bargaining agreement. Nothing in this section prohibits employers and employees from establishing rest breaks different from those provided in this section pursuant to a collective bargaining agreement. And Violating MINNESOTA STATUTES 2016 177.254 MANDATORY MEAL BREAK states An employer must permit each employee who is working for eight or more consecutive hours sufficient time to eat a meal.

 Subd. 2. Payment not required. Nothing in this section requires the employer to pay the employee during the meal break. Subd. 3. Collective bargaining agreement. Nothing in this section prohibits employers and employees from establishing meal periods different from those provided in this section pursuant to a collective bargaining agreement. History: 1989 c 167 s 1 Copyright © 2016 by

the Revisor of Statutes, State of Minnesota. All Rights Reserved. 1

 MINNESOTA STATUTES 2016 177.254,

Violating Article 14 in the CBA, section 14.10 which states: "The minimum reporting pay shall not apply if the employee is tardy, suspended from work for disciplinary reasons, or requests to not work for all or a portion of his/her shift," Violating Article 6 in the CBA Non-discrimination clause in The Collected Bargaining Agreement (CBA) between "Defendants" First Transit & Teamsters Union Local 120 which states: Neither the company nor the Union shall discriminate against any employee in any matter.", violating the General policy Under Harassment section 2.02 page 18 in "Defendants" First Transit Policy Handbook which states: "VERBAL CONDUCT such as epithets, derogatory comments, slurs or unwanted comments and jokes;

 THREATS AND DEMANDS to submit

to certain non-work-related conduct or perform certain non-work-related actions in order to keep or get a job, to avoid some other loss, or as a condition of some job benefits, security or promotion. FIRST TRANSIT PROHIBITS SUCH CONDUCT, EVEN IF THE CONDUCT IS NOT SUFFICIENTLY SEVERE OR PERVASIVE TO CONSTITUTE UNLAWFUL HARASSMENT," Violating FMCSA Title 49 Transportation §392.3 ill or fatigued operator which states: "No driver shall operate a commercial motor vehicle, and a

42

motor carrier shall not require or permit a driver to operate a commercial motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate the commercial motor vehicle. However, in a case of grave emergency where the hazard to occupants of the commercial motor vehicle or other users of the highway would be increased by compliance with this section, the driver may continue to operate the commercial motor vehicle to the nearest place at which that hazard is removed," Violating the National Transit Systems Security Act  6 U.S.C. § 1142, (NTSSA) which states: "threats, retaliation, intimidation and discrimination is prohibited," Violating 42 U.S. Code § 1981 which states: "Equal rights under the law All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts," Violating Sec. 181.932 MN Statutes which states "An employer shall not discharge, discipline, threaten, otherwise discriminate against, or penalize an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of an employee, in good faith, reports a violation, suspected violation, or planned violation of any federal or state law or common law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official," Violating Sec. 181.74 MN Statutes which states Any employer required under the provisions of an agreement to which the employer is a party to pay or provide benefits or wage supplements to employees or to a third party or fund for the benefit of employees, and who refuses to pay the amount or amounts necessary to provide such benefits or furnish such supplements within 30 days after such payments are required to be made under law or under agreement," Violating 31 U.S. Code § 3729. False claims act states any person who knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461note; Public Law 104–410 [1]), plus 3 times the amount of damages which the Government sustains because of the act of that person." Violating 28 C.F.R. § 42.107(e) *Intimidatory or retaliatory acts prohibited.* No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by section 601 of the Act or this subpart, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subpart. The identity of complainants shall be kept

confidential except to the extent necessary to carry out the purpose of this subpart, including the conduct of any investigation, hearing, or judicial proceeding arising thereunder." and Violating TITLE VI OF THE CIVIL RIGHTS ACT OF 1964 §2000d SEC. 601 which states: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Because "Defendants" egregiously committed these acts and terminated Plaintiffs', Plaintiffs' Carter & Bailey suffered mental anguish, anxiety, lost sleep, lost seniority, lost health insurance, lost vacation pay, lost holiday pay, lost PTO pay, lost overtime pay, lost annual pay raises, lost interval pay bonuses, lost mental health day pay, lost job, credit was damaged, relationships were damaged, character was defamed and suffered a general feeling of worthlessness as a result of termination. Plaintiffs' are seeking compensatory damages, punitive damages, front pay with interest, back pay with interest and other damages with interest. Interest shall be computed by compounding daily the IRS interest rate for the underpayment of taxes. See 26 U.S.C. §6621 (the Federal short—term rate plus three percentage points).

