**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Jeffrey L. Bailey and Marlon E. Carter,

        Plaintiffs,

v.

First Transit Inc., Tim Ogren, Don Johnson, Troy Gustafson, Metropolitan Council, Teamsters Local 120, First Group America Inc., and First Student Inc.,

        Defendants.

Case No. 20-cv-1238 (DWF/TNL)

**REPORT AND RECOMMENDATION**

---

Jeffrey L. Bailey, 1418 130th Avenue, New Richmond, WI 54017; and Marlon E. Carter 2600 21st Avenue North, Minneapolis, MN 55411 (*pro se* Plaintiffs);

Brian Hentosz, Littler Mendelson, 625 Liberty Avenue, 26th Floor, Pittsburgh, PA 15222 and Holly M. Robbins, Littler Mendelson, 80 South Eighth Street, Suite 1300, Minneapolis, MN 55402 (for Defendants First Transit Inc., Tim Ogren, Don Johnson, Metropolitan Council, First Group America Inc., and First Student Inc.); and

Katrina E. Joseph, Teamsters Local No. 120, 9422 Ulysses Street Northeast, Suite 120, Blaine, MN 55434 (for Defendants Troy Gustafson and Teamsters Local 120).

---

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendants' Teamsters Local 120 & Troy D. Gustafson Motion to Dismiss Plaintiff's [sic] Second Amended Complaint (ECF No. 15), Motion to Dismiss Filed on Behalf of Defendants First Transit, Inc., First Group America Inc., First Student Inc., the Metropolitan Council, Don Johnson, and Tim Ogren (ECF No. 26), and Plaintiffs' motions to deny the motions to dismiss (ECF Nos. 33 & 38). These motions have been referred to the undersigned for a report and recommendation to the Honorable Donovan W. Frank,

United States District Judge for the District of Minnesota, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. (ECF No. 4.) Based on all the files, records, and proceedings herein, and for the reasons set forth below, the Court recommends that the Teamsters Local 120 and Troy D. Gustafson's motion be granted; that First Transit, Inc., First Group America Inc., First Student Inc., the Metropolitan Council, Don Johnson, and Tim Ogren's motion be granted in part and denied in part; and the motions to deny the motions to dismiss be denied as moot.

## I. BACKGROUND

### A. Prior Litigation

In October of 2019, Plaintiffs filed a Second Amended Complaint in a related case against Defendants Metropolitan Council ("Met Council"), First Transit, Inc. ("First Transit"), Tim Ogren ("Ogren"), Patricia Vold ("Vold"), Don Johnson ("Johnson"), Troy Gustafson ("Gustafson"), Teamsters Local 120 ("Local 120"), and Dean Vinge ("Vinge"), alleging that, while they were members of Local 120 and employees of First Transit, they were discriminated against and retaliated against after engaging in various protected activities. *See Bailey v. Metro. Council*, No. 19-cv-1024 (DWF/TNL), 2020 WL 3633132, at *1-2 (D. Minn. Feb. 19, 2020) [hereinafter *Bailey I*], *report and recommendation adopted*, 2020 WL 1934428 (D. Minn. Apr. 22, 2020) [hereinafter *Bailey II*]. Of particular note, this was not Plaintiffs' first attempt at seeking relief for their alleged grievances. *See Bailey I*, 2020 WL 3633132, at *2 (summarizing that Plaintiffs had previously filed a grievance through their union, filed an unfair labor practice charge against First Transit and Local 120, filed charges of discrimination with the Equal Employment Opportunity

Commission ("EEOC"), and filed charges with the Occupational Safety and Health Administration ("OSHA")).[1]

On February 19, 2020, the Court, after considering motions to dismiss, recommended dismissing Plaintiffs' claims under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, and Minnesota Statutes § 541.05 with prejudice; and dismissing Plaintiffs' claims under the National Transit Systems Security Act ("NTSSA"), 6 U.S.C. § 1142(a)(1) and (b)(1), Title VI of the Civil Rights Act ("Title VI"), 42 U.S.C. § 2000d, the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1)(B), 42 U.S.C. § 1981 ("Section 1981"), and Minnesota Statutes § 181.932 ("Minnesota Whistleblower Act") without prejudice. *Id.* at *8. The Court further recommended that Plaintiffs' motions to deny the motions to dismiss be denied. *Id.* On April 22, 2020, after considering Plaintiffs' objections and reviewing the record *de novo*, the district judge found that this Court's recommendations were "factually and legally correct," overruled Plaintiffs' objections, and adopted the recommendations made in *Bailey I*. *Bailey II*, 2020 WL 1934428, at *2. Plaintiffs' Title VII and Minnesota Statutes § 541.05 claims were dismissed with prejudice, and their claims under the NTSSA, Title VI, the FCA, Section 1981, and the Minnesota Whistleblower Act were dismissed without prejudice. *Id.*

**B. Present Litigation**

Plaintiffs filed a new Complaint against a similar group of Defendants raising similar allegations on May 22, 2020. (ECF No. 1.) Plaintiffs amended the Complaint on

---

[1] Certain Defendants have also filed exhibits outlining these proceedings. (*See* ECF No. 29-1.)