61. "Defendant" Metropolitan Council failed to comply with section 601 in the Federal Transit Authority (FTA) guidelines which states: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. Because "Defendant" Metropolitan Council monitored activity on Metro Mobility vehicles daily using cameras & trapeze software along with incident, accident and driver termination documents provided by "Defendant" First Transit (Contractor) along with Plaintiffs' Carter & Bailey's systemic problem complaint and numerous grievance investigations, "Defendant" Metropolitan Council was aware that discrimination and retaliation was occurring at "Defendant" First Transit (Contractor) "Defendant" Metropolitan Council became complicit and failed to enforce & hold "Defendants" First Transit (Contractor) & Teamsters Local 120 (Sub Contractor) accountable to follow FTA guidelines. "Defendant" First Transit (Contractor) failed to comply with FTA guidelines by discriminating and retaliating against Plaintiffs' Carter & Bailey on multiple occasions. "Defendants" First Transit, Tim Ogren, Don Johnson, First Group and John Matthews failed to comply with First Transit's Policy Handbook when "Defendants" harassed, discriminated and retaliated against Plaintiffs' Carter & Bailey. "Defendants" Teamster Local 120 & Troy Gustafson failed to comply with FTA guidelines

44

when they became complicit with "Defendants" First Transit and First Transit Management with discriminating and retaliating against Plaintiffs' Carter & Bailey on multiple occasions. "Defendants" Teamsters Local 120 & Troy Gustafson also discriminated and retaliated against Plaintiffs' Carter & Bailey by failing to comply with Article 6 (Non Discrimination) in the Collected Bargaining Agreement (CBA). "Defendants" Metropolitan Council, First Transit, First Transit "General Manager" Tim Ogren, First Group, First Student, First Transit "District Safety Manager" Don Johnson, Teamsters Local 120 and Teamsters Local 120 "Union Business Agent" Troy Gustafson all had the authority to investigate, discover and terminate misconduct. Instead of thoroughly investigating the alleged misconduct that led to Plaintiffs' termination, all "Defendants" retaliated and discriminated against Plaintiffs by using policies, processes and procedures in an egregious discriminatory and retaliatory manner. All "Defendants" in the aforementioned interfered with Plaintiffs' rights & privileges secured by section 601 of TITLE VI OF THE CIVIL RIGHTS ACT OF 1964   42 U.S.C. § 2000D and failed & refused to comply with 28 CFR § 42.107 (e). By failing and not complying, "Defendants" violated the National Transit Systems Security Act (NTSSA), 6 U.S.C. § 1142. Plaintiffs' are entitled to the remedies specified in  6 U.S.C. § 1142.

**(d)** REMEDIES

**(1)** IN GENERAL

An employee prevailing in any action under subsection (c) shall be entitled to all relief necessary to make the employee whole.

**(2 )** DAMAGESRelief in an action under subsection (c) (including an action described in (c)(7)) [2] shall include—

**(A)** reinstatement with the same seniority status that the employee would have had, but for the discrimination;

**(B)** any backpay, with interest; and

**(C)** compensatory damages, including compensation for any special damages sustained as a result of the discrimination, including litigation costs, expert witness fees, and reasonable attorney fees.

**(3)** POSSIBLE RELIEF

Relief in any action under subsection (c) may include punitive damages in an amount not to exceed $250,000.

**Attach additional sheets of paper as necessary.**
**Check here if additional sheets of paper are attached: xtra**
**Please label the attached sheets of paper to as Additional Facts and continue to number the paragraphs consecutively**
REQUEST FOR RELIEF

State what you want the Court to do for you and the amount of monetary compensation, if any, you are seeking.

1. Back pay, all raises, vacations, holiday pay, sick pay and  overtime pay,

2. Medical and Dental benefits Reinstated and paid up to date

3. Compensatory Damages

4. Punitive Damages

5. Expungement of warnings, reprimands, and derogatory references (such as references to Plaintiffs Bailey & Carter termination) which may have been placed in the complainants personnel file as a result of the protected activity.

6. "Defendants' ' Metropolitan Council, First Transit and Teamsters Local 120 provide training to their Management regarding OSHA Whistleblower statute.

7. Reinstatement with 401k, pension and with no forced Union membership.

8. "Defendant" Metropolitan Council creates a position for "Plaintiffs" Bailey & Carter to be a paid liaison between First Transit and Metropolitan Council for Paratransit drivers that are being reprimanded or terminated for safety related incidents / accidents.

9. Implement Metropolitan Councils Complaint Procedure in First transit Employee policy Handbook and the Collected Bargaining Agreement (CBA) between Teamsters Local 120 and First Transit.

10. Implement FTA nondiscrimination clause in First transit Employee policy Handbook and Collected Bargaining Agreement (CBA) between Teamsters Local 120 and First Transit.

11. $9,272,000 ( Nine million- two hundred seventy two thousand dollars)

Date: 9/18/ 2020

Signature of Plaintiff _Mal Ct_____

Mailing Address _2600 21st Ave N_____

_Minneapolis MN 55411_____

_____

Telephone Number _612 280 - 1088_____

Date: 9/18//2020

Signature of Plaintiff _My Balg_____

Mailing Address _1418 130th AV_____

_New Richmond WI_____

_54017_

Telephone Number   _763-843-5957_

Note:  All plaintiffs named in the caption of the complaint must date and sign the complaint and provide his/her mailing address and telephone number.  Attach additional sheets of paper as necessary.