August 20, 2020 (ECF No. 5) and again on September 18, 2020 (ECF No. 10). The operative Second Amended Complaint names the same Defendants as in *Bailey I*, except that Vold and Vinge are not listed in this action, and Plaintiffs have added Defendants First Group America Inc. ("First Group") and First Student Inc. ("First Student") as parties. (*See* ECF No. 10.) Plaintiffs again allege that Defendants have violated the NTSSA, Title VI, the FCA, Section 1981 and the Minnesota Whistleblower Act. (*See id.*) Plaintiffs also allege that Defendants have violated two additional Minnesota Statutes: Minnesota Statutes §§ 181.74 and 268.095. (*See id.*)

### C. The Second Amended Complaint

The Second Amended Complaint includes 61 paragraphs containing allegations against Defendants. (*See id.*) The Court summarizes Plaintiff's Second Amended Complaint as follows:

Plaintiffs state that by filing this action they are exercising their rights under the NTSSA's kick-out provision."[2] (ECF No. 10 ¶ 6.) Plaintiffs allege that they are two African American males who were "Union Drivers" for the Met Council's "Metro Mobility ADA Program." (*Id.* ¶ 8.) They allege that they were hired by First Transit and that First Transit terminated each of their employment on September 26, 2016. (*Id.* ¶¶ 11, 44; *see*

---

[2] The NTSSA requires any person who believes they were discharged or otherwise discriminated against first file a complaint with the Secretary of Labor. *See* 6 U.S.C. § 1142(c)(1). Notwithstanding the administrative procedure for the filing and consideration of these complaints, the NTSSA allows a complainant to file a complaint in the appropriate federal court "if the Secretary of Labor has not issued a final decision within 210 days after the filing of the complaint and if the delay is not due to the bad faith of the employee." *Id.* at § 1142(c)(7). Plaintiffs filed complaints against First Transit and the Met Council pursuant to the NTSSA with the U.S. Department of Labor ("DOL") Occupational Safety and Health Administration ("OSHA") on March 3, 2017. (*See* Exs. 11-13 of Hentosz Decl., ECF No. 29-1.) After an investigation, OSHA dismissed these complaints on March 8, 2018. (Ex. 13 of Hentosz Decl.) Plaintiffs timely appealed to an Administrative Law Judge on March 30, 2018. (Ex. 14 to Hentosz Decl., ECF No. 29-1.)

*also id.* ¶ 27 (stating First Transit and First Transit General Manager Ogren terminated Plaintiff Carter ("Carter") on this date); ¶ 33 (stating First Transit and Ogren terminated Plaintiff Bailey ("Bailey") on this date).) Plaintiffs allege that they were members of Local 120 while employed. (*Id.* ¶ 11.) Local 120 and First Transit entered into a collective bargaining agreement ("CBA") in January 2013. (*Id.*)

Plaintiffs allege that "Metro Mobility is a door-to-door service that receives federal funds from the Federal Transportation Authority (FTA) and must comply" with federal regulations implementing "transportation-related provisions of the Americans with Disabilities Act." (*Id.* ¶ 8.) According to Plaintiffs, in 2015 the Met Council entered into an agreement with First Transit for First Transit to perform services for operation of the Metro Mobility Demand ParaTransit Agency. (*Id.* ¶ 9.) Pursuant to this contract, First Transit "receives payment for services according to vehicle revenue hours." (*Id.*) The Met Council provided buses, dispatch equipment, and other supplies for the operation. (*Id.*)

Plaintiffs generally allege that they were discriminated against and retaliated against when Defendants did not properly respond to their various investigations and the protective activity they engaged in when reporting various violations of the CBA, other contracts, and the law. (*See generally* ECF No. 10; *see e.g.*, *id.* ¶ 61 ("Instead of thoroughly investigating the alleged misconduct that led to Plaintiffs' termination, all 'Defendants' retaliated and discriminated against Plaintiff's [sic] by using policies, processes and procedures in an egregious discriminatory and retaliatory manner.").) Plaintiffs also accuse Local 120 of being "complicit" with First Transit in violating provisions of the CBA and also allege that

Local 120 retaliated and discriminated against Plaintiffs by ignoring their grievances and "allowing" their pay and hours to be reduced.  (*Id.* ¶ 17.)

Plaintiffs allege that in 2015 they began experiencing heavier workloads due to inadequate staffing and transfers, which resulted in "fatigue, ride harassment, end times being excessively abused and lunch breaks & breaks violations."  (*Id.* ¶ 10.)  They state that First Transit falsified and altered their lunch, break, and start and end times in the Met Council's dispatch software systems.  (*Id.*)  High turnover and low driver retention caused high work demands, heavy workloads, driver fatigue, wheelchair tips, and accidents.  (*Id.*)

On September 9, 2015, Carter filed a grievance pursuant to the CBA against First Transit related to a dispute over his lunch break and alleged that First Transit discriminated against him by reducing his hours and pay when he stated he wanted to take his lunch break before conducting any more rides.  (*Id.* ¶ 12.)   In October 2015, this grievance was not resolved at the Step 1 meeting and was elevated to Step 2.  (*Id.* ¶ 13.)  Plaintiffs allege that Greg Tvet, a white First Transit employee and Local 120 Union Steward, was permitted to file similar grievances in October 2015 (in those instances alleging that First Transit forced employees to work beyond their shifts); that Local 120 took different action (in this case asking First Transit to cease and desist); and thus First Transit and Local 120 discriminated against Plaintiffs by "allowing [Tvet] to file grievances and engage in Protected Activity without being subjected to retaliation."  (*Id.* ¶ 14.)

Bailey also states he filed a grievance pursuant to the CBA on November 14, 2015, where he alleged that he was denied a 40-hour route he was originally assigned and instead assigned a route that was more than 40 hours, causing stress and excessive fatigue.  (*Id.* ¶

15.)  At the Step 1 grievance meeting, the Local 120 representative spoke on behalf of Bailey and informed those in attendance from First Transit, including Ogren and First Transit District Safety Manager Johnson, that ride overloads and stress related to end times could cause safety hazards.  (*Id.* ¶ 16.)  Bailey alleges that First Transit retaliated by reducing his route to less than 40 hours because he filed a grievance.  (*Id.*)

Bailey filed another grievance in January 2016, alleging that the CBA's lunch break provision was violated when he requested a lunch break and a First Transit employee retaliated by removing his route and telling him to bring the bus back to the base.  (*Id.* ¶ 18.) Plaintiffs assert that the trips Bailey was assigned "were excessively overloaded" and that his break times were violated.  (*Id.*)  Ogren then placed Bailey on administrative leave for three weeks without pay for insubordination, which Bailey also grieved as being against the CBA's provision that a written notice must be given first.  (*Id.*)

In June 2016, Carter complained to Ogren and other First Transit employees that his break time was being violated and that this caused him stress and fatigue.  (*Id.* ¶ 20.)  Carter also stated to Ogren that he had made previous complaints of harassment, discrimination, and retaliation, and alleged that Ogren's reaction to this was to bully and intimidate him. (*Id.*)

In June 2016, Plaintiffs also informed the Met Council that there were safety violations occurring at First Transit and requested contracts between the Met Council and First Transit from a Metro Mobility employee.  (*Id.* ¶ 19.)  According to Plaintiffs, this put the Met Council on notice that Plaintiffs were investigating safety violations.  (*Id.*)  They allege that on September 20, 2016, they spoke with the Met Council's Principal Contract

Administrator Laron Weddington and informed him that the contract between the Met Council and First Transit was causing "safety hazards" for Metro Mobility Clients and First Transit Metro Mobility Drivers. (*Id.* ¶ 42.) Plaintiffs further allege that in February 2017, (after they were terminated from employment at First Transit) they reported safety hazards with the Metro Mobility Program to the Met Council, and that the Met Council was liable for those safety hazards. (*Id.* ¶ 54.)

Plaintiffs also allege that in July and August of 2016 they began investigating First Transit for violating grievance procedure timelines and for misappropriation of funds. (*Id.* ¶¶ 21-22.) They allege that in March 2017, after their termination, they told Met Council employees that the Met Council's award of more zones for First Transit to cover caused certain safety risks (including driver and client injuries), poor driver retention, and contract and policy violations. (*Id.* ¶ 55.) They also allege that they made the Met Council aware that First Transit was liable for putting bonuses and revenue hours over safety. (*Id.*)

On August 18, 2016, Plaintiffs attended a meeting to discuss several grievance investigations. (*Id.* ¶¶ 24-25.) Plaintiffs allege that Ogren then discriminated against them by allowing a white employee to adjust his route schedule so he could engage in "Protected Activity" but did not do the same when Plaintiffs made a complaint later on September 16, 2016. (*Id.* ¶ 24.) At this August 18 meeting, Plaintiffs allege that Ogren and Johnson threatened, intimidated, retaliated, and discriminated against them by threatening to hold grievance investigations after hours in order to discourage them from engaging in protected activity together and exercising their *Weingarten* rights. Plaintiffs allege that Johnson and

8

Ogren treated a white employee differently at this same meeting "by not intimidating or making the same threat." (*Id.* ¶ 25.)

Plaintiffs also assert that they conducted an investigation into "Retro Pay"[3] and allege that there was no transparency on the "Memorandum of Understanding" showing the total amount of money received from the Met Council to be paid to Plaintiffs for "Retro Pay." (*Id.* ¶ 26.) This memorandum of understanding was allegedly signed by Local 120 and First Transit in August of 2016. (*Id.*) On September 13, 2016, Plaintiffs allege that Bailey asked a First Transit Safety Manager, Al Halas, about the "Retro Pay" while he was reporting that he was being assigned tasks that violated his doctor's restrictions, which would jeopardize the safety of Bailey and passengers. (*Id.* ¶ 28.) In response, Plaintiffs allege Halas threatened to file a complaint against Bailey's doctor and did not answer any payroll questions, stating it was not his responsibility. (*Id.*)

Plaintiffs also assisted three union employees with their Termination Grievance Investigations. (*Id.* ¶¶ 29-33.) Plaintiffs allege that, through these investigations, they discovered that First Transit and Local 120 were breaching the terms of the CBA and that First Transit was also breaching the terms of the contract between it and the Met Council. (*See id.*) Plaintiffs allege they were retaliated against and intimidated by Gustafson because he discouraged, threatened, and yelled at Plaintiffs for assisting in the investigations; that Johnson discouraged Plaintiffs from speaking; and that Ogren was also upset about Plaintiffs' participation in the investigations. (*Id.* ¶¶ 29-30.) Plaintiffs allege

---

[3] Plaintiffs never formally define "Retro Pay." (*See generally* ECF No. 10.)

that First Transit and Local 120 discriminated against drivers that violated a certain article of the CBA as employees that tipped a wheelchair were at risk of termination when Carter, who had also tipped a wheelchair, was not terminated. (*Id.*) They also allege that another union employee was being wrongly terminated for getting into an accident when Carter had two accidents in 12 months and was not terminated, and that on that basis Local 120 and First Transit were using the CBA and the First Transit Employee Handbook ("Employee Handbook") in a discriminatory manner. (*Id.* ¶ 31.) Finally, Plaintiffs allege that through their investigation they were able to prove that Johnson and First Transit did not conduct an Administrative Leave Investigation as it related to a third union employee's termination grievance. (*Id.* ¶ 32.)

On the morning of September 16, 2016, Plaintiffs attempted to discuss "Retro Pay" discrepancies with Ogren at his office. (*Id.* ¶ 34.) They allege that while they were attempting to speak with Ogren, a First Transit Dispatch Supervisor, Vinge, discouraged Plaintiffs from exercising their *Weingarten* rights at the start of their shift. (*Id.*) Another First Transit employee, Yolanda Sweat, provided Plaintiffs with a payroll discrepancy form and informed Plaintiffs that Ogren was on a conference call. (*Id.*) Plaintiffs allege that when they did talk to Ogren that morning he was hostile, did not want to hear from Plaintiffs, threatened to reduce Plaintiffs' hours and pay, and followed through on that threat by using the CBA to take away 10 hours of work and instead pay them two hours' minimum. (*Id.*; *see also id.* ¶ 40.) Plaintiffs further allege that First Transit employees submitted false statements to Ogren about the events of that morning, and that their hours and pay were reduced as a result. (*Id.* ¶ 36.)

Plaintiffs further state that they made "numerous complaints of harassment, discrimination and retaliation" to Defendants First Transit, Ogren, and Johnson between 2015 and 2016, and each time these Defendants "discriminated and failed to comply with reporting procedure by not notifying the Human Resource Department and as a result, no investigations ever took place." (*Id.* ¶ 35.) Plaintiffs allege that an African American, female First Transit dispatcher was treated differently when she made a harassment complaint, as she received a "thorough investigation." (*Id.*)

On the afternoon of September 16, 2016, after the meeting with Ogren, Bailey submitted a verbal complaint of harassment, discrimination, and retaliation against First Transit to First Student human resources employee Kim Mingo ("Mingo"). (*Id.*) Plaintiffs allege Mingo ignored the verbal complaint and failed to comply with the Employee Handbook. (*Id.*) Carter submitted a similar complaint to First Student Regional Human Resources Manager Tom Graves ("Graves") on September 18, 2016, after Bailey told him to submit complaints to Graves. (*Id.*) Plaintiffs allege that First Transit, First Group, and First Student violated the Employee Handbook when Mingo and Graves "communicated with the harasser's [sic] between September 16 and September 19, 2016" about Plaintiffs' initial retaliation complaint made on the 16th. (*Id.*; *see also id.* ¶¶ 37-38.) They also allege that the same group of Defendants discriminated against Plaintiffs "by initiating an investigation with the harassers before meeting and receiving a completed formal complaint from" Plaintiffs. (*Id.* ¶ 35; *see also id.* ¶ 46.)

On September 19, 2016, Plaintiffs met with First Transit Management to discuss the events of September 16th. (*Id.* ¶ 39.) Plaintiffs believed that they were going to be able to

11

discuss the events of the 16th and then return to work but were instead told that they were being placed on administrative leave pending the investigation. (*Id.*) Plaintiffs allege this action by First Transit, Ogren, Johnson, Local 120, and Gustafson was a violation of the CBA and the Employee Handbook and that the action of placing Plaintiffs on administrative leave and reducing their pay and hours constituted retaliation. (*Id.*) They also allege that Local 120 and Gustafson discriminated against Plaintiffs by not investigating grievances in connection with the events that took place on September 16th; that Ogren harassed, discriminated, and retaliated against Plaintiffs by submitting false statements claiming that Plaintiffs committed misconduct on the 16th; and that Vinge also submitted a false statement regarding Plaintiffs' actions on the 16th, which resulted in a reduction of hours and pay. (*Id.* ¶¶ 40-41, 43.)

Plaintiffs allege that additional actions stemming from their placement on administrative leave until their termination on September 26, 2016 constituted discrimination and/or retaliation. (*See id.* ¶¶ 44-46.) They allege that Local 120 and Gustafson retaliated against Plaintiffs by failing to hold First Transit accountable for complying with the CBA and for withholding evidence throughout Plaintiffs' termination grievance process (*Id.* ¶ 44); that First Transit retaliated and discriminated against Plaintiffs by allowing Ogren, a subject of Plaintiffs' previous complaints, to conduct a biased unpaid administrative leave investigation that led to Plaintiffs' termination, which included false written statements and did not include Plaintiffs' input (*Id.* ¶ 45); and that Graves discriminated against Plaintiffs when he prevented them from using First Transit's

complaint procedure in violation of the Employee Handbook, and instead informed First Transit management of Plaintiffs' complaints. (*Id.* ¶ 46.)

Plaintiffs also allege that certain actions during the grievance of their terminations constitute discrimination and/or retaliation. (*See id.* ¶¶ 47-59.) These allegations include:

- October 7, 2016: First Transit, Ogren, Local 120, and Gustafson retaliated against Plaintiffs by failing to allow Plaintiffs to investigate and discuss the events of their Step 1 Termination Grievances, in violation of the Employee Handbook and the CBA. (*Id.* ¶ 47.) This was in contrast to the other union employees who were able to investigate and discuss the events that led up to their Step 1 Termination grievances (*Id.*);

- October 12, 2016: First Transit, Ogren, Johnson, Local 120, and Gustafson retaliated against Plaintiffs by reducing their pay and hours, fired Plaintiffs at will, and failed to rehire them in violation of their union rights and Minnesota Statutes § 268.095 (*Id.* ¶ 48);

- October 19, 2016: First Transit, Ogren, Local 120 and Gustafson discriminated against Plaintiffs at their Step 2 Termination Grievance Investigation by not allowing them to investigate and discuss the events surrounding their grievances, depriving them of the same procedures other union members had. (*Id.* ¶ 49.) These same Defendants allegedly retaliated against Plaintiffs by intimidating and discouraging Plaintiffs from exercising their *Weingarten* rights, failing to rehire them, and continuing to reduce their pay and hours (*Id.*);

- October 26, 2016: Local 120 discriminated against Plaintiffs at their Step 3 Termination Grievance Investigation by failing to inform Graves that evidence presented was not proper under the CBA or the Employee Handbook, and First Transit and First Group discriminated against Plaintiffs "by violating section 2.04"[4] through coercing other First Transit employees to write statements used in the termination proceedings (*Id.* ¶ 50);

- First Transit and Local 120 retaliated and discriminated against Plaintiffs by failing to rehire them and reducing their pay and hours after Plaintiffs filed an "Unlawful Labor Practices" with the National Labor Relations Board ("NLRB") and completed their termination grievance process through a panel hearing and arbitration (*Id.* ¶ 51);

- November 22, 2016: First Transit, Johnson, Local 120, and Gustafson retaliated and discriminated against Plaintiffs at their Termination Panel Hearing Grievance by reducing their pay and hours and allowing Johnson to conduct a biased panel hearing investigation (*Id.* ¶ 52);

- February 2017: First Transit, First Group, Ogren, and Johnson discriminated and retaliated against Plaintiffs by failing to pay out certain benefits in violation of Minnesota Statutes § 181.74,[5] the First Transit Policy Handbook ("Policy

---

[4] Plaintiffs do not cite what "section 2.04" refers to.
[5] Plaintiffs also allege that First Transit, First Group, Ogren and Johnson are in violation for not paying Plaintiffs' accrued vacation, PTO, and mental health hours pursuant to Minnesota Statutes § 181.74. (*Id.* ¶ 53.)

Handbook"), and a Working Agreement between First Transit and Local 120 (*Id.* ¶ 53);

- February-March 2017:  Met Council employees retaliated against Plaintiffs by not investigating their safety concerns and discriminated against Plaintiffs by not directing them to the Met Councils' complaint procedure.  (*Id.* ¶ 54);

- March 6, 2017: First Transit retaliated against Plaintiffs by reducing their hours and pay after they submitted OSHA complaints (*Id.* ¶ 56; *see also id.* ¶ 57 (alleging that Defendants violated the NTSSA)); and

- June 27, 2017 and July 13, 2017: First Transit, Local 120, Ogren, and Gustafson retaliated and discriminated against Plaintiffs by failing to rehire them, submitting conflicting false statements, conducting a biased investigation, withholding evidence, and denying Plaintiffs the same procedures as other union members at their union arbitrations.  (*Id.* ¶ 59.)

Plaintiffs allege that they are covered by the NTSSA because they provided information to Defendants and assisted in NLRB and OSHA investigations about alleged violations of federal laws, rules, and regulations and that they filed complaints regarding hazardous safety conditions.  (*Id.* ¶ 60.)  They allege that in response to engaging in this protected activity, First Transit, Ogren, First Group, First Student, Johnson, Local 120, and Gustafson retaliated by "intimidating, threatening, denying overtime & promotions, disciplining, firing, failing to rehire and reducing Plaintiffs pay & hours."  (*Id.*)

They further allege that Gustafson "perceived" Plaintiffs were engaged in protected activity and discriminated against Plaintiffs by violating a state work break and meal break

15

statutes; an article of the CBA; a provision of the Policy Handbook; "FMCSA Title 49 Transportation § 392.3;" and all of the causes of action asserted in the Second Amended Complaint. (*Id.*) They also allege the Met Council failed to comply with FTA guidelines because, as they supplied cameras and software used by Plaintiffs and were aware of Plaintiffs' complaints, they became "complicit" and failed to hold First Transit and Local 120 accountable to follow FTA guidelines. (*Id.* ¶ 61.) Plaintiffs seek monetary and injunctive relief, including punitive damages. (*Id.* at pp. 46-47.)

Defendants have moved to dismiss the Second Amended Complaint with prejudice. (ECF Nos. 15 & 26.) Plaintiffs have also filed motions to deny each motion to dismiss. (ECF Nos. 33 & 38.) The Court took the matter under advisement following the completion of briefing on all motions.[6] (*See* ECF No. 44.)

## II.  MOTIONS TO DISMISS

### A.  Legal Standard

Defendants have again moved for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF Nos. 15 & 26.) The Court in the previous case considered the standards for deciding these motions and will do so again. *See Bailey I*, 2020 WL 3633132, at *3.

When determining a Rule 12(b)(1) motion, courts "must distinguish between a 'facial attack' and a 'factual attack' on jurisdiction." *Carlsen v. GameStop, Inc.*, 833 F.3d

---

[6] The Court also discusses Plaintiffs' motions to deny the motions to dismiss and subsequent motions to alter the briefing schedule in a separate order. (*See* ECF No. 67.) The Court considered all briefing filed by Plaintiffs in this matter. (*See id.* (granting Plaintiffs' motion for enlargement of time to file a responsive memorandum and granting Plaintiffs' motion for enlargement of time to file a reply memorandum).)

903, 908 (8th Cir. 2016) (quoting *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). "In a facial attack, 'the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6).'" *Id*. "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." *Id*.; *see also Scott v. UnitedHealth Group, Inc.*, No. 20-cv-1570 (PJS/BRT), 2021 WL 2018839, at *2 (D. Minn. May 20, 2021) ("In a factual challenge, the court does not accept the allegations as true, but instead receives evidence and makes factual findings.") (citing *Osborn*, 918 F.2d at 730).

In deciding a Rule 12(b)(6) motion, a court accepts as true all well-pleaded factual allegations and then determines "whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). In doing so, the court must draw reasonable inferences in the plaintiff's favor. *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (citation omitted). "To survive a 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Metro. Omaha Prop. Owners Ass'n, Inc. v. City of Omaha*, 991 F.3d 880, 884 (8th Cir. 2021) (citation and internal quotations omitted). Facial plausibility of a claim exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Although a sufficient complaint need not be detailed, it must contain "[f]actual allegations . . . enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). Complaints are

17

insufficient if they contain "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557) (internal quotation marks omitted); *see also Twombly*, 550 U.S. at 555 (providing that a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

In assessing a complaint by a *pro se* plaintiff, the Court applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*) (quotation and citation omitted); *cf. id.* ("A document filed *pro se* is 'to be liberally construed.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). "If the essence of an allegation is discernible," then the court, in applying a liberal construction to *pro se* complaints, "should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).

Despite the liberal construal of such complaints, the *pro se* plaintiff "still must allege sufficient facts to support the claims advanced." *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (citation omitted); *see also Stone*, 364 F.3d at 914-15 (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint."). Thus, *pro se* litigants "must set a claim forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law." *Stone*, 364 F.3d at 914 (quoting *Cunningham v. Ray*, 648 F.2d 1185, 1186 (8th Cir. 1981)). The Court now turns to the numerous claims Plaintiffs have

alleged under federal and state law.

**B. NTSSA Claim**

Plaintiffs' first claim in this action, as in *Bailey I*, is entitled "OSHA DOL NTSSA

Whistleblowing Act 6 U.S.C. § 1142," and thus the Court considers this as a claim seeking

relief under the NTSSA. *See* 2020 WL 3633132, at *3. The NTSSA provides in relevant

part:

> A public transportation agency, a contractor or a subcontractor
> of such agency, or an officer or employee of such agency, shall
> not discharge, demote, suspend, reprimand, or in any other way
> discriminate against an employee if such discrimination is due,
> in whole or in part, to the employee's lawful, good faith act
> done, or perceived by the employer to have been done or about
> to be done—
>
> (1) to provide information, directly cause information to be
> provided, or otherwise directly assist in any investigation
> regarding any conduct which the employee reasonably believes
> constitutes a violation of any Federal law, rule, or regulation
> relating to public transportation safety or security, or fraud,
> waste, or abuse of Federal grants or other public funds intended
> to be used for public transportation safety or security[.]

6 U.S.C. § 1142(a)(1). The information or assistance must be provided to, or the

investigation the employee is participating in must be conducted by, certain entities,

including "a person with supervisory authority over the employee or such other person who

has the authority to investigate, discover, or terminate the misconduct." *Id.* §

1142(a)(1)(C). The NTSSA also prohibits adverse actions against employees who report

hazardous safety or security conditions or refuse to work when confronted with such

conditions. *Id.* § 1142(b)(1).

Under the NTSSA, Plaintiffs have pleaded sufficient facts to establish a plausible claim for relief as it relates to Defendant First Transit. *See Iqbal*, 556 U.S. at 678; *cf.* 29 C.F.R. § 1982.104(e) (DOL regulations setting standards for making a prima facie showing of a claim under the NTSSA). Plaintiffs have highlighted in their Second Amended Complaint that they were exposed to overwork and break violations on the job, and that when they attempted to report this to their supervisors at First Transit it resulted in warnings, suspensions, and their termination from employment by First Transit. (*See, e.g.*, ECF No. 10 ¶¶ 15, 18-20, 27, 33.)

Plaintiffs, however, have failed to plead, with regard to Local 120 and Gustafson, facts showing that either of those Defendants is a public transportation agency, a contractor or subcontractor of the agency, or an officer or employee of the agency. *See also Bailey I*, 2020 WL 3633132, at *4. The Court also finds that Plaintiffs have failed to plead sufficiently facts demonstrating that the Met Council took any adverse employment action against Plaintiffs. Plaintiffs' Second Amended Complaint instead focuses on Plaintiffs' argument that the Met Council was liable for certain safety violations because of the contract they had with First Transit. (*See* ECF No. 10 ¶¶ 42, 54-55.) The only allegations Plaintiff makes with regard to retaliation with the Met Council is that they retaliated against Plaintiffs by not investigating Plaintiffs' safety concerns and did not direct them to complaint procedures. (*See id.* ¶ 54.) The Court finds that Plaintiffs have not pleaded sufficient facts to state a plausible claim for relief as it relates to Defendants Local 120, Gustafson, and the Met Council. Because this is the second time Plaintiffs have had to plead this claim with sufficient particularity, *see Bailey I*, 2020 WL 3633132, at *4, the

Court recommends denying it with prejudice as it relates to Defendants Local 120, Gustafson, and the Met Council. *See Hall v. Capella Univ.*, No. 18-cv-27 (DSD/HB), 2018 WL 3429934, at *3 (D. Minn. July 16, 2018).

The Court also finds that it lacks jurisdiction to consider Plaintiffs' NTSSA claim as it applies to First Group, First Student, Johnson, and Ogren, as Plaintiffs never sought relief against those actors through the OSHA's administrative process. (*See* Hentosz Exs. 11-14.)  The NTSSA provides a process for filing a complaint with the DOL through OSHA. *See* 6 U.S.C.§ 1142(c).  The "kick-out" provision on which Plaintiffs rely in filing this action states that a Court will only have jurisdiction "if the Secretary of Labor has not issued a final decision within 210 days after the filing of the complaint." *Id.* § 1142(c)(7). As one court has explained, "The NTSSA does not, however, create a private cause of action for violations of the Act.  Rather, the NTSSA outlines an administrative process for aggrieved employees to file complaints with the [DOL] and provides jurisdiction to federal district courts in two limited circumstances . . ." *Ndzerre v. Washington Metro. Area Transit Authority*, 174 F. Supp. 3d 58, 63 (D.D.C. 2016); *see also Hunter v. Washington Metro. Area Transit Authority*, 485 F. Supp. 3d 65, 82 (D.D.C. 2020) (The NTSSA "require[s] a claimant to first seek an administrative remedy through the Department of Labor." (citing 6 U.S.C. § 1142(c)(1))).

Plaintiffs never sought administrative relief against First Group, First Student, Johnson, and Ogren through the DOL and thus have not exhausted administrative remedies as it applies to those Defendants.  "Under the doctrine of exhaustion, no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative

remedy has been exhausted." *Alpharma, Inc. v. Pennfield Oil Co.*, 411 F.3d 934, 937 (8th Cir. 2005) (citation omitted).  An exception to this general rule is that a Plaintiff may name an individual or entity in a lawsuit when they were not in the administrative proceeding is that when there is a "substantial identity" between the party named in the administrative charge and the party named in a lawsuit.  *See Sedlacek v. Hach*, 752 F.2d 333, 336 (8th Cir. 1985) (applying to an EEOC complaint).  In order to share a "substantial identity" with a party, the unnamed party must have "been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate" in the administrative proceedings.  *Greenwood v. Ross*, 778 F.2d 448, 451 (8th Cir. 1985).

First Group, First Student, Johnson, and Ogren were never meaningfully involved in the administrative process and do not share a substantial identity with First Transit or the Met Council.[7]  Thus, Plaintiffs have not sought the necessary administrative review against those Defendants.  Because the Court does not have jurisdiction to hear the NTSAA claims against Defendants First Group, First Student, Johnson, and Ogren, the Court recommends that these claims be dismissed with prejudice.

### C.  Title VI Claim

The Second Amended Complaint next asserts a cause of action for Defendants' violation of Title VI.  (ECF No. 10 ¶ 4; *see also id.* ¶¶ 60-61.)  Title VI provides, "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination

---

[7] Only Ogren is mentioned in Plaintiffs' OSHA complaints.  (*See* Exs. 11-12 of Hentosz Decl.)

under any program or activity receiving Federal financial assistance."  Plaintiffs also cite

to 28 C.F.R. § 42.107(e), a subpart of the Code of Federal Regulations.  (ECF No. 10 ¶¶

10, 60.)  This federal regulation was enacted for the purpose of implementing Title VI.  *See*

28 C.F.R. § 42.101.  Subpart 42.107(e) states that "[n]o recipient or other person shall

intimidate, threaten, coerce, or discriminate against any individual for the purpose of

interfering with any right or privilege secured by section 601 of the Act or this subpart, or

because he has made a complaint, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing under this subpart."  Title VI and its accompanying

regulations provide a cause of action against "a program receiving federal funding based

on the program's *employment* practices" only "where the primary goal of the federal

funding is to provide employment."  *Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82,

91 (D.D.C. 2010) (alteration in original); *see also* 42 U.S.C. § 2000d-3.

Plaintiffs' Title VI claim fails, as it did in *Bailey I*, because they do not plead

sufficient facts to allege a valid Title VI claim.  *See* 2020 WL 3633132, at *4.  Plaintiffs

allege that the Met Council receives federal funding from the Federal Transportation

Authority; that the Met Council entered into a contract with First Transit where First

Transit would provide transportation services; and that First Transit received payment for

services.  (ECF No. 10 ¶¶ 8-9.)  Plaintiffs, however, again do not specify the purpose for

which the Met Council (or any other Defendant) receives federal funds or "allege facts

showing that the primary purpose of any federal funds 'is to provide employment or that

the intended beneficiaries of those funds are employees like [Plaintiffs.]'"[8]  *Bailey I*, 2020 WL 3633132, at *4 (citing *Middlebrooks*, 722 F. Supp. 2d at 91-92).

Because this is Plaintiffs' second opportunity to plead these claims with sufficient particularity, and because Plaintiffs have failed to do so, the Court recommends that the Title VI claims be dismissed with prejudice.[9]  *See Hall*, 2018 WL 3429934, at *3.

### D.  FCA Claim

Plaintiffs again allege a claim under the FCA.  (ECF No. 10 ¶ 4; *see also id.* ¶ 60.) Though Plaintiffs have added over 40 additional paragraphs of allegations against Defendants, the Second Amended Complaint still fails to allege facts that establish a viable FCA claim.  *See Bailey I*, 2020 WL 3633132, at *6.

The FCA prohibits a person from "knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement material to a false or fraudulent claim."  31 U.S.C. § 3729(a)(1)(B).  Because the FCA "attaches liability, not to the underlying fraudulent activity, but to the claim for payment," *In re Baycol Prods. Litig.,* 732 F.3d 869, 875 (8th Cir. 2013) (citation omitted), Plaintiffs must offer "sufficient allegations of materially false claims" in order to state a claim on which relief can be granted.  *Olson v. Fairview Health Servs. of Minnesota*, 831 F.3d 1063, 1071 (8th Cir. 2016).  In addition, as the Court explained above regarding the fraudulent concealment doctrine, Plaintiffs must satisfy the particularity requirements of Rule 9(b) and plead the "who, what, where, when,

---

[8] Plaintiffs also fail to allege that Ogren, Johnson, First Group, First Student, Local 120, or Gustafson are recipients of federal funds or that they employed Plaintiffs.  (*See generally* ECF No. 10.)

[9] Because the Court recommends denying this claim for failure to state a claim, it declines to address certain Defendants' arguments that Plaintiffs' Title VI claim is barred by a statute of limitations.  (*See* ECF No. 28 at 15-16.)

and how of the alleged fraud" in order to bring a plausible FCA claim. *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (citation omitted). "While Rule 9(b) is context specific and flexible, a plaintiff cannot meet this burden with conclusory and generalized allegations." *United States ex rel. Strubbe v. Crawford Cty. Mem'l Hosp.*, 915 F. 3d 1158, 1163 (8th Cir. 2019) (internal citation omitted).

Here, Plaintiffs' Second Amended Complaint is devoid of any allegation that any Defendant made a false claim to the federal government, or when any such claim would have been made. (*See* ECF No. 10.) The claims that any Defendant misappropriated funds were conclusory, and do not provide the source of the funds, the purpose of the funds, or who managed the funds. (*See, e.g.*, *id.* ¶ 22 (alleging that Plaintiffs launched an investigation into First Transit's misappropriation of funds by filing a grievance); ¶ 26 (discussing "Retro Pay," alleging that there was a lack of transparency in total money received from the Met Council to be paid to Plaintiffs, asking whether similarly-situated drivers were paid properly, and concluding that Plaintiffs' funds were misappropriated.).)

Plaintiffs' Second Amended Complaint fails to meet the particularity requirements of Rule 9(b). Because this is the second time Plaintiffs have had to plead this claim with sufficient particularity, *see Bailey I*, 2020 WL 3633132, at *6, the Court recommends denying it with prejudice. *See Hall*, 2018 WL 3429934, at *3; *see also Bernstein v. Extendicare Health Servs., Inc.*, 607 F. Supp. 2d 1027, 1032 (D. Minn. 2009) (dismissing plaintiff's fraud claims with prejudice when "another attempt to amend would not likely be fruitful.").

### E.  Section 1981 Claim

Plaintiffs' claim brought pursuant to Section 1981 also fails to state a plausible claim for relief.  Section 1981 provides that all "persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981(a).  To establish a prima facie case for race discrimination under Section 1981, Plaintiffs must plead facts showing (1) they are members of a protected class; (2) they met their employer's legitimate expectations; (3) they suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. *Young v. Builders Steel Co.*, 754 F.3d 573, 577 (8th Cir. 2014).

Plaintiffs do provide that they are members of a protected class (ECF No. 10 ¶ 8.) They also give four instances where they were allegedly treated differently than coworkers, which could give an inference of discrimination and/or retaliation.  (*Id.* ¶¶ 12, 24-25, 35.) They do not, however, provide any facts to show that they met their employer's legitimate expectations.  (*See generally* ECF No. 10.)  Nor do they adequately plead that any employer-employee relationship existed between themselves and First Student, First Group, the Met Council, Ogren, Johnson, Local 120, or Gustafson.  (*Id.*)  Because this is the second time Plaintiffs have had to plead this claim with sufficient particularity, *see Bailey I*, 2020 WL 3633132, at *6-7,  the Court recommends denying it with prejudice. *See Hall*, 2018 WL 3429934, at *3.

26

### F.  State Law Claims

#### 1.  Minnesota Statutes §§ 181.74 and 268.095

Plaintiffs allege two causes of action under state law that are not viable.

First, Plaintiffs allege that Defendants First Transit, First Group, Ogren, and Johnson intentionally discriminated against them by failing to comply with Minnesota Statutes § 181.74.  (ECF. No. 10 ¶ 53.)  This statute subjects employers to criminal liability if they fail to pay benefits or wage supplements to their employees or a fund for the benefit of their employees pursuant to any agreement to do so.  Minn. Stat. § 181.74, subd. 1. Benefits or wage supplements "include[], but [are] not limited to, reimbursement for expenses; health, welfare, and retirement benefits, and vacation, separation or holiday pay."  *Id.* at subd. 2.

"As it relates to claims based on criminal violations of Minnesota law, the Minnesota Supreme Court has found that 'a criminal statute does not automatically give rise to a civil cause of action unless the statute expressly or by clear implication so provides.'"  *Foster v. Litman*, No. 19-cv-260 (JNE/ECW), 2020 WL 2786956, at *6 (D. Minn. May 29, 2020) (quoting *Larson v. Dunn*, 460 N.W.2d 39, 47 n.4 (Minn. 1990)). There is no express or implied language in Minnesota Statutes § 181.74 affording a private cause of action for its violation.  Thus, the Court recommends that Plaintiffs' claim under this statute be dismissed with prejudice.

Minnesota Statutes § 268.095 outlines when employees are eligible or ineligible for unemployment benefits when they quit or are discharged by their employer.  The statute

does not provide for a private cause of action and on that basis the Court recommends that this claim be dismissed with prejudice.

### 2. Minnesota Whistleblower Act Claims

At this point, the Court is recommending the dismissal of all claims except the NTSSA claim against First Transit. Under the NTSSA, an "employee may not seek protection under both this section and another provision of law for the same allegedly unlawful act of the public transportation agency." 6 U.S.C. § 1142(e). Plaintiffs' Minnesota Whistleblower Act claim seeks relief for the same alleged conduct for which they seek relief under the NTSSA. (*See generally* ECF No. 10.) The Court finds that the NTSSA preempts the Minnesota Whistleblower Act, and recommends this claim be dismissed with prejudice.

### III. MOTIONS TO DENY MOTIONS TO DISMISS

Because the Court has considered all parties' arguments as it relates to which claims should survive Defendants' motions to dismiss and has made its recommendations regarding those claims, the Court recommends that Plaintiffs' motions to deny the motions to dismiss be denied as moot.

### IV. RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. "Defendants' Teamsters Local 120 & Troy D. Gustafson Motion to Dismiss Plaintiff's Second Amended Complaint" (ECF No. 15) be **GRANTED**.

2. That all claims against Defendants Teamsters Local 120 and Troy D. Gustafson be **DISMISSED WITH PREJUDICE.**

3. The Motion to Dismiss Filed on Behalf of Defendants First Transit, Inc., First Group America Inc., First Student Inc., the Metropolitan Council, Don Johnson, and Tim Ogren (ECF No. 26) be **GRANTED IN PART** and **DENIED IN PART** as follows:

   a. That the motion be denied insofar as Defendants' seek the dismissal of the NTSSA claims against Defendant First Transit, Inc. only.

   b. That all other claims against all other Defendants be **DISMISSED WITH PREJUDICE**.

4. Plaintiffs' motions to deny the motions to dismiss (ECF Nos. 33 & 38) be **DENIED AS MOOT**.


Date:  July  30 , 2021                          *s/Tony N. Leung*
                                               Tony N. Leung
                                               United States Magistrate Judge
                                               District of Minnesota

                                               *Bailey, et al. v. First Transit Inc., et al.*
                                               No. 20-cv-1238 (DWF/TNL)



## **NOTICE**

**Filings Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c)